JS

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TRINIDAD TAPIA OSORIO

        Plaintiff,

        v.

BIANCA ALVAREZ;
FRANCISCO ALVAREZ; and
ALOE VERA CARIBBEAN IMPORTS,
LLC, d.b.a. IMMIGRATION SERVICES,
INC.

        Defendants

20    1070

CIVIL ACTION NO._____

## **COMPLAINT**

Plaintiff Trinidad Tapia Osorio ("Plaintiff Tapia"), by and through his undersigned

counsel, brings this action against Defendants Bianca Alvarez, Francisco Alvarez, and Aloe Vera

Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. and hereby alleges as follows:

## **NATURE OF ACTION**

1.      Plaintiff Tapia sought immigration legal services from Defendants, with the goal

of attaining lawful permanent residency for his parents.  Defendants held themselves out as

authorized to provide such services, advised Plaintiff Tapia that his parents were eligible for

relief, and offered to apply for relief on the Tapias' behalf.  Plaintiff Tapia and his parents

retained Defendants, and Defendants charged the Tapias thousands of dollars for legal services.

2.      Defendants are not licensed attorneys and are not authorized to provide legal

services.

which explicitly prohibits Defendants from, *inter alia*, engaging in the unauthorized practice of law, aiding in the unauthorized practice of law, or advertising that Defendants are qualified to provide legal services.

4.     Defendant Bianca Alvarez, at all times relevant hereto, has acted as a principal in the operations of Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. and has been a partner or associate of Francisco Alvarez in the operations of Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc., related to this litigation.  As set forth below, she represented Defendants Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. and Francisco Alvarez in some of their dealings with Plaintiff Tapia in this matter.

5.     Defendants violated the Consent Decree and various other legal obligations by representing to Plaintiff Tapia that they were authorized to practice law, by advertising their ability to provide immigration legal services, and by representing Plaintiff Tapia and his family in immigration applications.

6.     Worse still, Defendants provided—and Plaintiff Tapia paid for—representation in applications for immigration relief for his parents that Plaintiff Tapia's parents were never eligible to receive and that as a result had no value to Plaintiff Tapia and his family.

7.     Plaintiff Tapia seeks relief pursuant to: the Court's prior Consent Decree, in *Barrientos de Interiano v. Alvarez*, No. 15-cv-04179, Dkt No. 33; the Pennsylvania statute providing penalties and injunctive relief for the unauthorized practice of law, 42 Pa. C.S. § 2524; the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 – 201-9.2; unjust enrichment; and breach of contract.

## PARTIES

### Plaintiff

8.      Plaintiff Trinidad Tapia Osorio is a United States Citizen who resides in Philadelphia County, Pennsylvania.

### Defendants

#### Bianca Alvarez

9.      Upon information and belief, Defendant Bianca Alvarez resides in Philadelphia County, Pennsylvania.

10.      At all times relevant to this action, Bianca Alvarez maintained a principal business address in the Hunting Park neighborhood of Philadelphia at 3901 N. 5th Street, Philadelphia, Pennsylvania 19140.

11.      Upon information and belief, Bianca Alvarez is the owner of the property at 3901 N. 5th Street, Philadelphia, Pennsylvania 19140.

12.      Upon information and belief, Bianca Alvarez has exercised control of signage posted on the exterior of 3901 N. 5th Street, Philadelphia, PA 19140 including signage used by Defendants to advertise their authorization to engage in the practice of law.

13.      Upon information and belief, Bianca Alvarez is not now and has not been at any relevant time, an attorney or an individual otherwise authorized to represent individuals in immigration matters under 8 C.F.R. § 292.1.

14.      At no time relevant to this matter has Bianca Alvarez provided immigration services to Plaintiff Tapia and members of his family as a paralegal acting under the supervision of an attorney licensed to practice law in Pennsylvania.

15.     At all times relevant to this matter, Bianca Alvarez has been licensed as a notary public.

16.     At all times relevant to this matter, Bianca Alvarez was acting on her own behalf and/or on behalf of Defendant Aloe Vera Caribbean Imports, LLC., d.b.a. Immigration Services, Inc., and successor business entities established by Defendants for the conduct of their businesses.

17.     Bianca Alvarez has been a partner or associate of Francisco Alvarez in the operations of Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. and successor business entities established by Defendants for the conduct of their businesses.

18.     Bianca Alvarez undertook the representation of Plaintiff Tapia and members of his family beginning in January 2015 either as a principal of Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc., or under the direction and control of Defendants Francisco Alvarez and Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc.

### Francisco Alvarez

19.     Upon information and belief, Defendant Francisco Alvarez resides in Philadelphia County, Pennsylvania.

20.     At all times relevant to this action Francisco Alvarez maintained a principal business address in the Hunting Park neighborhood of Philadelphia at 3901 N. 5th Street, Philadelphia, PA 19140.

21.     Upon information and belief, Francisco Alvarez is not now and has not been at any relevant time, an attorney or an individual otherwise authorized to represent individuals in immigration matters under 8 C.F.R. § 292.1.

22.     At all times relevant hereto, Francisco Alvarez was acting on his own behalf and/or on behalf of Defendant Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. and successor business entities established by Defendants for the conduct of their businesses.

23.     Francisco Alvarez has been a partner or associate of Bianca Alvarez in the operations of Aloe Vera Caribbean Imports, LLC., d.b.a. Immigration Services, Inc. and successor business entities established by Defendants for the conduct of their businesses.

24.     Francisco Alvarez undertook the representation of Plaintiff Tapia and his family in immigration matters as a principal of Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc., beginning in January 2015.

25.     Bianca Alvarez acted under Francisco Alvarez's direction and control when she represented the Tapias in immigration matters.

26.     Francisco Alvarez is the father of Bianca Alvarez.

**Aloe Vera Caribbean Imports, LLC d.b.a. Immigration Services, Inc.**

27.     Defendant Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc., (hereinafter "Aloe Vera" or "Immigration Services, Inc.") is a Pennsylvania limited liability company with its principal place of business at 3901 N. 5th Street, Philadelphia, PA 19140.

28.     Defendant Aloe Vera has a Pennsylvania Department of State Corporation Bureau Entity Number of 3809663.

29.     Defendant Aloe Vera was created on May 12, 2008.

30.     This Court in proceedings in *Barrientos de Interiano v. Alvarez,* No. 15-cv-04179, Dkt No. 32, treated allegations in that matter as to the conduct of "Immigration Services, Inc." as allegations as to the conduct of Defendant Aloe Vera.

5

31.     At all times relevant hereto, Defendant Aloe Vera was acting by and through its principals, agents, servants, and employees including, but not limited to, Defendants Bianca Alvarez and Francisco Alvarez.

32.     Upon information and belief, beginning in or around January 2016, Aloe Vera, by and through its agents and principals including Defendants Bianca Alvarez and Francisco Alvarez, began to do business as "Alvarez Legal Form & Immigration Support" without taking any formal steps to register that name as a fictitious business name with the Pennsylvania Department of State or to establish Alvarez Legal Form & Immigration Support as a separate business entity.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction over this action pursuant to the Consent Injunctive Order issued in Case No. 2:15-cv-04179-JS, in which this Court retained jurisdiction over the enforcement of that Order. *See Barrientos de Interiano v. Alvarez*, No. 15-cv-04179, Dkt No. 33, ¶ 17.

34.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Pennsylvania statutory and common law claims against Defendants arising out of the same operative facts that constitute part of the same case or controversy.

35.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over claims against Bianca Alvarez.

36.     This Court has jurisdiction to issue declaratory judgments sought herein against Defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

37.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## STATEMENT OF FACTS

### I.     The November 2015 Consent Decree

#### A. The *Barrientos de Interiano* Complaint

38.     On July 23, 2015, Veronica Marlene Barrientos de Interiano and Edwin Aroldo Interiano Cruz (the "*Barrientos* Plaintiffs") filed a Complaint (the "*Barrientos* Complaint") in the Court of Common Pleas of Philadelphia County against various defendants, including Francisco Alvarez and "Immigration Services, Inc." On July 29, 2015, the action was removed to the U.S. District Court for the Eastern District of Pennsylvania. *Barrientos de Interiano*, No. 15-cv-04179, Dkt No. 1, Exh. A.

39.     The *Barrientos* Plaintiffs made, *inter alia*, the following allegations, which are incorporated by reference herein:

39.1.     Various people, including Francisco Alvarez and Bianca Alvarez, were partners in the operation of Immigration Services, Inc. (*Barrientos* Complaint ¶ 18).

39.2.     At no time were Francisco Alvarez or his business partners authorized to do business on behalf of the Pennsylvania registered corporation Immigration Services, Inc.—in fact, Immigration Services, Inc., was a trade name falsely utilized without legal authorization by Francisco Alvarez and his business partners (*Barrientos* Complaint ¶ 14).

39.3.     Defendant Francisco Alvarez and his partners doing business as Immigration Services, Inc. incorporated other corporations or registered other trade names as part of their business enterprises. These business included the following entities registered to do business at 3901 N. 5th Street: A and M Multiservices (registered fictitious name); Immigration and Human Services Inc. (incorporated by Bianca Alvarez

7

as a non-profit Pennsylvania Corporation); Unidos Immigration Services LLC (Bianca Alvarez, tax responsible party); Caribe Group, Inc.; and Aloe Vera Caribbean Imports, LLC (Defendant Francisco Alvarez, President) (*Barrientos* Complaint ¶ 20).

39.4.   Francisco Alvarez and Immigration Services, Inc., extensively advertised their provision of legal services, including on signage at the 3901 N. 5th Street address, on social media, on internet websites and blogs, in bilingual newspapers, on Spanish-language radio stations, and on personal business cards (*Barrientos* Complaint ¶¶ 39-67).

39.5.   Defendants Francisco Alvarez and Immigration Services Inc. placed an advertisement in Impacto, a Philadelphia-area bilingual newspaper, for a December 2009 issue that had a picture of Bianca Alvarez and Francisco Alvarez and stated: "FRANK ALVAREZ IMMIGRATION SERVICE. INC." (*Barrientos* Complaint ¶¶ 55-56).

39.6.   Defendants Francisco Alvarez, his partners, and Immigration Services Inc. advertised their services as including, among others (English translation in parenthesis): "Green Card"; "Fiancee Visa"; "Peticion a Familiares" (Family Petition); "Divorcios" (Divorces); "Ciudadania" (Citizenship); "Poderes" (Powers of Attorney); "Inmigracion Casos Criminales" (Immigration Criminal Cases); "Transito-DUI Ciudadania" (Transit-DUI Citizenship); "Visa de Trabajo" (Work Permit); "Marriage Petition"; "Legal Forms"; and "Living Trust & Living Wills." (*Barrientos* Complaint ¶¶ 43-44, 52, 57, 61).

39.7.   Defendants' place of business at 3901 N. 5th Street, Philadelphia, PA 19140 had large signage on three sides of the outside of the building. That signage listed services provided including (English translation in parenthesis: "Residencia" (Residency, which refers to the immigration benefit of obtaining lawful residency—*i.e.*, obtaining a "green card"); "Peticiones a Familiares" (Family Petitions); "Ciudadania" (Citizenship);

"Permisos de Trabajo" (Work Permits); "Immigration"; and "Divorcios" (Divorces). (*Barrientos* Complaint ¶ 61).

39.8.   Defendants Francisco Alvarez and Immigration Services, Inc., included the above statements on the outside of the building in large, prominent writing in order to represent to consumers in Pennsylvania that their business was qualified to, and in fact did, provide legal advice and assistance. (*Barrientos* Complaint ¶ 62).

39.9.   The building signage specifically identified Defendant Francisco Alvarez as "Director and CEO" of "Immigration Services" and Bianca Alvarez as "Bilingual Legal Assistant."  (*Barrientos* Complaint ¶ 63).

39.10.  As a result of the outside business signage advertising legal services, including immigration assistance, a reasonable consumer would believe that Defendants Francisco Alvarez and Immigration Services Inc. were legally authorized to provide legal services. (*Barrientos* Complaint ¶ 64).

39.11.  The *Barrientos* Plaintiffs suffered $23,000 in damages as a direct result of Defendants Francisco Alvarez and Immigration Services, Inc.'s representations and agreements to provide legal services for which they were not authorized to provide. (*Barrientos* Complaint ¶ 163).

39.12.  At no point during the events described in the *Barrientos* Complaint were Francisco Alvarez or Immigration Services, Inc. authorized to practice law. (*Barrientos* Complaint ¶¶ 3. 10, 151, 191).

40.     As a result of the above alleged conduct, the *Barrientos* Plaintiffs brought seven counts against Francisco Alvarez and Immigration Services, Inc.: Unauthorized Practice of Law in Pennsylvania under 42 Pa. C.S. § 2524; Violations of the Pennsylvania Unfair Trade Practices

and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*.; fraud; deceit; civil

conspiracy; violations of the federal Racketeering Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961, *et seq*.; and conspiracy to violate RICO, 18 U.S.C. § 1962(d).

### B. The *Barrientos de Interiano* Consent Decree and Settlement

41.     On November 3, 2015, the *Barrientos* Plaintiffs and Defendants Francisco

Alvarez and Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc., by and

through their attorneys, executed a Stipulation for Entry of Consent Injunctive Order (effective

October 30, 2015, pursuant to ¶ 2 thereof) arising from the *Barrientos* matter.  *See Barrientos de*

*Interiano*, No. 15-cv-04179, Dkt No. 31-1.

42.     The parties moved for approval of a Consent Injunctive Order.  That motion was

approved by the Court as a final Court Order (the "Consent Decree") on November 10, 2015.

*See Barrientos de Interiano*, No. 15-cv-04179, Dkt Nos. 32 and 33.

43.     The Consent Decree imposed various obligations and prohibitions on Aloe Vera

Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. and Francisco Alvarez.  That

injunction included the following provisions:

> 2.      *As of October 30, 2015* Alvarez Defendants shall cease to utilize
> the names "Immigration Services, Inc.", "Immigration Services, inc." or
> "Immigration Services" as a trade or business names *for any purpose* unless
> explicitly authorized to do so by the Pennsylvania Secretary of State.

> 3.      The Alvarez Defendants will not directly or indirectly share fees
> with attorneys or withhold from any funds received from any customers any funds
> or property received on behalf of any attorney.

> 4.      These provisions shall not bar Francisco Alvarez from direct
> employment as a legal assistant or paralegal employee under the direct
> supervision of an attorney licensed to practice law in Pennsylvania, so long as all
> activities of Francisco Alvarez are under the direct supervision of that attorney.

> *                *                *

> 12.     Alvarez Defendants are restrained and enjoined from engaging in,
> *or aiding any individual or entity under Defendants' direction and control* from
> engaging in, the unauthorized practice of law.

10

13.     Alvarez Defendants are restrained and enjoined from engaging in, *or aiding any individual or entity under Alvarez Defendants' direction and control* from engaging in, [] any "unfair methods of competition" and "unfair or deceptive acts or practices" as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law at 73 P.S. § 201-2.

(Emphasis added).

44.     The November 2015 Consent Decree defined terms used in the Order, including the following provisions:

5.     The term "advertising," "advertised," or "advertisement" refers to oral or written statements, visual descriptions, or other representations of any kind that are made to consumers for the purpose of promoting products or services.

6.     The term "attorney" means an individual duly licensed to practice law in one or more jurisdictions of the United States.

7.     The term "consumer" means a customer or client that receives goods or services.

8.     The term "*immigration services*" means the representation of immigrants seeking residency, work permits, or other immigration matters before the United States Government.

9.     The term "*legal services*" means the legal representation of an individual. This term includes, but is not limited to, receiving compensation for *selecting, drafting, or filing forms on behalf of another individual to be filed with any government agency or office*, including, but not limited to, USCIS [U.S. Citizenship and Immigration Services], and advising another individual as to his or her legal rights or as to the legal process. The term applies to activities performed in any state, and with regard to individuals who are residents of any state.

10.     The term "*unauthorized practice of law*" means providing, or representing that one is authorized to provide, legal services without being duly authorized or licensed in the state or territory in which the legal services are provided.  This definition is consistent with the formal opinion of the Pennsylvania Bar Association Committee on Unauthorized Practice of Law Formal Opinion 2006-01 as to what constitutes the unauthorized practice of law.

(Emphasis added).

45.     The November 2015 Consent Decree further provided:

14.     Alvarez Defendants are restrained and enjoined from advertising that Alvarez Defendants are qualified to provide legal services.  This includes, but is not limited to the following:

        a.      Stating or implying that Alvarez Defendants can provide "legal" advice or services.

        b.      Advertising "immigration services," "green card," "work permit," "residency" and "divorces." This prohibition includes advertising these services in any language, including Spanish.

        c.      Stating or implying that a non-attorney is a "notario," or "notario publico."

        d.      Stating or implying that Alvarez Defendants are authorized, qualified, or capable of assisting or helping a consumer with immigration questions, petitions to USCIS, or *selecting or filing immigration related forms.*

        e.      Stating or implying that any other person or entity is authorized, qualified, or capable of assisting or helping a consumer with *immigration questions, petitions to USCIS, or selecting or filing immigration related forms, unless such person is in fact an attorney*.

(Emphasis added).

    46.    The November 2015 Consent Decree provided:

    16.    Any individual alleging to have been aggrieved by a violation of this Consent Order shall have standing to enforce the Order.

    17.    The United States District Court for the Eastern District of Pennsylvania shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## II.    Background on Relevant Immigration Law

    47.    The subject of this action is Defendants' illegal and incompetent representation of

Plaintiff Tapia and his parents, both before and after this Court entered the *Barrientos* Consent

Decree.

    48.    The illegality of Defendants' conduct—that is, that Defendants engaged in the

unauthorized practice of law and other fraudulent practices in violation of both the Consent

Decree and Pennsylvania law—can be understood without additional legal authority and

background.

49.     On the other hand, the incompetence underlying Defendants' conduct—that is, that Defendants represented to Plaintiff Tapia that he and his family could and should apply for immigration relief for which they were statutorily ineligible—requires an understanding of two immigration processes that formed the basis for Defendants' ostensible efforts to attain lawful permanent residence for Plaintiff Tapia's parents.

### A. Petitions for Alien Relatives

50.     U.S. immigration law allows, in certain circumstances, for immediate family members of U.S. citizens to apply for lawful permanent residence (a "green card").

51.     The first step in this process is for the U.S. citizen (the "petitioner") to file a USCIS Form I-130 "Petition for Alien Relative" on behalf of the family member (the "beneficiary").

52.     The purpose of an I-130 is to certify the relationship between the U.S. citizen and the family member who will eventually seek lawful permanent residence.

53.     However, the approval of an I-130 Petition confers no lawful immigration status on either the petitioner or the beneficiary.

54.     If the I-130 is approved, the beneficiary then may proceed to the second step in their pursuit of legal status.  The required second step, however, changes based on whether or not the beneficiary is physically present in the United States.

55.     Beneficiaries physically present in the United States generally may apply for legal status by submitting to USCIS a document known as USCIS Form I-485 "Application to Register Permanent Residence or Adjust Status" (this process is known as applying for "adjustment of status").  USCIS will then adjudicate the application, determining whether the

applicant is eligible to adjust status to lawful permanent resident and whether the applicant will be granted lawful permanent residence.

56. Beneficiaries not physically present in the United States, on the other hand, must generally use a mechanism known as "consular processing" to achieve legal status.

56.1. Consular processing requires the beneficiary to apply for an immigrant visa with the U.S. Department of State through a U.S. consulate in the beneficiary's country of residence.

56.2. If USCIS determines that the beneficiary of an I-130 petition is not eligible for adjustment of status, USCIS will forward the application to the National Visa Center (NVC) of the Department of State for preliminary processing prior to the scheduling of a consular interview with the beneficiary.

56.3. Department of State visa processing fees for an application for permanent residence are paid through the National Visa Center (NVC) prior to scheduling of a consular appointment.

56.4. Once the application is received and an immigrant visa becomes available, the consular office will schedule an interview with the beneficiary.

56.5. Prior to the interview, the applicant must undergo a medical examination.

56.6. At the interview, the consular office will determine whether the beneficiary is eligible for an immigrant visa and whether the beneficiary will be granted the visa.

56.7. If granted a visa, the beneficiary can use it to seek entry into the United States and admission as a lawful permanent resident.

**B. Inadmissibility and Waivers of Inadmissibility**

57.     U.S. immigration law only permits certain people to adjust status or to receive immigrant visas—in particular, if you are "inadmissible" for any reason, you may not adjust status or receive an immigrant visa unless you qualify for and successfully apply for a waiver of inadmissibility.

58.     Generally, the beneficiary of an I-130 Petition for Alien Relative must request a waiver of inadmissibility using USCIS Form I-601 "Application for Waiver of Grounds of Inadmissibility."

59.     Only certain grounds of inadmissibility may be waived.  Of those potentially waivable grounds of inadmissibility, some may only be waived in certain limited circumstances.

60.     Two bases for inadmissibility are relevant to this matter.

61.     First, under 8 U.S.C § 1182(a)(9)(C)(i)(I) an alien who has been "unlawfully present in the United States for an aggregate period of more than 1 year . . . and who enters or attempts to reenter the United States without being admitted is inadmissible."

61.1.   This provision is known as the "permanent bar," and it applied to Plaintiff Tapia's father.

61.2.   For Plaintiff Tapia's father to have obtained permanent residence via an I-130 Petition for Alien Relative, his only option would have been to leave the United States, spend at least 10 years outside the country, initiate consular processing for an immigrant visa after 10 years outside the country, and then pay a significant fee to apply for discretionary permission to apply for readmission—all without any guarantee of receiving that discretionary permission.

62.     The second relevant basis for inadmissibility is created by 8 U.S.C. § 1182(9)(B)(i)(II), which provides that any alien who has been unlawfully present in the United

15

States for a year or longer becomes inadmissible for 10 years from the date of their departure from the United States.

> 62.1.   This ground of inadmissibility is known as the "10-year bar." Plaintiff Tapia's mother was subject to the 10-year bar.

> 62.2.   The 10-year bar can only be waived if the alien is the "spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent resident." *Id*. at § 1182(9)(B)(v).

> 62.3.   Plaintiff Tapia's <u>mother</u> is not the spouse or daughter of a U.S. citizen or lawfully admitted permanent resident, and thus is ineligible for a waiver.

63.   Plaintiff Tapia and his family were induced by Defendants to spend thousands of dollars to pursue immigration benefits that Plaintiff Tapia's parents were ineligible to receive.

### III.   Pre-Consent Decree Legal Services and Unauthorized Practice of Law

64.   In late 2014, an acquaintance of the Tapia family referred them to Francisco Alvarez for an immigration consultation.

65.   Conversations that Plaintiff Tapia and/or his father had with Defendants and their agents or representatives were conducted in Spanish.

66.   In late 2014, Plaintiff Tapia's father first discussed immigration representation for the family with Francisco Alvarez. He told Francisco Alvarez that the Tapias would like to attain immigration status for both of Plaintiff Tapia's parents.

67.   Francisco Alvarez led Plaintiff Tapia's father to believe that he was authorized by law to represent the family in immigration matters.

68.   Plaintiff Tapia's father believed, based on Defendants' representations, that Francisco Alvarez was an attorney.

69.     Francisco Alvarez said, "I'm going to give your case to Bianca, my daughter, who will do the job as if I myself had done it."

70.     Plaintiff Tapia's father then met with Bianca Alvarez, during which conversation Bianca Alvarez held herself out as authorized by law to provide immigration representation to the Tapias.

71.     Plaintiff Tapia's father believed, based on Defendants' representations, that Bianca Alvarez was an attorney or was acting under the direction of an attorney.

72.     The office where both Francisco Alvarez and Bianca Alvarez worked and received the Tapias for appointments appeared to be a law office, and indicated to customers that Immigration Services, Inc. and Bianca Alvarez could provide legal services.

73.     The office where Defendants met with the Tapias is the same office where Defendants were alleged to have worked in the *Barrientos* Complaint.

74.     Upon information and belief, as of the Fall of 2014 and continuing through 2015, signage on the exterior sides of 3901 N. 5th Street, included the following words and phrases (English translation in parentheses):

74.1.   "Servicio de Inmigracion" (Immigration Service)

74.2.   "Peticiones a Familiares" (Family Petitions)

74.3.   "Permiso de Trabajo" (Work Permit)

74.4.   "Ciudadania" (Citizenship)

74.5.   "Residencias" (Residency, which refers to the immigration benefit of obtaining lawful residency—*i.e.*, obtaining a "green card")

74.6.   "Divorcios" (Divorces)

75.     Upon information and belief, as of the Fall of 2014 and continuing through 2015, the signage on the Pike Street frontage of 3901 N. 5th Street described Francisco Alvarez as the "Director and CEO" of "Immigration Services" and described Bianca Alvarez as "Bilingual Legal Assistant."

76.     Upon information and belief, the exterior signage on the Pike Street frontage of 3901 N. 5th Street in late 2014 and early 2015 included the following:



77.     As a result of the outside business signage advertising legal services, including immigration assistance, a reasonable consumer would have believed that Defendants were legally authorized to provide immigration legal services.

78.     In January 2015, Plaintiff Tapia accompanied his father for a follow-up appointment to meet with Bianca Alvarez.

79.     During that appointment, Bianca Alvarez:

79.1.   Led Plaintiff Tapia to believe that she was authorized by law to represent the Tapias in immigration matters.

79.2.   Advised the Tapias that a child can petition for residence on behalf of his parents.

79.3.   Advised Plaintiff Tapia that both of Plaintiff Tapia's parents were eligible for and required a "perdon" (a Waiver of Inadmissibility), in order to obtain legal status.

79.4.   Offered that she and Immigration Services, Inc. would represent the Tapias in these immigration applications.

79.5.   Indicated that the cost of preparing and filing the necessary applications for Plaintiff Tapia's parents (including the "perdon") would be $3,000.

80.     As a result of Defendant Bianca Alvarez's representations, Plaintiff Tapia believed that Bianca Alvarez was an attorney or was acting under the direction of an attorney.

81.     Bianca Alvarez and the Tapias agreed that she, on behalf of Immigration Services, Inc., would file Petitions for Alien Relative ("I-130s") on behalf of Plaintiff Tapia, with his parents as beneficiaries.

82.     They further agreed that after approval of the I-130s, Bianca Alvarez, on behalf of Immigration Services, Inc., would apply for and obtain Waivers of Inadmissibility for each parent, so that they could then obtain lawful permanent residence.

83.     Bianca Alvarez led Plaintiff Tapia and Plaintiff Tapia's father to believe that Plaintiff Tapia's father would be able to adjust his immigration status without leaving the United States.

84.     Defendant Bianca Alvarez assured Plaintiff Tapia and his father that the total amount of time until his father obtained lawful permanent residency would be approximately 2-3 years.

85.     Bianca Alvarez informed Plaintiff Tapia that his mother, who was outside of the United States, was eligible for and would qualify for a "perdon" (a Waiver of Inadmissibility), and would be able to enter the United States as a permanent resident after the application for a "perdon" was granted.

86.     Plaintiff Tapia and his father agreed to pay to Immigration Services, Inc. a total of $3,000 in installments for the applications to be submitted.

87.     At no time in early 2015 was Plaintiff Tapia or his father informed that they would be responsible for payment of more than $3,000 for immigration services and fees.

88.     At no time in early 2015 did Plaintiff Tapia or his father understand that there would be additional fees or expenses to be paid beyond the $3,000 that they agreed to pay.

89.     The Tapias made an initial cash payment of $300 at the time of the January 2015 meeting.

90.     The Tapias agreed to pay the remaining $2,700 in cash installment payments at the rate of $100 per month.

91.     A competent immigration attorney would have known that neither of Plaintiff Tapia's parents would be able to obtain lawful permanent residency after their I-130 Petitions were approved and would have communicated this information to Plaintiff Tapia and his family.

92.     In each of the months thereafter from February 5, 2015 through October 5, 2015, the Tapias made $100 cash payments to Immigration Services, Inc.

93.     In the spring of 2015, at a subsequent meeting with Bianca Alvarez, Plaintiff Tapia and his father brought paperwork requested by Bianca Alvarez for the completion of the I-130 Petitions.

94.     At that time Plaintiff Tapia signed various forms where indicated by Bianca Alvarez.

95.     On or about June 5, 2015, Bianca Alvarez submitted a Form I-130 Alien Relative Petition on behalf of Plaintiff Tapia to USCIS, which designated Plaintiff Tapia's father as the beneficiary.

95.1.   Bianca Alvarez transmitted a $420 filing fee for the Petition to USCIS.

95.2.   The I-130 Petition listed as the return address a PO Box controlled by Defendants, PO Box 46845, Philadelphia, PA 19160.

95.3.   Upon information and belief, the I-130 prepared by Bianca Alvarez indicated that Plaintiff Tapia's father would apply for adjustment of status to that of a lawful permanent resident from within the United States.

95.4.   A competent immigration attorney would have known that Plaintiff Tapia's father did not qualify for adjustment of status to that of a lawful permanent resident from within the United States.

96.     On October 15, 2015, USCIS issued an Approval Notice for the I-130 Alien Relative Petition on behalf of Plaintiff Tapia's father, which was addressed to: Trinidad Tapia Osorio, c/o Bianca Alvarez, PO Box 46845, Philadelphia, PA 19160.

97.     In addition to noting that the Alien Relative Petition was approved for Plaintiff Tapia's father, the Approval Notice also stated:

> The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of status.  The evidence indicates that he or she is not eligible to file an adjustment of status application. . . . Because the person for whom you are petitioning is not eligible to adjust, we have sent the approved petition to the [National Visa Center] ("NVC").  NVC processes all approved immigrant visas which consular post is the appropriate consulate to complete visa processing. NVC will then forward the approved petition to that consulate.

(Emphasis added).

98.     Between January 15, 2015 and October 30, 2015, the Tapias paid a total of $1,200 in cash to Immigration Services, Inc., through Bianca Alvarez, in 10 separate payments.

99.     The receipts issued to the Tapias upon submitting payments indicated that they were for "I-130 case."

21

100.     The receipts listed "Immigration Services, Inc." as the payee, and included the

following information about Immigration Services, Inc.

**IMMIGRATION SERVICES, INC.**
3901 N. 5TH STREET
PHILADELPHIA, PENNSYLVANIA 19140
1immigration.services@gmail.com
PHONE: (215) 225-0171 CELL: (215) 432-4389

101.     The last of the pre-Consent Decree receipts issued by Bianca Alvarez and

Immigration Services, Inc., on October 5, 2015, reflected a balance due of $1,800.

### IV.     Post-Consent Decree Legal Services and Unauthorized Practice of Law as "Immigration Services, Inc."

102.     Prior to receipt of the I-130 approval notice for Plaintiff Tapia's father, the Tapia

family had understood that the total amounts that would have to be paid for immigration

processing for both of Plaintiff Tapia's parents was $3,000.

103.     However, after USCIS issued the I-130 approval notice for Plaintiff Tapia's

father, Bianca Alvarez on behalf of Defendants informed Plaintiff Tapia and his father that the

Tapias would be required to pay an additional $1,500 in fees and costs.

104.     Upon information and belief, the additional $1,500 was purported to be for the

processing of the Petition for Permanent Residency on behalf of Plaintiff Tapia's father by the

Department of State's National Visa Center (NVC).

105.     On November 3, 2015, Plaintiff Tapia paid Bianca Alvarez $1,500 in cash;

Bianca Alvarez issued him a receipt on behalf of "Immigration Services, Inc.," which stated the

payment was for "NVC Case fees." This sum was not credited against the $3,000 that

Defendants originally had charged the Tapias.

106.     The $1,500 payment increased the Tapias' total liability to $4,500.

107.     On or about November 9, 2015, Bianca Alvarez submitted an I-130 Alien

Relative Petition by Plaintiff Tapia as petitioner for his mother as the beneficiary.

22

107.1.  Bianca Alvarez transmitted $420 to USCIS as a filing fee for the Petition.

107.2.  The Petition listed the return address as PO Box 46845, Philadelphia, PA 19160.

108.    On November 10, 2015, the Tapias paid an additional $100 installment payment to Immigration Service, Inc. through Bianca Alvarez.

108.1.  The receipt indicated the payee was "Immigration Services, Inc.," and that the payment was for "I-130."

108.2.  The receipt carried forward the prior balance for I-130 Petitions and reflected that $1,700 remained due.

109.    On January 15, 2016, USCIS issued an Approval Notice for the Alien Relative Petition submitted on Plaintiff Tapia's behalf for his mother as beneficiary, which was addressed to: Trinidad Tapia Osorio, c/o Bianca Alvarez, PO Box 46845, Philadelphia, PA 19160.

110.    In addition to noting that the Alien Relative Petition was approved, the Approval Notice also stated that because Plaintiff Tapia's mother was physically in Mexico, the NVC (National Visa Center) would handle scheduling for consular processing in Mexico of her application for a visa.

## V.    Post-Consent Decree Legal Services and Unauthorized Practice of Law by Defendants as "Alvarez Legal Form & Immigration Support"

111.    Beginning several months after entry of the *Barrientos* Consent Decree, Defendants made certain changes to their advertising of immigration legal services.

112.    Beginning in February 2016, Defendants issued receipts to the Tapias for cash payments with the name "Alvarez Legal Form & Immigration Support" listed as the payee.

112.1.  No explanation for the name change was provided to Plaintiff Tapia or his father.

112.2.  The Pennsylvania Department of State shows no registration for the business entity "Alvarez Legal Form & Immigration Support."

112.3.  Upon information and belief, Defendant Aloe Vera adopted the name "Alvarez Legal Form & Immigration Support" as a trade name for a continuation of its prior business of providing immigration legal services, in place of the name "Immigration Services, Inc.," which it had been forbidden from using after October 30, 2015 by the *Barrientos* Consent Decree.

112.4.  Upon information and belief, "Alvarez Legal Form & Immigration Support" is a trade name or "doing business as" name utilized by Defendants without legal authorization.

112.5.  Upon information and belief, "Alvarez Legal Form & Immigration Support" was operated under the control of Defendants Francisco Alvarez and Bianca Alvarez.

112.6.  The receipts listing "Alvarez Legal Form & Immigration Support" included the following information about Alvarez Legal Form & Immigration Support:

**Alvarez Legal Form & Immigration Support**
3901 N. 5th Street
Philadelphia, PA 19140
**215-225-0171**

112.7.  As set forth below, the cash receipts provided to Plaintiff Tapia and his father beginning in February 2016, carried forward the balance due for "I-130" services, which had been previously identified by Defendants as a balance due to "Immigration Services, Inc."

113.   As noted above, the *Barrientos* Consent Decree provided:

3.    The Alvarez Defendants will not directly or indirectly share fees with attorneys or withhold from any funds received from any customers any funds or property received on behalf of any attorney. *Barrientos*, No. 15-cv-04179, Dkt No. 33, ¶ 3

4.    These provisions shall not bar Francisco Alvarez from direct employment as a legal assistant or paralegal employee under the direct supervision of an attorney licensed to practice law in Pennsylvania, so long as all activities of Francisco Alvarez are under the direct supervision of that attorney. *Barrientos*, No. 15-cv-04179, Dkt No. 33, ¶ 4.

114.    Upon information and belief, by some point in early 2016, Defendant Francisco Alvarez began holding himself out as operating under the direct employment of a licensed Pennsylvania attorney named Shaela Cruz.

115.    At no time did Shaela Cruz supervise Defendant Bianca Alvarez.

116.    Upon information and belief, at no time did Shaela Cruz control the legal services provided by Defendant Aloe Vera under the trade name "Alvarez Legal Form & Immigration Support."

117.    Upon information and belief, Shaela Cruz did, however, establish a law office at the 3901 N. 5th Street address.

118.    Upon information and belief, throughout 2016 and thereafter, Defendants continued to provide immigration legal services through Defendants Bianca Alvarez and Aloe Vera, d.b.a. "Alvarez Legal Form & Immigration Support."

119.    Upon information and belief, throughout 2016 and early 2017 Defendant Francisco Alvarez continued in his role as President and CEO of Defendant Aloe Vera to direct and control the activities of Aloe Vera and of Defendant Bianca Alvarez on behalf of Defendant Aloe Vera, d.b.a "Alvarez Legal Form & Immigration Support."

120.    Upon information and belief, Defendant Francisco Alvarez continued to provide immigration legal services through Defendants Bianca Alvarez and Aloe Vera independently from direction, control, or supervision of Shaela Cruz.

121.    Despite the fact that Shaela Cruz never supervised or controlled the activities of Defendant Bianca Alvarez or Defendant Aloe Vera, Defendants posted new signage that indicated that Defendant Bianca Alvarez was a "bilingual immigration paralegal" associated with Shaela Cruz and an "Immigration Law Office" ("Abogados de Inmigracion").

122.    That new signage posted on the Pike Street frontage of Defendants' building at 3901 N. 5th Street showed the following:



123.    When Shaela Cruz established a law office at 3901 N. 5th Street, Plaintiff Tapia was never informed of any change in his family's representation by Defendants and was never introduced to Shaela Cruz.

124.    On February 11, 2016, Plaintiff Tapia's father paid Bianca Alvarez $300. Bianca Alvarez provided Plaintiff Tapia's father with the first receipt bearing the name "Alvarez Legal Form & Immigration Support." The receipt carried forward the prior balance due to "Immigration Services, Inc.," and reflected a balance due of $1,400.

26

125.    On February 22, 2016, Plaintiff Tapia paid Bianca Alvarez $2,785, in the form of

six USPS money orders.

125.1.  Bianca Alvarez issued Plaintiff Tapia a receipt for "NVC Fees I 601,"

again from "Alvarez Legal Form & Immigration Support."

125.2.  Plaintiff Tapia was informed that these additional fees were for the further

processing of the application for permanent residency on behalf of his mother.

125.3.  Prior to January 2016, Plaintiff Tapia had not been informed by

Defendants that these additional fees would be required for the processing of the

application for permanent residency on behalf of his mother.

125.4.  The USCIS Form I-601 is an "Application for Waiver of Grounds of

Inadmissibility."

125.5.  This payment was not credited against Plaintiff Tapia's outstanding

balance and instead increased his total liability to $7,285.

126.    Plaintiff Tapia and his family were not given any advance notice that the $2,785

payment would be required.

127.    In order to make the payment of $2,785, the Tapias were required to take out a

loan.  They paid approximately $600 in interest on this loan.

128.    As of February 22, 2016, Plaintiff Tapia and his family had paid $5,885 for

immigration services and ostensibly owed an additional $1,400.

129.    At some point after February 22, 2016, and before June 2016, Bianca Alvarez

returned $675 to the Tapias with no explanation other than a written note that it was "for the

visas and the waiver of inadmissibility."

129.1.  Taking into account the returned money, Plaintiff Tapia and his family had paid a total of $5,210 for immigration legal services.

129.2.  It is the current understanding of Plaintiff Tapia that these returned funds were related to a decision by Defendants that Defendants would not pursue further processing of applications for permanent residency on behalf of Plaintiff Tapia's father.

129.3.  Plaintiff Tapia was provided no explanation as to the discrepancy between the amount of $675 and the $1,500 paid by Plaintiff Tapia on November 3, 2015 for "NVC Case Fees" on behalf of his father.

129.4.  Plaintiff Tapia was provided no explanation as to Defendants' basis for deciding not to pursue processing of the application for permanent residency on behalf of his father.

129.5.  Upon information and belief, the $675 returned to the Tapias was due to a recognition by Defendants that Plaintiff Tapia's father was not eligible to obtain any waiver of inadmissibility (a "perdon") that would allow him to obtain permanent residence status in the United States.

129.6.  Upon information and belief, a competent immigration attorney would have also been aware that Plaintiff Tapia's mother was also ineligible for a Waiver of Inadmissibility and that any application requesting such a waiver would be denied.

130.    Subsequent to February 2016, Plaintiff Tapia and his family made additional payments to Defendants for continued processing of an application for permanent residency on behalf of Plaintiff Tapia's mother.

130.1.  On June 9, 2016, the Tapias paid $200 in cash to Defendants through Alvarez Legal Form and Immigration Support.  The receipt issued to Plaintiff Tapia and his family asserted that the remaining balance for "I-130 case" was $1,200.

130.2.  On August 2, 2016, the Tapias paid $300 in cash to Defendants through Alvarez Legal Form and Immigration Support.  The receipt issued to Plaintiff Tapia and his family asserted that the remaining balance for "I-130 case" was $900.

130.3.  Between September 2016 and February 2017, the Tapias paid an additional $300 in cash to Defendants through Alvarez Legal Form and Immigration Support for the "I-130 case."

130.4.  On March 3, 2017, the Tapias paid an additional $300 in cash to Defendants through Alvarez Legal Form and Immigration Support for the "I-130 case."

131.     Defendant Bianca Alvarez on behalf of Defendant Aloe Vera d.b.a. "Alvarez Legal Form & Immigration Support" issued a receipt after each payment that listed the purpose of the payment as "I-130 case" and the payee as "Alvarez Legal Form & Immigration Support."

132.     As of March 3, 2017, the net total amount paid directly to Defendants by Plaintiff Tapia and his father was $6,310.

## VI.    Plaintiff Tapia's Mother's Waiver of Inadmissibility is Denied

133.    On or around February 28, 2017, Plaintiff Tapia's mother received a notice from USCIS requiring her to travel to Ciudad Juarez, Mexico—almost 1,200 miles from where she had been living—to interview with immigration officials as part of the process to obtain an immigrant visa through consular processing.

134.    Before Plaintiff Tapia's mother's interview was scheduled, the Tapias attempted to contact Defendant Bianca Alvarez with questions about the interview and documents that were needed for the interview.

135.    Because Defendant Bianca Alvarez was not answering her phone, Plaintiff Tapia and his father went to her office.

136.    At Defendants' office, the Tapias spoke with Defendant Francisco Alvarez, who instructed that Plaintiff Tapia's mother needed certain documents in order to pass her consular interview and receive a waiver of inadmissibility. Defendant Francisco Alvarez instructed Plaintiff Tapia and his father on which documents were needed, and told Plaintiff Tapia to send those documents to his mother in Mexico.

137.    Plaintiff Tapia and his family incurred substantial additional expenses in preparing for the consular interview. Many of these expenses were incurred in Mexican pesos, but amounts have been converted to their U.S. Dollar (USD) equivalents.

137.1.  They paid $170 (USD) to send various documents to and from Mexico.

137.2.  They paid $31 (USD) to obtain various required certifications (*e.g.*, criminal background check).

137.3.  They paid $1,107 (USD) for Plaintiff Tapia's mother and aunt to travel to and from Ciudad Juarez for the interview. Plaintiff Tapia's mother does not read or write, and therefore required someone to accompany her.

137.4.  They paid $250 (USD) for a hotel room in Ciudad Juarez for the duration of the stay.

137.5.  They paid $215 (USD) for Plaintiff Tapia's mother's medical exam required for consular processing,

137.6.  They paid $157 (USD) for Plaintiff Tapia's mother's vaccinations required for consular processing.

137.7.  Combined, Plaintiff Tapia and his family paid not less than $1,930 in additional expenses related to the appointment for consular processing for which they gained no benefit.

138.  On April 17, 2017, Plaintiff Tapia's mother attended the interview. She subsequently learned that she had been denied the visa.

139.  After Plaintiff Tapia's father heard the news of the denied visa, he called Bianca Alvarez.

140.  Bianca Alvarez told Plaintiff Tapia's father that there was nothing else that could be done, and that Plaintiff Tapia's mother would have to wait until 2023 to adjust her status.

141.  Bianca Alvarez never explained why Plaintiff Tapia's parents did not receive waivers of inadmissibility.

142.  Bianca Alvarez never explained that neither parent had been eligible for a waiver of inadmissibility.

31

143.    All told, Plaintiff Tapia and his family paid not less than $8,640 in fees and expenses for which they gained no benefit.

## FIRST CAUSE OF ACTION

### Violation of the *Barrientos de Interiano* Consent Decree

144.    Plaintiff Tapia incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

145.    Defendants repeatedly violated the Consent Decree entered by this Court as an Order.

146.    Defendants continued using the trade name "Immigration Services, Inc.," after the October 30, 2015 effective date of the Consent Decree, without explicit authorization from the Pennsylvania Secretary of State.

147.    Defendants Bianca Alvarez and Aloe Vera engaged in the unauthorized practice of law in violation of the Consent Decree by:

147.1.  Selecting, preparing, and filing Form I-130 Petitions for Alien Relative for Plaintiff Tapia on behalf of his parents.

147.2.  Representing that both Plaintiff Tapia's father and Plaintiff Tapia's mother would qualify for waivers of inadmissibility.

147.3.  Representing that Defendants would file and/or filing Waivers of Inadmissibility on behalf of Plaintiff Tapia's parents.

147.4.  Advising Plaintiff Tapia and his family as to their legal rights with respect to the immigration process, including advising them that they should file I-130 Petitions for Alien Relative and that they should apply for Waivers of Inadmissibility.

147.5. Charging Plaintiff Tapia more than "nominal" remuneration for clerical or notary services. *See* Pa. Bar Assoc. Committee on Unauthorized Practice of Law Op. 2006-01.

147.6. Failing to advise Plaintiff Tapia that Bianca Alvarez was not qualified in legal matters or in immigration or naturalization procedure. *See id.*

148.   Defendants Francisco Alvarez and Aloe Vera engaged in the unauthorized practice of law in violation of the Consent Decree by:

148.1. Advising Plaintiff Tapia and his father as to the paperwork needed for Plaintiff Tapia's mother's consular interview in Ciudad Juarez.

148.2. Charging Plaintiff Tapia more than "nominal" remuneration. *See id.*

148.3. Failing to advise Plaintiff Tapia that Francisco Alvarez was not qualified in legal matters or in immigration or naturalization procedure. *See id.*

148.4. Representing that Defendants Bianca Alvarez and Aloe Vera were qualified and authorized to provide representation in immigration related legal matters.

149.   Defendants Francisco Alvarez and Aloe Vera aided the unauthorized practice of law by referring Plaintiff Tapia and his family to Defendant Bianca Alvarez and by endorsing her ability to resolve the Tapias' legal issues.

150.   Defendants stated and implied that they were qualified to provide legal services by:

150.1. Using the name Immigration Services, Inc.

150.2. Using the name Alvarez Legal Form and Immigration Support.

150.3. Using signage on their storefront that indicated they could provide services for "citizenship," "residency," "divorces," "marriages," and "deportations."

150.4. Using signage on their storefront that falsely implied Bianca Alvarez was supervised by an attorney.

150.5. Using signage that implied a non-attorney was a "notaria."

150.6. Telling the Tapias that they could provide immigration services related to Family Petitions, Waivers of Inadmissibility, and attaining lawful permanent resident status.

150.7. Providing the Tapias with legal counsel on the matters of Family Petitions, Waivers of Inadmissibility, and attaining lawful permanent resident status.

150.8. Selecting and filing immigration related forms on behalf of the Tapias.

150.9. Failing to inform the Tapias of the Consent Decree entered against them.

151.    Defendants violated the Consent Decree by engaging in "unfair or deceptive practices" and "unfair methods of competition" as defined by the UTPCPL, 73 P.S. § 201-2.

## SECOND CAUSE OF ACTION

### Unauthorized Practice of Law in Pennsylvania
### 42 Pa. C.S. § 2524

152.    The allegations of all preceding and subsequent paragraphs are restated and incorporated by reference as if they had been set forth fully herein.

153.    Only persons admitted to the Pennsylvania bar are permitted to practice law in Pennsylvania. 42 Pa. C.S. § 2521.

154.    Neither Defendant Bianca Alvarez nor Defendant Francisco Alvarez is a member of the Pennsylvania bar and each is therefore prohibited from engaging in the practice of law. 42 Pa. C.S. § 2524.

155.    Moreover, neither Defendant Bianca Alvarez nor Defendant Francisco Alvarez is otherwise authorized to represent individuals in immigration matters under 8 C.F.R. § 292.1.

156.    Defendant Aloe Vera is not a professional corporation authorized pursuant to 15 Pa. C.S. Ch. 29 to engage in the practice of law.

157.    Defendants Bianca Alvarez and Francisco Alvarez never informed Plaintiff Tapia or members of his family that neither of them was a lawyer nor otherwise authorized to provide immigration legal services.

158.    In fact, Defendants Bianca Alvarez and Francisco Alvarez each represented that they were qualified to practice law by identifying themselves to Plaintiff Tapia and members of his family as authorized to provide immigration legal services.

159.    Defendant Bianca Alvarez and Defendant Francisco Alvarez further engaged in the unauthorized practice of law by furnishing to Plaintiff Tapia and members of his family advice or services "in such a manner as to convey the impression that he is a practitioner of the law . . . ." 42 Pa. C.S. § 2524(a).

160.    Specifically, Defendants Bianca Alvarez and Francisco Alvarez advised Plaintiff Tapia and members of his family on immigration law.

161.    By providing advice on seeking immigration benefits, Defendants Bianca Alvarez and Francisco Alvarez each engaged in the unauthorized practice of law.

162.    Defendants Bianca Alvarez and Francisco Alvarez collected fees for providing legal services for which neither of them was authorized to provide.

163.    Additionally, persons such as paralegals or legal assistants who practice law or hold themselves out to the public as permitted to practice law are engaging in the unauthorized practice of law.  42 Pa. C.S. § 2524. *See* Pa. Bar Assoc. Unauthorized Practice of Law Committee, Opinion 96-103 (stating that an independent paralegal may not advertise his or her services to the general public, but instead only to lawyers and law firms).

164.    Defendants Bianca Alvarez and Francisco Alvarez therefore engaged in the unauthorized practice of law because each of them represented that they were qualified or authorized to practice law in the Commonwealth of Pennsylvania by advertising their legal services to the public via: (i) the radio; (ii) street signage; (iii) word of mouth; (iv) print advertisements; and (v) the internet and social media.

165.    A reasonable person would believe based on the business signage and Defendants Bianca Alvarez and Francisco Alvarez's oral representations that Defendants Bianca Alvarez and Francisco Alvarez were authorized or qualified to practice law in the Commonwealth of Pennsylvania.

166.    Plaintiff Tapia and members of his family suffered damages as a direct result of Defendants' representations and agreements to provide legal services that they were not authorized to provide.

167.    Plaintiff Tapia and members of his family are entitled to equitable and injunctive relief under 42 Pa. C.S. § 2524.

## THIRD CAUSE OF ACTION

### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. §§ 201-1 – 201-9.2

168.    Plaintiff Tapia incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

169.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") authorizes claims for a period of up to six years for unfair or deceptive practices in relationship to a purchase or lease of goods or services for personal, family, or household services.

170.    Defendants violated the UTPCPL by representing and implying that they were authorized to provide legal services, and by then providing legal services.

171.    The UTPCPL prohibits any "unfair or deceptive acts or practices." 73 P.S. § 201-3.

172.    A violation under 42 Pa. C.S. § 2524(a) for the unauthorized practice of law is also automatically a violation of the UTPCPL law.  42 Pa. C.S. § 2524(c).

173.    Plaintiff Tapia and members of his family sought Defendants' assistance "primarily for personal, family, or household purposes and thereby suffer[ed] an ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful in section 3 [of the UTPCPL]." 73 P.S. § 201-9.2(a).

174.    Defendants advertised, solicited, and engaged in "trade" or "commerce" with Plaintiff Tapia and members of his family within the meaning of the UTPCPL, which defines "trade" or "commerce" as "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." 73 P.S. § 201-2(3).

175.    Defendants engaged in "unfair or deceptive acts or practices" within the meaning of the UTPCPL, which includes "any conduct or trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 . . . ." 73 P.S. § 201-3.

176.    Defendants made various material misrepresentations with the intent that consumers such as Plaintiff Tapia and members of his family would rely on them.

177.    Plaintiff Tapia and members of his family suffered actual damages due to Defendants deceptive and fraudulent practices.

178.     Plaintiff Tapia and members of his family are entitled to recover up to three times the actual damages sustained, costs, and reasonable attorney's fees.  73 P.S. § 201-9.2(a).

## A.   Fraudulent and/or Deceptive Conduct Which Creates a Likelihood of Confusion or Misunderstanding, 73 P.S. § 201-2(4)(xxi)

179.     Defendants violated the UTPCPL prohibition against "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi).

180.     Defendants engaged in a series of acts that constitute deceptive and/or fraudulent conduct, including but not limited to: (i) representing that Defendants were authorized to provide immigration services; (ii) collecting funds from Plaintiff Tapia and members of his family for valueless services; and (iii) holding themselves out to the public as a business that provides a variety of legal services even though they are not authorized to do so.

181.     Defendants engaged in these violations willfully.

## B.   Misrepresentation of Affiliation, Connection, or Association, 73 P.S. § 201-2(4)(iii)

182.     Defendants violated the UTPCPL's prohibition against "causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another." 73 P.S. § 201-2(4)(iii).

183.     Specifically, a reasonable consumer would believe, based on Defendants' oral representations, that Defendants Bianca Alvarez and Francisco Alvarez were legally authorized to perform legal services.

184.     Additionally, a reasonable consumer would also believe, based on Defendants' business signage, that Defendants were legally authorized to perform legal services.

185.     In fact, however, Defendants were not authorized to provide legal services.

186.     Defendants engaged in these violations willfully.

### C. Misrepresentation of Characteristics or Benefits, 73 P.S. 201-2(4)(v)

187.     Defendants violated the UTPCPL's prohibition against "[mis]representing that . . . services have . . . characteristics . . . [or] benefits . . . that they do not have." 73 P.S. § 201-2(4)(v).

188.     Specifically, a reasonable consumer would believe, based on the Defendants' business signage and oral representations, that Defendants Bianca Alvarez and Francisco Alvarez were authorized to perform legal services.

189.     In fact, however, Defendants were not authorized to provide legal services.

190.     Additionally, a reasonable consumer would believe, based on Defendants' oral representations, that Defendants were charging fees in exchange for the provision of immigration legal assistance, and that the immigration benefits that Defendants offered to seek for Plaintiff Tapia and members of his family existed.

191.     In fact, however, Defendants charged fees for unattainable and/or nonexistent immigration benefits.

192.     Defendants engaged in these violations willfully.

### D. Misrepresentation of Standard or Quality, 73 P.S. § 201(2)(4)(vii)

193.     Defendants violated the UTPCPL's prohibition against "[m]isrepresenting that . . . services are of a particular standard, [or] quality . . . ."  73 P.S. § 201-2(4)(vii).

194.     Specifically, a reasonable consumer would believe, based upon Defendants' oral representations, legal advice and purported assistance to Plaintiff Tapia and members of his family, that Defendants Bianca Alvarez and Francisco Alvarez had legal training and has a license authorizing each of them to provide legal services.

195.    Furthermore, a reasonable consumer would believe, based upon Defendants'
business signage and advertisements, that they were authorized to provide legal services.

196.    In fact, Defendants Bianca Alvarez and Francisco Alvarez did not have a license
authorizing either of them to provide legal services but nevertheless held themselves out to be
authorized to provide legal services.

197.    Defendants engaged in these violations willfully.

198.    The Court is requested to issue appropriate injunctive and declaratory orders as to
the violations of the Act by Defendants.  73 P.S. § 201-9.2.

199.    Plaintiff Tapia is entitled to monetary damages, treble damages, and attorneys'
fees and costs.

### FOURTH CAUSE OF ACTION

#### Unjust Enrichment

200.    Plaintiff Tapia incorporates by reference all other paragraphs in this Complaint as
if they were fully set forth herein.

201.    Plaintiff Tapia conferred a benefit to Defendants in the form of payments for legal
services.

202.    Defendants accepted and received the payments.

203.    It would be inequitable and unjust for Defendants to retain these monies, which
were procured by false and misleading representations.

204.    Specifically, Defendants misrepresented their ability to provide legal services to
Plaintiff Tapia and members of his family in order to induce Plaintiff Tapia and members of his
family into making significant payments to Defendants for what they believed to be legitimate
and ethical legal services.

205.    Defendants received payments for legal fees for which they should not have received, as payments were made under false pretenses and due to Defendants' fraudulent misrepresentations.

206.    Plaintiff Tapia is entitled to relief for this unjust enrichment equal to the benefits unjustly retained by Defendants, plus interest on these amounts.

207.    Under principles of the discovery rule, equitable tolling, fraudulent concealment, and/or the continuing violations doctrine, any statutes of limitations relating to the causes of action alleged in this complaint on behalf of Plaintiff Tapia should be tolled for the period in which Plaintiff Tapia was unaware of the harm or unable to take action to seek a remedy for the violations.

208.    Because Defendants' misrepresentations were made within what Plaintiff Tapia thought to be an attorney-client relationship, Defendants had complete control of information and were able to manipulate and hide information.

209.    Defendants exploited Plaintiff Tapia's reliance on their legal representation and the trust given to them by Plaintiff Tapia to carry out their fraudulent legal services.

210.    Plaintiff Tapia was able to discover the wrongdoing alleged herein only with the assistance of counsel.  Otherwise, Plaintiff Tapia had no basis upon which to investigate the legal services that Defendants purported to provide.

## FIFTH CAUSE OF ACTION

### Breach of Contract

211.    Plaintiff Tapia incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

212.     Defendants entered into a contract with Plaintiff Tapia and each party's acceptance was supported by good and valuable consideration.

213.     Plaintiff Tapia fulfilled his contractual obligations by making payments to Defendants.

214.     Defendants breached the contract with Plaintiff by failing to provide legitimate legal services to Plaintiff.

215.     Because Defendants breached the contract, Plaintiff Tapia suffered a financial loss.

216.     Plaintiff Tapia is entitled to monetary damages sufficient to place him in the financial position he would have been in but for Defendants' breach.

217.     Under principles of the discovery rule, equitable tolling, fraudulent concealment, and/or the continuing violations doctrine, any statutes of limitations relating to the causes of action alleged in this complaint on behalf of Plaintiff Tapia should be tolled for the period in which Plaintiff was unaware of the harm or unable to take action to seek a remedy for the violations.

218.     Because Defendants' misrepresentations were made within what Plaintiff Tapia thought to be an attorney-client relationship, Defendants had complete control of information and were able to manipulate and hide information.

219.     Defendants exploited Plaintiff Tapia's reliance on their legal representation and the trust given to them by Plaintiff Tapia to carry out their fraudulent legal services.

220.     Plaintiff Tapia was able to discover the wrongdoing alleged herein only with the assistance of counsel.  Otherwise, Plaintiff Tapia had no basis upon which to investigate the legal services that Defendants purported to provide.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tapia respectfully requests this Court:

1.      Find Defendants in contempt of court for their violations of this Court's November 10, 2015 Order.

2.      Award Plaintiff Tapia actual damages, punitive damages, consequential damages, and attorneys' fees and costs, for violations of the *Barrientos* Consent Decree.

3.      Award Plaintiff Tapia treble damages, and reasonable attorneys' fees and costs, for violations of the UTPCPL, 73 P.S. § 201.9.2(a).

4.      Find that Defendants were unjustly enriched at Plaintiff Tapia's expense and order disgorgement of all funds paid to Defendants by Plaintiff Tapia, with interest.

5.      Award Plaintiff Tapia damages for breach of contract.

6.      Enjoin Defendants from further violations of the *Barrientos* Consent Decree or violations of the UTPCPL.

7.      Such further relief as the Court deems proper, including any consequential damages suffered by Plaintiff Tapia as a result of Defendants' deceptive and fraudulent actions.

Dated: February 25, 2020

Respectfully submitted,

By: _____

Samuel H. Datlof, Esq.
    PA ID#: 324716
    Email: sdatlof@justiceatworklegalaid.org

_____

Arthur N. Read, Esq.
    PA ID #: 29360
    Email: aread@justiceatworklegalaid.org
Justice at Work
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878

*Attorneys for Plaintiff*

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TRINIDAD TAPIA OSORIO

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Samuel H. Datlof and Arthur N. Read, Justice at Work
990 Spring Garden Street, Suite 300, Philadelphia, PA 19123
Telephone: (215) 733-0878

## DEFENDANTS

Bianca Alvarez, Francisco Alvarez, and Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc.

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Michael I. McDermott

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Court retention of jurisdiction to enforce final order in Docket Number 2:15-cv-04179-JS
Brief description of cause:
Enforcement of final court injunctive order regulating unauthorized practice of law

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
25,920.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Juan R. Sánchez   DOCKET NUMBER   2:15-cv-04179-JS

DATE
02/24/2020

SIGNATURE OF ATTORNEY OF RECORD

FEB 25 2020

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

20-CV-1070
20    1070

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA _____

Address of Defendant: _____ Philadelphia, PA _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: 15-cv-04179   Judge: Juan R. Sánchez   Date Terminated: motion to reopen pending, terminated 12/14/2015

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ✓   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ✓   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ✓

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ✓

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/24/2020   _____   324716
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* enforce federal court injunctive order

**B.   *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Samuel H. Datlof , counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

- ☑ Relief other than monetary damages is sought.

FEB 25 2020

DATE: 02/24/2020   _____   324716
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Trinidad Tapia Osorio | Bianca Alvarez, Francisco Alvarez, and Aloe Vera | CIVIL ACTION |
| | v. Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. | NO.  20   1070 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X)

| | | |
|---|---|---|
| 2/24/2020 | Samuel H. Datlof | Trinidad Tapia Osorio |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-733-0878 | 215-733-0876 | sdatlof@justiceatworklegalaid.org |
| | | |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FEB 25 2020

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Trinidad Tapia Osorio | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No.   **20**   **1 0 7 0** |
| Francisco Alvarez, et al. | ) | |
| *Defendant* | ) | |

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Plaintiff Trinidad Tapia Osorio

Date:     02/25/2020

*Attorney's signature*

Arthur N. Read, PA ID# 29360
*Printed name and bar number*

Justice at Work
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123

*Address*

aread@justiceatworklegalaid.org
*E-mail address*

(215) 733-0878
*Telephone number*

(215) 733-0876
*FAX number*

Validation of Signature Code:      ANR5140