**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VERONICA MARLENE BARRIENTOS DE
INTERIANO and EDWIN AROLDO INTERIANO
CRUZ,

Plaintiffs

v.

FRANCISCO ALVAREZ, IMMIGRATION
SERVICES, INC., et al.,

Defendants

---------------------------------------------------------------

TRINIDAD TAPIA OSORIO,

Intervenor Plaintiff.

Case 2:15-cv-04179-JS

## INTERVENOR PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION TO INTERVENTION AND MOTION TO DISMISS

Intervenor Plaintiff Trinidad Tapia Osorio, by and through undersigned counsel,

respectfully requests that this Court deny Defendants' Motion to Dismiss Intervenor Plaintiff's

Motion to Intervene and to Dismiss Intervenor Plaintiff's Complaint, ECF No. 41, and submits

the attached Memorandum of Opposition to Defendants' motion.

Dated: April 2, 2020

Respectfully submitted,

*/s/ Samuel Datlof*
Samuel Datlof (PA 324716)
    Email: sdatlof@justiceatworklegalaid.org
Arthur Read   (PA 29360)
    Email: aread@justiceatworklegalaid.org
JUSTICE AT WORK
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878
    *Attorneys for Intervenor Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERONICA MARLENE BARRIENTOS DE INTERIANO and EDWIN AROLDO INTERIANO CRUZ, | |
| Plaintiffs | |
| v. | Case 2:15-cv-04179-JS |
| FRANCISCO ALVAREZ, IMMIGRATION SERVICES, INC., et al., | |
| Defendants | |
| ------------------------------------------------------------ | |
| TRINIDAD TAPIA OSORIO | |
| Intervenor Plaintiff. | |

**INTERVENOR PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION**

Intervenor Plaintiff Trinidad Tapia Osorio ("Intervenor Plaintiff") submits this brief in

opposition to Defendants' Motion, ECF No. 41.

**INTRODUCTION**

On November 3, 2015, Plaintiffs Veronica Marlene Barrientos de Interiano and Edwin

Aroldo Interiano and Defendants Francisco Alvarez and Aloe Vera Caribbean Imports, LLC,

d.b.a. Immigration Services Inc. ("Aloe Vera"), executed a Stipulation for Entry of Consent

Injunctive Order.  ECF No. 31-1.  This Court approved the Consent Injunctive Order (the

"Consent Decree") as a final Court Order on November 10, 2015.  ECF Nos. 32, 33.

 The Consent Decree imposed various obligations and prohibitions on Defendants.

Among those requirements, it enjoined Defendants from engaging in the unauthorized practice of

law, aiding others in the unauthorized practice of law, or engaging in "unfair methods of

competition" or "unfair or deceptive acts or practices" as defined by the Pennsylvania Unfair

Trade Practices and Consumer Protection Law (the "UTPCPL"). ECF No. 33, ¶¶ 12-13.  It also

1

enjoined Defendants from advertising that they are qualified to provide legal services.  ECF No.

33, ¶ 14.

Most important for purposes of Defendants' pending motion, the Consent Decree

provided that "[a]ny individual alleging to have been aggrieved by a violation of this Consent

Order shall have standing to enforce the Order."  ECF No. 33, ¶ 16.

Intervenor Plaintiff, who alleges he was aggrieved by Defendants' subsequent violations

of the Consent Decree, has moved to intervene in this action to enforce the Consent Decree.

ECF No. 36.  He also filed a complaint (the "*Tapia* complaint") under separate caption in this

Court, Case No. 20-1070 (the "*Tapia* case"), against Defendants and also against Bianca Alvarez

(who had not previously been named as a defendant in the litigation under this case caption).

Intervenor Plaintiff attached the *Tapia* complaint to his motion to intervene here.  *See* ECF No.

36-1.

Defendants now request, untimely,[1] that the Court deny Intervenor Plaintiff's motion to

intervene, and to dismiss Intervenor Plaintiff's complaint.

## **ARGUMENT**

Federal Rule of Civil Procedure 71 provides that "[w]hen an order grants relief for a

nonparty . . . the procedure for enforcing the order is the same as for a party."  *See also Wash.*

*Hosp. v. White*, 889 F.2d 1294, 1299 (3d Cir. 1989).  Rule 71 memorializes the "common sense"

principal that "courts can enforce their orders against both parties and non-parties."  *Westlake N.*

*Prop. Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990).  And, consistent

with Rule 71, "enforcement of consent decrees is governed by the established contract principle

---

[1] Intervenor Plaintiff moved to intervene on February 25, 2020.  Local Rule of Civil
Procedure 7.1(c) provides opposing parties "fourteen (14) days after service of the motion" to
respond, which, in this case, was March 10, 2020.  Defendants did not file their opposition until
March 23, 2020, thirteen days after the deadline imposed by the Local Rules.

that non-parties, as intended third party beneficiaries, may enforce an agreement." *Hook v. Arizona, Dep't of Corrs.*, 972 F.2d 1012, 1014 (9th Cir. 1992) (citing Restatement (Second) of Contracts § 304 & cmt. a-b (1981)).

The Consent Decree entered in this action explicitly granted relief to nonparties, stating: "Any individual alleging to have been aggrieved by a violation of this Consent Order shall have standing to enforce the Order." ECF No. 33, ¶ 16. Where a consent decree provides relief to a nonparty, the nonparty may "intervene[e] to enforce [the] consent decree where otherwise authorized by the federal rules of civil procedure." *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir. 1985) (citing *United States v. Am. Cyanamid Co.*, 719 F.2d 558, 564 n.6 (2d Cir. 1983)); *see also Brennan v. Nassau Cnty.*, 352 F.3d 60, 64-65 (2d Cir. 2003). There can be little argument, then, that Intervenor Plaintiff may intervene here to enforce the Consent Decree.

Defendants do not mention Rule 71 and the license it gives to Intervenor Plaintiff's motion. Instead, they make two sets of arguments, first addressing intervention, and second addressing the sufficiency of the complaint.[2] Each of those arguments are without merit.

## I.  Intervenor Plaintiff's Motion to Intervene Should be Granted

Federal Rule of Civil Procedure 24(a)(2) provides for intervention of right when a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To

---

[2] As discussed in more detail below, Intervenor Plaintiff has not filed a complaint in this action—his complaint is filed in the *Tapia* case, and attached merely as an exhibit to his motion to intervene in this action. Therefore, Defendants' request the Court dismiss the complaint under this case caption is inappropriate. To the extent Defendants wish to challenge the sufficiency of Intervenor Plaintiff's complaint, they should do so under the *Tapia* caption, not here. Defendants, however, have filed no motion or answer in that matter. Intervenor Plaintiff will pursue discovery in Case No. 20-1070 and this action prior to filing a motion to enforce the Court order in this action.

prevail on a motion under Rule 24(a)(2), a potential intervenor must satisfy four requirements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).  Where a party may not intervene of right, Rule 24(b) allows district courts to permit, as a matter of discretion, the intervention of "anyone . . . who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  The Rule instructs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Defendants argue only that Intervenor Plaintiff's motion should be denied because it does not satisfy the "timeliness" and "sufficient interest" requirements for intervention of right.

### A.  Timeliness

Timeliness of an intervention request "is determined by the totality of the circumstances," as opposed to merely "counting days."  *United States v. Alcan Aluminum*, 25 F.3d 1174, 1181 (3d Cir. 1994).  The Third Circuit has identified three factors that bear on that totality analysis: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay."  *Mt. Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).  The extent of Defendants' timeliness argument is to state that the last interaction between the parties "occurred over two years and ten months ago[,]" and that therefore Defendants are "severely prejudice[d]" in their defense.  ECF No. 41 at 7.  The Court should reject Defendants' argument.

As a preliminary note, the case law addressing timeliness of intervention generally assumes that the moving party seeks to intervene in currently pending litigation; the question

courts must address, then, is whether intervention will undermine, delay, or confuse that pending litigation. *See, e.g.*, *Mt. Top*, 73 F.3d at 370 (noting that little discovery had taken place at time of attempted intervention). Here, however, litigation was not pending and adjudication of rights has already concluded. The only question is whether Intervenor Plaintiff can enforce his rights—which were created by this litigation through the Consent Decree and are explicitly countenanced by Federal Rule of Civil Procedure 71—against Defendants. Indeed, the purpose of the Consent Decree and settlement, which directly provided for individuals like Intervenor Plaintiff to sue Defendants, was to allow for this type of future litigation. *See* ECF No. 33, ¶ 16 (providing "individuals alleging to have been aggrieved by a violation of [the Consent Decree]" with "standing to enforce" it). Therefore, because any purported delay could not affect the underlying litigation, the Court should presume the intervention is timely.

That threshold matter aside, turn to the timeliness factors as defined by the Third Circuit. As a starting point, Intervenor Plaintiff had no knowledge of this litigation in early 2017, which is the point in time when Defendants suggest Intervenor Plaintiff should have intervened (Defendants identify early 2017 as the relevant time because that is when Intervenor Plaintiff last interacted with Defendants in person). As the Third Circuit has explained, "to the extent there is a temporal component to the timeliness inquiry, it should be measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation." *Alcan Aluminum*, 25 F.3d at 1182. And there can be no argument he "should" have known about the injury either, as Defendants' misrepresentations were made within what Intervenor Plaintiff thought was an attorney-client relationship, in which Defendants had complete control of information. ECF No. 36-1, ¶ 218 (*Tapia* complaint). Defendants also fail to note that Intervenor Plaintiff put them on notice of his claim for violation of the Consent Decree nearly a year before the filing of the pending motion. *See* Exh. 1 (March 11, 2019 letter to Defendants'

counsel).  Intervenor Plaintiff refrained from immediately initiating litigation in order to explore

the potential of settlement without litigation.  *Cf. Alcan Aluminum*, 25 F.3d at 1181-82 (noting

that "timeliness should not prevent intervention where an existing party induces the applicant to

refrain from intervening (internal citation omitted)).

      Turning to prejudice, Defendants' cannot point to any.  As far as the original parties in

this action are concerned—who are focus of the prejudice analysis under Third Circuit precedent,

*see Mt. Top*, 73 F.3d at 369—there is no practical difference between Intervenor Plaintiff moving

to intervene when Defendants propose would be reasonable (asserted to be in 2017) or moving to

intervene now, because in either case the underlying litigation in this action already had

concluded.  As far as Defendants' capacity to defend themselves against Intervenor Plaintiff's

claims, Defendants have provided no reason that they cannot defend themselves just as well

today as they could at any point after they defrauded Intervenor Plaintiff.  Indeed, Defendants'

assertions of prejudice are particularly far-fetched insofar as this motion was filed within the

statute of limitations for the underlying statutory and common law causes of action—even if the

Consent Decree did not exist, Intervenor Plaintiff would still have been able to file suit against

Defendants for the conduct he alleges.  *See, e.g.*, *Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa.

Super. 1987) (holding that UTPCPL is subject to a six-year statute of limitations); *Santana

Prods. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005) (citing *Gabriel* for

UTPCPL statute of limitations).

      **B.  Interest in the Litigation**

      Intervention of right requires the proposed intervenor assert a "cognizable legal interest,

and not simply an interest 'of a general and indefinite character.'"  *Brody v. Sprang*, 957 F.2d

1108, 1116 (3d Cir. 1992) (quoting *Harris*, 820 F.2d at 601).  However, the proposed intervenor

"need not have an interest in every aspect of the litigation."  *Mt. Top*, 73 F.3d at 368.  Rather,

"[t]hey are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." *Id.* For example, where there is a cognizable legal right at stake, a party may intervene of right for the limited purpose of presenting evidence, *Bradley v. Milliken*, 620 F.2d 1141, 1142 (6th Cir. 1980), or for the limited purpose of challenging a remedy, *Howard v. McLucas*, 782 F.2d 956, 962 (11th Cir. 1986).

Here, Intervenor Plaintiff's legal interest is clear. The Court's Order and Consent Decree created a protectable legal right for Intervenor Plaintiff to "enforce" that Consent Decree in the event he were aggrieved by a violation of the Consent Decree. ECF No. 33, ¶ 16 (providing "individuals alleging who have been aggrieved by a violation of [the Consent Decree]" with "standing to enforce" it). Because he seeks to vindicate this right, he satisfies the sufficient interest requirement for intervention—at least for the "specific issue[,]" *Mt. Top*, 73 F.3d at 368, of enforcing the Consent Decree issued in this case.

### C. Permissive Intervention

Should the Court determine that Intervenor Plaintiff may not intervene of right, the Court should nonetheless grant him leave to intervene as a matter of discretion. Permissive intervention may be granted where a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its discretion, the Court must, as in the intervention of right context, consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Common questions of law include that Plaintiff Intervenor raises many of the same legal causes of action against Defendant (including under the Pennsylvania statute prohibiting the unauthorized practice of law, 42 Pa. C.S. § 2424, and the UTPCPL, 73 P.S. § 201-1, *et seq.*). And Intervenor Plaintiff seeks to enforce the Consent Decree that arose out of this case—a

Consent Decree that was executed with the intent of preventing Defendants' further unauthorized practice of law and victimization of individuals seeking immigration services.

Common questions of fact also abound. For example, Intervenor Plaintiff alleges:

- He was misled by some of the same illegal signage at issue in this case, *compare* ECF No. 1, Exh. A, ¶¶ 61-64 (*Barrientos* Complaint) *with* ECF No. 36-1, ¶¶ 74-77 (*Tapia* Complaint);
- Defendants made nearly identical false representations to him about their authorization to provide immigration legal services as they made to the plaintiffs in this case, *compare* ECF No. 1, Exh. A, ¶¶ 72, 76 *with* ECF No. 36-1, ¶¶ 66-68;
- Defendants charged him for legal advice and legal services that they were not authorized to provide, just as Defendants are alleged to have charged plaintiffs here for unauthorized legal services, *compare* ECF No. 1, Exh. A, ¶ 76 *with* ECF No. 36-1, ¶¶ 85-86;
- Intervenor Plaintiff was never eligible for the immigration benefit that Defendants induced him to pay them to obtain, just as the benefits Defendants promised plaintiffs here were illusory, *compare* ECF No. 1, Exh. A, ¶¶ 135 *with* ECF No. 36-1, ¶¶ 63.

Finally, there will be no "delay or prejudice [to] the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), because the original parties' rights have already been adjudicated.

Intervenor Plaintiff merely seeks to have his own rights adjudicated under the Consent Decree agreed to by the original parties in this case. As such, he respectfully requests the Court allow his intervention, either of right or at the Court's discretion.

## II.     Defendants' Motion to Dismiss the Complaint Should be Denied

In ruling on a motion to dismiss for failure to state a claim, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Even before arriving at the substance of Defendants' arguments for dismissal of Intervenor Plaintiff's complaint, a threshold issue defeats their motion: Intervenor Plaintiff's complaint is not pending in this action. Intervenor Plaintiff filed a complaint in a new action,

*Tapia v. Alvarez et al*., Case No. 20-1070, and attached that complaint as an exhibit to his motion to intervene in this action.  *See* ECF No. 36-1 (complaint attached to motion).[3]  Defendants' arguments about the sufficiency of the complaint filed in *Tapia* have no relation to Intervenor Plaintiff's request for leave to intervene in this case.  As a result, Defendants' motion to dismiss the complaint in this action is improper, and the motion should be denied on that basis alone. Out of an abundance of caution, however, Intervenor Plaintiff will address Defendants' arguments for dismissal of his complaint in Case No. 20-1070.

Defendants raise only three issues explicitly in the argument section of their brief.  *First*, they state that the complaint "does not indicate that defendant, Bianca Alvarez prepared any forms that she wasn't permitted to file.  Nor does the complaint indicate that she didn't properly sign her name to the forms."  ECF No. 41, at 9.  This assertion is mistaken on its face, but also indicates that Defendants misunderstand the complaint, the facts alleged, and the causes of actions brought.  The assertion is mistaken because the complaint alleges that Bianca Alvarez was not supervised by an attorney, and therefore was not permitted to advise Intervenor Plaintiff to file the Forms I-130 for his father and mother. ECF No. 36-1, ¶ 14.[4]

---

[3] The *Tapia* complaint was served on Defendants in Case No. 20-1070 on March 3, 2020. *See* Case No. 20-1070, ECF Nos. 3-5.  No responsive pleading has been served by Defendants in that case, despite expiration of the 21-day deadline. Fed. R. Civ. P. 12(a)(1)(A).  Plaintiff has filed a Praecipe to Enter Default in that case under Fed. R. Civ. P. 55(a).  *See* Case No. 20-1070, ECF No. 6.

[4] Defendants appear to be under the misapprehension that Bianca Alvarez's status as a notary public allowed her to sign and file any immigration form she pleased.  But the Pennsylvania Bar Association Unauthorized Practice of Law Committee Formal Opinion 2006-01 ("UPL Op."), which is incorporated into the Consent Decree, ECF No. 33, ¶ 10, explains that even a notary public "incidentally preparing" forms may constitute legal representation, particularly where, as here, it follows the notary's "'selection of [a] Form I-130.'"  UPL Op., ¶ 2 & n.8 (quoting INS Gen. Counsel Op. No. 92-29, 1992 WL 1369368 (INS)).  It also provides that, to the extent a notary "assist[s] in the completion" of immigration forms, the notary may charge no more than "nominal" remuneration—here, Defendants charged thousands of dollars for their preparation of immigration forms. UPL Op., ¶ 3.

But more importantly, Defendants' argument misses the thrust of the complaint, which extends far beyond whether Bianca Alvarez was permitted to prepare or file a particular immigration application.  Intervenor Plaintiff alleges that Defendants, including Bianca Alvarez, provided "legal services" in violation of the Consent Decree and in violation of Pennsylvania law.  "Legal services" does not, as Defendants suggest, extend only to the filing of forms. Rather, as defined by the Consent Decree, it means "receiving compensation for selecting, drafting, or filing forms on behalf of another individual to be filed with any government agency or office, including, but not limited to, USCIS, and advising another individual as to his or her legal rights or as to the legal process."  ECF No. 33, ¶ 9.  Intervenor Plaintiff's complaint alleges that Bianca Alvarez illegally provided legal services by, among other things, "[s]electing, preparing, and filing Form I-130 Petitions for Alien Relative for [Intervenor] Plaintiff Tapia[,]" and advising Intervenor Plaintiff as to the legal process by "[r]epresenting that both Plaintiff Tapia's father and Plaintiff Tapia's mother would qualify for waivers of inadmissibility[.]"  ECF No. 36-1, ¶¶ 147.1-6.  Similarly, Bianca Alvarez engaged in the unauthorized practice of law, in violation of 42 Pa. C.S. § 2524 and the Consent Decree, by "hold[ing her]self out to the public as being entitled to practice law" through her statements to Intervenor Plaintiff, the legal advice she provided to Intervenor Plaintiff, and her public facing advertisements relating to her ability to practice law.  *See* ECF No. 33, ¶ 10.

*Second*, Defendants assert that the complaint "is completely devoid of any facts indicating that the Aloe Verra [sic] defendants directed and controlled what actions, if any, defendant Bianca Alvarez took."  Intervenor Plaintiff understands Defendants to argue that the complaint does not sufficiently allege that Francisco Alvarez "directed and controlled" Bianca Alvarez.  This assertion is both incorrect and irrelevant.  It is incorrect in that the complaint alleges that Francisco Alvarez, on behalf of Defendant Aloe Vera, assigned the case to Bianca

Alvarez.  ECF No. 36-1, ¶ 69.  The assertion is irrelevant because the complaint alleges that

Francisco Alvarez was the "partner or associate" of Bianca Alvarez in the operation of Aloe

Vera.  ECF No. 36-1, ¶ 17.  Defendants fail to explain why Francisco Alvarez's control over

Bianca Alvarez would be required for liability on any of the counts alleged in the complaint.[5]

There is no such requirement because the complaint alleges fraudulent conduct taken by

Defendant Aloe Vera through Bianca Alvarez and Francisco Alvarez—actions that create

liability for each of them as individuals and that also create liability for Aloe Vera.

   *Third*, Defendants argue that the complaint fails to allege a violation of the UTPCPL.

ECF No. 41 at 10-11.  The UTPCPL prohibits "unfair methods of competition" and "unfair or

deceptive acts or practices."  73 P.S. § 201-3.  The statute provides 21 definitions of the conduct

that is prohibited.  73 P.S. § 201-2(4)(i)-(xxi).  Defendants assert, with no argument or

explanation, that the complaint fails because it does not "produce evidence tending to show

Defendants participated in" any of the first 20 prohibited practices.  ECF No. 41 at 11.[6]  The

---

[5] Defendants further ignore the fact that Defendant Aloe Vera doing business as
"Immigration Services, Inc.," and was the business entity through which Defendants received
funds from Intervenor Plaintiff and his father for immigration services.  *See* Exh. 1, Attachment
3 (redacted receipts from Immigration Services, Inc.); Exh. 1, Attachment 4 (redacted receipts
from Defendant Aloe Vera doing business as Alvarez Legal Form & Immigration Support); *see
also* ECF No. 36-1, ¶¶ 4, 16-18, 31-32, 98-101, 112.3, 119-20, 124-25, 131, 146-47.

[6] Defendants' argument suggests some confusion over the legal standard at the motion to
dismiss stage.  As noted above, in ruling on a motion to dismiss for failure to state a claim, the
Court is "required to accept as true all allegations in the complaint and all reasonable inferences
that can be drawn from them after construing them in the light most favorable to the non-
movant."  *Jordan*, 20 F.3d at 1261.

   Contrary to Defendants' assertion, Intervenor Plaintiff has no obligation to "produce
evidence" outside the complaint at this stage, and the Court would have no ability to consider
such evidence without converting Defendants' motion into a motion for summary judgment.
Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the
pleadings are presented to and not excluded by the court, the motion must be treated as one for
summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present
all the material that is pertinent to the motion."); *see also In re Rockefeller Ctr. Props. Sec.
Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (same).

complaint, however, specifically alleges Defendants engaged in "misrepresentation of affiliation, connection, or association," 73 P.S. § 201-2(4)(iii), "misrepresentation of characteristics or benefits," *id.* at § 201-2(4)(v), and "misrepresentation of standard or quality," *id.* at § 201-2(4)(vii). *See* ECF No. 36-1, ¶¶ 182-99. The complaint further notes how allegations contained therein establish such misrepresentations. For example, the complaint explains that Defendants' representations that they were authorized to provide immigration services—when in fact they had no such authorization—constitutes "fraudulent and/or deceptive conduct which creates a likelihood of confusion or misunderstanding." ECF No. 36-1 ¶ 180.

Defendants additionally assert that the UTPCPL claim fails because the complaint does not allege conduct that satisfies the 21st definition of "unfair methods of competition" and "unfair or deceptive acts or practices," known as the "catch-all" definition. That definition proscribes "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* at § 201-2(4)(xxi). To state a claim under the "catch-all" definition, a plaintiff must establish the elements of common law fraud, which include "a material misrepresentation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages." *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. 2000). Defendants' only argument is that "[t]he record is simply devoid of any evidence that . . . the Aloe Vera defendants had misrepresented anything about their business connection with defendant Bianca Alvarez."[7] This statement betrays a serious misunderstanding of the complaint.

The complaint does not allege that Defendants are liable because they misrepresented to Intervenor Plaintiff the nature of the business relationship between Francisco and Bianca Alvarez. Rather, the complaint alleges that both Francisco and Bianca Alvarez misrepresented,

---

[7] Defendants' demand that Intervenor Plaintiff produce "evidence" again suggests that counsel has misapprehended the legal standard governing motions to dismiss. *See supra* note 6.

among other things, their authorization to provide immigration legal services, that the immigration relief Intervenor Tapia and his family sought was available (when in fact, Intervenor Tapia's parents were statutorily ineligible for the relief they sought), and that their business was authorized to provide immigration legal services.  ECF No. 36-1, ¶ 180.[8]

In addition to the three issues raised in the argument section of their brief, Defendants also raise a number of additional issues in passing—none with merit.  Defendants state that "the complaint does not allege that a contract for services between defendant, Frank Alvarez and the plaintiff's parents was negotiated and/or finalized.  Nor does the complaint allege what specific services were discussed."  ECF No. 41, at 4.  This assertion misreads the complaint.  The complaint alleges that the Tapias were referred to Francisco Alvarez, who then assigned the case to his daughter, Bianca.  ECF No. 36-1, ¶¶ 64-69.  The Tapias then agreed with Bianca Alvarez that they would pay Defendants to file Petitions for Alien Relative (Form I-130s) on behalf of Intervenor Plaintiff and then apply for and obtain Waivers of Inadmissibility for each of his parents.  ECF No. 36-1, ¶¶ 80-81.  The complaint also alleges that Bianca Alvarez was the "partner or associate of Francisco Alvarez in the operations of Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc.," and that she was "[a]t all times relevant to this matter . . . acting on her own behalf and/or on behalf of Defendant Aloe Vera[.]  ECF No. 36-1, ¶ 16- 17.  Thus, the complaint alleges Francisco Alvarez is liable as a partner in Aloe Vera with Bianca, and it also alleges that he is liable because he personally provided legal services to Intervenor

---

[8] While Defendants only challenge the sufficiency of the strawman argument that the alleged fraud was based on misrepresenting Francisco and Bianca Alvarez's relationship, it bears noting that Intervenor Plaintiff has clearly pleaded the elements of fraud with specificity as to fraudulent conduct he actually alleges.  The complaint includes extensive factual allegations explaining the misrepresentations, the willfulness of those representations (including that many of these representations were made after Defendants executed the Consent Decree in this case), the reasonableness of Intervenor Plaintiff's reliance, and damages.

Plaintiff (when he advised on preparation for a consular interview, ECF No. 36-1, ¶ 136). Further, the complaint alleges Francisco Alvarez is liable for aiding the unauthorized practice of law by referring Intervenor Plaintiff to Bianca Alvarez for legal services and endorsing her ability to resolve his legal problems, despite knowing that she was unauthorized to practice law. ECF No. 36-1, ¶ 149.

Defendants state that Intervenor Plaintiff "failed to attach any documents to the complaint indicating any type of contract was made[.]"  ECF No. 41, at 4.  Of course, Intervenor Plaintiff's causes of action do not require a written contract—the oral contract he alleges in his complaint is sufficient.  *See* ECF No. 36-1 ¶ 81-82; *Taylor v. Stanley Co. of Am.*, 158 A. 157, 159 (Pa. 1932).

Defendants state that "intervenor plaintiff completely fails to substantiate any allegations that Bianca Alvarez acted as a principal in the operations of Aloe Vera and has been a partner or associate of Francisco Alvarez in the operation of Aloe Vera."  ECF No. 41 at 6.[9]  But indeed, the complaint offers allegations that Bianca Alvarez decided which legal services Immigration Services, Inc., would provide Intervenor Plaintiff, ECF No. 36-1, ¶¶ 81-82, represented that she was authorized to represent the Tapias on behalf of Immigration Services, Inc., ECF No. 36-1, ¶ 79.1, and received payments in the name of Immigration Services, Inc., and issued receipts with the name Immigration Services, Inc., ECF No. 36-1, ¶¶ 99-100, *see also* Exh. 1, Attachments 3 and 4 at Exh._1:044-058 (receipts issued by Defendants).  These allegations are sufficient to establish Bianca Alvarez's role as a principal in Aloe Vera's operations for purposes of a motion to dismiss.[10]

---

[9] Defendants' request for "substantiation" again demonstrates confusion as to the applicable rules of civil procedure and legal standards.  *See supra* note 6.

[10] Even if the Court does not find sufficient allegations to establish Bianca's role as a principal, all parties would still remain subject to liability—Bianca is liable based on her personal illegal representation of Intervenor Plaintiff, and Francisco and Aloe Vera are liable based on Francisco's illegal representation of Intervenor Plaintiff.

Defendants state that Francisco Alvarez "has been working as a legal assistant to Shaela Cruz, Esquire," implying that any legal services he provided were under the supervision of Attorney Cruz.  Even if true, this assertion falls outside the pleadings and is therefore inappropriate for consideration at the motion to dismiss stage.  *See Rockefeller*, 184 F.3d at 287. Worse still for Defendants, whether or not at some point Attorney Cruz supervised Francisco Alvarez, the implication—that her supervision extended to representation of Intervenor Tapia and his family—contradicts written statements made by Attorney Cruz herself.  Attorney Cruz informed Intervenor Plaintiff's counsel: "I have never provided representation to Trinidad Tapia or his family . . . nor did I supervise anyone who may have provided representation to them, including Bianca Alvarez."  Exh. 2-2 (email from Shaela Cruz to Intervenor Plaintiff's counsel); *see also* Exh. 2-6 (follow-up email from Shaela Cruz to Intervenor Plaintiff's counsel, "reiterating" that Cruz "never supervised [Bianca Alvarez] in any of her work").

## <u>CONCLUSION</u>

For the foregoing reasons, Intervenor Plaintiff respectfully requests this Court grant his motion to intervene and deny Defendants' motion to dismiss.

Dated:  April 2, 2020

Respectfully submitted,

/s/ Samuel Datlof
Samuel Datlof (PA 324716)
    Email: sdatlof@justiceatworklegalaid.org
Arthur Read   (PA 29360)
    Email: aread@justiceatworklegalaid.org
JUSTICE AT WORK
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878
    *Attorneys for Intervenor Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERONICA MARLENE BARRIENTOS DE INTERIANO, and EDWIN AROLDO INTERIANO CRUZ | |
| Plaintiffs | |
| v. | Case 2:15-cv-04179-JS |
| FRANCISCO ALVAREZ, IMMIGRATION SERVICES, INC., et al. | |
| Defendants | |
| ------------------------------------------------------------ | |
| TRINIDAD TAPIA OSORIO | |
| Intervenor Plaintiff, | |

**EXHIBITS FOR**

**INTERVENOR PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION TO INTERVENTION AND MOTION TO DISMISS**

| Exhibit | Description |
|---|---|
| 1 | **March 11, 2019 Letter to Counsel for Defendants (Redacted)** |
| 2 | **Extracts from Electronic Mail Communications with Shaela Cruz, Esq.** |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERONICA MARLENE BARRIENTOS DE INTERIANO, and EDWIN AROLDO INTERIANO CRUZ | |
| Plaintiffs | |
| v. | Case 2:15-cv-04179-JS |
| FRANCISCO ALVAREZ, IMMIGRATION SERVICES, INC., et al. | |
| Defendants | |
| ------------------------------------------------------------- | |
| TRINIDAD TAPIA OSORIO | |
| Intervenor Plaintiff, | |

**Exhibit 1**

**March 11, 2019 Letter to Counsel for Defendants (Redacted)**



March 11, 2019

Michael I. McDermott
1026 Winter Street, STE 200
Philadelphia, PA 19107-1808
       By Email to: mmcder1188@aol.com

Re:    Apparent Breaches of Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS, Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. *et al.*

Dear Mr. McDermott:

On November 3, 2015, you signed a Stipulation for Entry of Consent Injunctive Order in the above action on behalf of Defendants Francisco Alvarez, Aloe Vera Caribbean Imports, LLC dba "Immigration Services, Inc."  On November 10, 2015 at Document 33 in that matter, United States District Court Judge Juan R. Sánchez entered that Consent Injunctive Order as an Order of the Court.  A copy of the Court Order is annexed to this letter.  That injunction included the following provisions:

      2.     As of *October 30, 2015*[1] Alvarez Defendants shall cease to utilize the names "Immigration Services, Inc.", "Immigration Services, inc." or "Immigration Services" as a trade or business names for any purpose unless explicitly authorized to do so by the Pennsylvania Secretary of State.

      3.     The Alvarez Defendants will not directly or indirectly share fees with attorneys or withhold from any funds received from any customers any funds or property received on behalf of any attorney.

      4.     These provisions shall not bar Francisco Alvarez from direct employment as a legal assistant or paralegal employee under the direct supervision of an attorney licensed to practice law in Pennsylvania, so long as all activities of Francisco Alvarez are under the direct supervision of that attorney.

                   *           *           *

      12.     Alvarez Defendants are restrained and enjoined from engaging in, or aiding any individual or entity under Defendants' direction and control from engaging in, the unauthorized practice of law.

---

    [1] My review of October 2015 electronic mail correspondence with you indicates that following the September 30, 2015 Settlement Conference with Magistrate Judge Marilyn Heffley, you had received a draft electronic mail copy of the terms of the proposed Consent Order with the *October 30, 2015* effective date by October 2, 2015 and presumably had fully reviewed in terms with your clients prior to October 30, 2015.

**Justice at Work| justiceatworklegalaid.org**

»  990 Spring Garden St., Ste. 300 | Philadelphia, PA 19123 | (215) 733-0878
○  6101 Penn Ave. | Pittsburgh, PA 15206 | (412) 636-2473

Direct Philadelphia: Arthur N. Read (215) 690-5687
*E-mail:* aread@justiceatworklegalaid.org

Exh._1:001

**Justice at Work**
**March 11, 2019**
**Page 2**

13.     Alvarez Defendants are restrained and enjoined from engaging in, or aiding any individual or entity under Alvarez Defendants' direction and control from engaging in, the any "unfair methods of competition" and "unfair or deceptive acts or practices" as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law at 73 P.S. § 201-2.

The November 2015 Consent Order at ¶¶5-11 defined terms used in the Order, including the following provisions:

5.     The term "advertising," "advertised," or "advertisement" refers to oral or written statements, visual descriptions, or other representations of any kind that are made to consumers for the purpose of promoting products or services.

6.     The term "attorney" means an individual duly licensed to practice law in one or more jurisdictions of the United States.

7.     The term "consumer" means a customer or client that receives goods or services.

8.     The term "_immigration services_" means the representation of immigrants seeking residency, work permits, or other immigration matters before the United States Government.

9.     The term "_legal services_" means the legal representation of an individual. This term includes, but is not limited to, receiving compensation for selecting, drafting, or filing forms on behalf of another individual to be filed with any government agency or office, including, but not limited to, USCIS, and advising another individual as to his or her legal rights or as to the legal process. The term applies to activities performed in any state, and with regard to individuals who are residents of any state.

10.     The term "_unauthorized practice of law_" means providing, or representing that one is authorized to provide, legal services without being duly authorized or licensed in the state or territory in which the legal services are provided.  This definition is consistent with the formal opinion of the Pennsylvania Bar Association Committee on Unauthorized Practice of Law Formal Opinion 2006-01 as to what constitutes the unauthorized practice of law.[2]

The November 2015 Consent Order at ¶14 further provided:

14.     Alvarez Defendants are restrained and enjoined from advertising that Alvarez Defendants are qualified to provide legal services.  This includes, but is not limited to the following:

a.     Stating or implying that Alvarez Defendants can provide "legal" advice or services.

*               *               *

---

[2] A copy of that Opinion 2006-01 is annexed hereto.

Justice at Work
March 11, 2019
Page 3

    d.    Stating or implying that Alvarez Defendants are authorized, qualified, or capable of assisting or helping a consumer with immigration questions, petitions to USCIS, or *selecting or filing immigration related forms.*

    e.    Stating or implying that any other person or entity is authorized, qualified, or capable of assisting or helping a consumer with *immigration questions, petitions to USCIS, or selecting or filing immigration related forms, unless such person is in fact an attorney*.

The November 2015 Consent Order at ¶15 provided:

    16.    Any individual alleging to have been aggrieved by a violation of this Consent Order shall have standing to enforce the Order.

The principal purpose of the November 2015 Consent Injunctive Order in EDPA Case #2:15-cv-4179-JS was to prevent the kinds of abuses and violations of law alleged in the complaint in that matter. Specifically, it was intended to *immediately* terminate the established business model of "Immigration Services, Inc." and the "Alvarez Defendants" in that matter of non-attorneys acting as independent paralegals offering *immigration services*.

## Immigration Services Provided to Trinidad Tapia Osorio and His Family

Our office is representing Trinidad Tapia Osorio, a United States citizen who together with members of his family sought immigration services legal assistance in order to obtain permanent residency in the United States for his parents. Mr. Trinidad Tapia is a person who has been aggrieved by violations of the Court Order in EDPA Case #2:15-cv-4179-JS as more fully set forth below.

## Immigration Services Before the Consent Injunction in EDPA Case #2:15-cv-4179-JS

In January 2015, "Immigration Services, Inc." entered into an agreement with family members of Mr. Tinidad Tapia obligating them to pay a total of $3,000 to "Immigration Services, Inc." to prepare and submit USCIS I-130 Alien Relative Immigration Petitions for Mr. Trinidad Tapia on behalf of his parents. The actual fee to USCIS for submission of an I-130 petition was $420 per petition or a total of $840 for two I-130 petitions. Based on that differential, "Immigration Services, Inc." would receive a fee of approximately $2,160 for the provision of *immigration services*.

The principal representative of "Immigration Services, Inc." in dealing with this matter was Bianca Alvarez, who is the daughter of Defendant Francisco Alvarez in EDPA Case #2:15-cv-4179-JS and one of the principals of "Immigration Services, Inc."

As of October 30, 2015, "Immigration Services, Inc." had been paid $1,200 by the family of Mr. Trinidad Tapia for the submission of USCIS I-130 petitions. As of that date, "Immigration Services, Inc." had provided the following *immigration services*:

- On or about June 5, 2015, Immigration Services, Inc. through its agent Bianca Alvarez had submitted an I-130 Alien Relative petition on behalf of Mr. Trinidad Tapia as petitioner for his father as a beneficiary. The Petition listed the return address as PO Box

Justice at Work
**March 11, 2019**
**Page 4**

46845, Philadelphia, PA 19160, which was a PO Box, controlled by "Immigration Service, Inc." and the "Alvarez Defendants." The actual fee for submission of this I-130 Petition was $420. *See* Attached USCIS Form I-797C, Notice of Action, Notice Date June 8, 2015.

- On October 15, 2015, USCIS issued an Approval Notice for the Parent of a U.S. citizen, by I-797 Notice of Action addressed to: Trinidad Tapia Osorio, c/o Blanca Alvarez, PO Box 46845, Philadelphia, PA 19160. *See* Attached USCIS Form I-797, Notice of Action, Notice Date, October 15, 2015.

That October 15, 2015 I-130 approval notice further stated:

> The above petition has been approved. The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of .status. The evidence indicates that he or she is not eligible to file an adjustment of status application. This decision is based on the information submitted with the petition and any relating files. If the person for whom you are petitioning believes that he or she is eligible for adjustment of status, then he or she should contact the local USCIS office for more information.

> Because the person for whom you are petitioning is not eligible to adjust, we have sent the approved petition to the **Department of State National Visa Center (NVC), 32 Rochester Avenue, Portsmouth, NH 03801-2909.** NVC processes all approved immigrant visa which consular post is the appropriate consulate to complete visa processing. NVC will then forward the approved petition to that consulate.

As Mr. Trinidad Tapia and his father would later learn, the requirement for consular visa processing outside of the country, effectively barred Mr. Trinidad Tapia;s father from obtaining any benefit as a result of the approval of the I-130 petition.

### **Immigration Services in 2015 After the Consent Injunction Effective Date in EDPA Case #2:15-cv-4179-JS**

Despite the terms of the Consent Injunctive Order in EDPA Case #2:15-cv-4179-JS that "[a]*s of October 30, 2015* Alvarez Defendants shall cease to utilize the name… 'Immigration Services, Inc.' … as a trade or business names, the Alvarez Defendants through Bianca Alvarez continued to utilize that business name in dealings with Mr. Trinidad Tapia and his family in November 2015. Specifically:

- On November 3, 2015. Bianca Alvarez accepted on behalf of "Immigration Services, Inc." $1,500 in cash from Mr. Trinidad Tapia for "NVC[3] Case fees." This amount increased the total contracted liability of Mr. Trinidad Tapia and his parents to $4,500 for

---

[3] "NVC references the Department of State National Visa Center (NVC) which in accordance with the October 15, 2015 I-130 approval notice would handle further processing of approved immigrant visas assigned to consular processing. No itemization was provided of what NVC Case Fees were covered by this payment.

Justice at Work
March 11, 2019
Page 5

I-130 petition and subsequent NVC processing.

- On or about November 9, 2015, Bianca Alvarez submitted an I-130 Alien Relative petition on behalf of Mr. Trinidad Tapia as petitioner for his mother "Redacted Redacted" as a beneficiary. The Petition again listed the return address as PO Box 46845, Philadelphia, PA 19160, which had been the post office box controlled by "Immigration Service, Inc." and the "Alvarez Defendants." The actual fee for submission of this I-130 Petition was $420. *See* Attached USCIS Form I-797C, Notice of Action, Notice Date November 10, 2015.

- On November 10, 2015, the family of Mr. Trinidad Tapia paid an additional $100 to "Immigration Services, Inc." in cash for "I-130" that was received by Bianca Alvarez on behalf of "Immigration Services, Inc." by receipt Number 6943 (Copy Attached), which reflected a "Balance Due: to "Immigration Services, Inc. of $1,700.

As of November 10, 2015, Mr. Trinidad Tapia and his family had paid $2,800 in cash to "Immigration Services, Inc." and owed an additional balance of $1,700 for a total of $4,500 to "Immigration Services, Inc.". A total of $1,600 of this amount had been paid to "Immigration Services, Inc." after the date on which the Alvarez Defendants had agreed they would no longer utilize the name Immigration Services, Inc.

At no time in November 2015, did the Alvarez Defendants or Bianca Alvarez as their representative, inform Mr. Trinidad Tapia or members of his family that in accordance with the Court Consent Injunctive Order EDPA Case #2:15-cv-4179-JS non-attorneys (including Ms. Bianca Alvarez) would no longer provide immigration services to them, nor did they arrange for such services to be provided instead through a licensed attorney.[4]

### **Immigration Services in 2016 and 2017 After the Consent Injunction Effective Date in EDPA Case #2:15-cv-4179-JS**

On January 15, 2016, USCIS issued an Approval Notice for the Parent of a U.S. citizen, by I-797 Notice of Action addressed to: Trinidad Tapia Osorio, PO Box 46845, Philadelphia, PA 19160, which was a post office box that had been controlled by the "Alvarez Defendants" and "Immigration Services, Inc.". The beneficiary of the I-130 Petition was Redacted who was out of the country in Mexico and the approval notice stated that the Department of State National Visa Center would handle scheduling her for consular processing of her application for a visa. *See* Attached USCIS Form I-797, Notice of Action, Notice Date, January 15, 2016.

On February 11, 2016, the father of Mr. Trinidad Tapia paid an additional $300 in cash which

---

[4] At some point after the entry of the injunction in EDPA Case #2:15-cv-4179-JS, a licensed attorney, Shaela Cruz, opened an office for the practice of law at 3901 N. 5th Street, Philadelphia, PA 19140. At times after that Frank Alvarez began using business cards identifying him as a legal assistant to Shaela Cruz. Those business cards were not distributed to Mr. Trinidad Tapia or members of his family. At no time was Mr. Trinidad Tapia or his family advised that they were being represented by attorney Shaela Cruz or given any receipts for payments of fees to attorney Shaela Cruz. It is unclear whether Bianca Cruz was purporting to act at any time under the supervision direction of Shaela Cruz.

Justice at Work
March 11, 2019
Page 6

was received by Bianca Alvarez.  The receipt provided to him stated that it was issued by
"Alvarez Legal Form & Immigration Support"[5] at the same address and telephone number as had
previously been on receipts issued by "Immigration Services, Inc."  The receipt #1369 (Copy
Attached) carried forward the prior Balance Due to "Immigration Services, Inc." of $1,700 as the
"Amount of the Account" and reflected a "Balance Due" of $1,400.  No explanation was
provided as to the significance of the new name of the receipt provided.  No explanation was
provided of the Court Order in EDPA Case #2:15-cv-4179 and its impact on the ability of non-
attorneys (including Ms. Bianca Alvarez) to provide immigration services, nor was any attorney
identified who would be directly supervising the rendering of immigration services.

On February 22, 2016, Mr. Trinidad Tapia in accordance with instructions from Ms. Bianca
Alvarez brought six (6) United State Postal Service Money Orders in the total amount of $2,785.
As set forth below.

**USCIS Money Orders**

| Date | Number | Amount |
|------|--------|--------|
| 2/22/2016 | 23593232981 | $120.00 |
| 2/22/2016 | 23593232968 | $170.00 |
| 2/22/2016 | 23593232970 | $325.00 |
| 2/22/2016 | 23593232946 | $170.00 |
| 2/22/2016 | 23593232935 | $1,000.00 |
| 2/22/2016 | 23593232967 | $1,000.00 |
|  | **TOTAL** | $2,785.00 |

 Ms. Bianca Alvarez issued "Alvarez Legal Form & Immigration Support" receipt number 1375
for "NVC fees I[-]601" reflecting payment by money order on February 22, 2016. *See* copy
attached. The USCIS website reflects that the I-601 is an "Application for Waiver of Grounds of
Excludability" and that the fee for an I-601 prior to December 23, 2016 was $585.  Again, no
explanation was provided to Mr. Trinidad Tapia as to the relationship between "Alvarez Legal
Form & Immigration Support" and the prior "Immigration Services, Inc." or any licensed
attorney.  As of February 22, 2016, Mr. Trinidad Tapia and his family had paid a total of $5,885
for immigration services on behalf of his parents and owed an additional $1,400 for those
services.

At some point after February 22, 2016, Ms. Bianca Alvarez informed Mr. Trinidad Tapia's
family that she had concluded that her belief that Mr. Trinidad Tapia's father could submit a
request for a "perdon" or waiver of inadmissibility (I-601?) was incorrect as a matter of law.
Ms. Bianca Alvarez returned $675 to the family without an explanation as to how that amount

---

[5] As had been the case with "Immigration Services, Inc." the Pennsylvania Department of
State shows <u>no</u> registration of the business entity "Alvarez Legal Form & Immigration Support."
Subsequent to the time in which Mr. Trinidad Tapia and his family dealt with Bianca Alvarez,
Frank Alvarez and "Alvarez Legal Form & Immigration Support,"  Bianca Alvarez incorporated
"AGV Multiservice and Immigration Support Limited Liability Company."

**Justice at Work**
**March 11, 2019**
**Page 7**

was calculated.  Even after the return of this amount, Mr. Trinidad Tapia and his family had paid a total of $5,210 for immigration services by the Spring of 2016.

Throughout 2016 and early 2017, Mr. Trinidad Tapia's family continued to pay off the $1,400 "Balance Due" for I-130 petitions pursuant to the initial January 2015 agreement with Immigration Services, Inc.  Each of the remaining payments had receipts issued in the name of "Alvarez Legal Form & Immigration Support."  *See* Receipts listed below:

| Date | Receipt Num | Amount | Payee | Purpose |
|------|-------------|--------|-------|---------|
| 6/9/2016 | 1455 | $200.00 | Alvarez Legal Form & Immigration Support | I-130 |
| 8/2/2016 | 1231 | $300.00 | Alvarez Legal Form & Immigration Support | I-130 |
| 3/3/2017 | 1112 | $300.00 | Alvarez Legal Form & Immigration Support | I-130 |

As of March 3, 2017, the net total amount paid for immigration services by Mr. Trinidad Tapia and his family was $6,310.

On February 28, 2017, the National Visa Center wrote to Ms. Redacted (the mother of Mr. Trinidad Tapia) in Puebla, Mexico to schedule her for a visa appointment in Ciudad Juarez, Mexico April 19, 2017.  Mr. Trinidad Tapia sought immigration assistance from the "Alvarez Defendants" to verify what was required for that consular interview.

At the Consular interview Mr. Trinidad Tapia's mother was denied a visa and informed that she did not qualify for a waiver under I-601.

## Claim Pursuant to Unfair Trade Practices Act

The Pennsylvania Unfair Trade Practices Act authorizes an award of treble damages for violations of that Act including the unauthorized practice of law.  Treble damages on the payment of $6,310 totals a claim for $18,930.

Throughout her representation of the family of Mr. Trinidad Tapia, Ms. Bianca Alvarez had acted as a representative of the Alvarez Defendants in EDPA Case #2:15-cv-4179-JS and it is essential as part of any settlement of this matter that she agree to comply fully with the terms of the injunction in that matter.

**Justice at Work**
**March 11, 2019**
**Page 8**

Please contact me at your earliest opportunity to discuss an appropriate resolution of this matter.

Very truly yours,

Arthur N. Read, Esq.
General Counsel

cc:   Shaela Cruz, Esq.

**Attachments to Correspondence**

Apparent Breaches of Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS,
*Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al.*

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 1 | Consent Injunctive Order, *Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al.*, Case 2:15-cv-04179-JS, Document 33, Filed 11/10/2015, | | | | |
| 2 | Pennsylvania Bar Association Unauthorized Practice of Law (UPL) Committee Formal Opinion 2006-01 Unauthorized Practice of Immigration Law by Non-Attorneys and Unauthorized Practice of Law Generally by Notaries Public | | | | |
| 3 | Copies of Receipts Payable to Immigration Services, Inc. | | | | |
| | Date | Amount | Receipt Num | Payee | Purpose |
| 3.01 | 2/5/2015 | $100.00 | 6590 | Immigration Services, Inc. | I-130 |
| 3.02 | 3/6/2015 | $100.00 | 6905 | Immigration Services, Inc. | I-130 |
| 3.03 | 4/6/2015 | $100.00 | 7146 | Immigration Services, Inc. | I-130 |
| 3.04 | 5/5/2015 | $100.00 | 7166 | Immigration Services, Inc. | I-130 |
| 3.05 | 6/6/2015 | $100.00 | 7199 | Immigration Services, Inc. | I-130 |
| 3.06 | 7/6/2015 | $100.00 | 7223 | Immigration Services, Inc. | I-130 |
| 3.07 | 8/10/2015 | $100.00 | 7319 | Immigration Services, Inc. | I-130 |
| 3.08 | 9/2/2015 | $100.00 | 6864 | Immigration Services, Inc. | I-130 |
| 3.09 | 10/5/2015 | $100.00 | 6901 | Immigration Services, Inc. | I-130 |
| 3.10 | 11/3/2015 | $1,500.00 | 6932 | Immigration Services, Inc. | NVC Case Fees |
| 3.11 | 11/10/2015 | $100.00 | 6943 | Immigration Services, Inc. | I-130 |

**Attachments to Correspondence**

Apparent Breaches of Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS,
*Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al.*

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| | Date | Amount | Receipt Num | Payee | Purpose |
| 4.01 | 2/11/2016 | $300.00 | 1369 | Alvarez Legal Form & Immigration Support | I-130 |
| 4.02 | 2/22/2016 | $2,785.00 | 1375 | Alvarez Legal Form & Immigration Support | NVC Fees I-601 |
| 4.03 | 6/9/2016 | $200.00 | 1455 | Alvarez Legal Form & Immigration Support | I-130 |
| 4.04 | 8/2/2016 | $300.00 | 1231 | Alvarez Legal Form & Immigration Support | I-130 |
| 4.05 | 3/3/2017 | $300.00 | 1112 | Alvarez Legal Form & Immigration Support | I-130 |
| 5 | 6/5/2015 Date of Receipt of I-130 Redacted Redacted ; I-130 Fee $420 | | | | |
| 6 | 10/15/2015 Notice of Approval of I-130 for Redacted Reda Redacted , but ineligible for adjustment of status | | | | |
| 7 | 11/9/2015 I-130 Fee $420; 11/9/2015 Date of Receipt of I-130 for Redacted . | | | | |
| 8 | 1/15/2016 Notice of Approval of I-130 for for Redacted Redacted Forward consular processing | | | | |
| 9 | 2/28/2017 Notice of Appointment consular processing Ciudad Juarez for Redacted . | | | | |
| 10 | 4/19/2017 Redacted . Appointment consular processing Ciudad Juarez | | | | |

Attachments Michael McDermott Correspondence

| Attachment | Description |
|---|---|
| 1 | Consent Injunctive Order, *Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al* ., Case 2:15-cv-04179-JS, Document 33, Filed 11/10/2015, |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERONICA MARLENE BARRIENTOS DE INTERIANO, and EDWIN AROLDO INTERIANO CRUZ<br><br>        Plaintiffs<br><br>    v.<br><br>FRANCISCO ALVAREZ, IMMIGRATION SERVICES, INC., EPHRAIM TAHIR MELLA, LAW OFFICES OF TAHIR MELLA, P.C., ELAINE YI MING CHEUNG, LAW OFFICES OF ELAINE CHEUNG, LLC<br><br>        Defendants | Case 2:15-cv-04179-JS |

## STIPULATION FOR ENTRY OF CONSENT INJUNCTIVE ORDER

**TO THE HONORABLE COURT:**

WHEREAS, Plaintiffs and Francisco Alvarez and "Immigration Services, Inc.," which is correctly identified in accordance with the Amended Answer (ECF Document 26) as Aloe Vera Caribbean Imports, LLC, d.b.a. "Immigration Services, Inc.," (hereafter collectively referred to as the "Alvarez Defendants") have agreed on the terms of a Settlement Agreement resolving all claims against them by the Plaintiffs in this matter;

WHEREAS, the Alvarez Defendants have agreed to full settlement of claims against them without any admission of liability; and

WHEREAS, the parties to this Stipulation agree that injunctive relief as to future practices without admission of liability is a material element of the settlement in this matter.

**IT IS HEREBY AGREED AND STIPULATED** by and between Plaintiffs and the Alvarez Defendants that the United States District Court for the Eastern District of Pennsylvania shall be authorized to enter an Order providing as follows:

## CONSENT ORDER

1.      "Aloe Vera Caribbean Imports, LLC" is to be substituted for the Defendant "Immigration Services, Inc." as the correct name for that Defendant in this matter.

2.      As of October 30, 2015 Alvarez Defendants shall cease to utilize the names "Immigration Services, Inc.", "Immigration Services, inc." or "Immigration Services" as a trade or business names for any purpose unless explicitly authorized to do so by the Pennsylvania Secretary of State.

3.      The Alvarez Defendants will not directly or indirectly share fees with attorneys or withhold from any funds received from any customers any funds or property received on behalf of any attorney.

4.      These provisions shall not bar Francisco Alvarez from direct employment as a legal assistant or paralegal employee under the direct supervision of an attorney licensed to practice law in Pennsylvania, so long as all activities of Francisco Alvarez are under the direct supervision of that attorney.

**Definitions of Terms Used In This Order**

5.      The term "advertising," "advertised," or "advertisement" refers to oral or written statements, visual descriptions, or other representations of any kind that are made to consumers for the purpose of promoting products or services.

6.      The term "attorney" means an individual duly licensed to practice law in one or more jurisdictions of the United States.

2

7.      The term "consumer" means a customer or client that receives goods or services.

8.      The term "immigration services" means the representation of immigrants seeking residency, work permits, or other immigration matters before the United States Government.

9.      The term "legal services" means the legal representation of an individual. This term includes, but is not limited to, receiving compensation for selecting, drafting, or filing forms on behalf of another individual to be filed with any government agency or office, including, but not limited to, USCIS, and advising another individual as to his or her legal rights or as to the legal process. The term applies to activities performed in any state, and with regard to individuals who are residents of any state.

10.     The term "unauthorized practice of law" means providing, or representing that one is authorized to provide, legal services without being duly authorized or licensed in the state or territory in which the legal services are provided.  This definition is consistent with the formal opinion of the Pennsylvania Bar Association Committee on Unauthorized Practice of Law Formal Opinion 2006-01 as to what constitutes the unauthorized practice of law.

11.     The term "USCIS" refers to the United States Citizenship and Immigration Services.

**Prohibited Practices**

12.      Alvarez Defendants are restrained and enjoined from engaging in, or aiding any individual or entity under Defendants' direction and control from engaging in, the unauthorized practice of law.

13.     Alvarez Defendants are restrained and enjoined from engaging in, or aiding any individual or entity under Alvarez Defendants' direction and control from engaging in, the any

3

"unfair methods of competition" and "unfair or deceptive acts or practices" as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law at 73 P.S. § 201-2.

**Prohibited Advertising**

14.     Alvarez Defendants are restrained and enjoined from advertising that Alvarez Defendants are qualified to provide legal services.  This includes, but is not limited to the following:

        a.      Stating or implying that Alvarez Defendants can provide "legal" advice or services.

        b.      Advertising "immigration services," "green card," "work permit," "residency" and "divorces."  This prohibition includes advertising these services in any language, including Spanish.

        c.      Stating or implying that a non-attorney is a "notario," or "notario publico."

        d.      Stating or implying that Alvarez Defendants are authorized, qualified, or capable of assisting or helping a consumer with immigration questions, petitions to USCIS, or selecting or filing immigration related forms.

        e.      Stating or implying that any other person or entity is authorized, qualified, or capable of assisting or helping a consumer with immigration questions, petitions to USCIS, or selecting or filing immigration related forms, unless such person is in fact an attorney.

**Record Keeping**

15.     Alvarez Defendants shall maintain and retain a copy of all advertising, including any radio advertising, for a period of five (5) years following the date that the advertising was

4

last published and shall provide a true and correct copy of all advertising within five (5) business days if requested by (1) a Court or (2) any designee of a Court.

**Enforcement**

16.     Any individual alleging to have been aggrieved by a violation of this Consent Order shall have standing to enforce the Order.

**Retention of Jurisdiction**

17.     The United States District Court for the Eastern District of Pennsylvania shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

Exh._1:016

SO STIPULATED this 3rd day of November 2015.

Arthur Read, Esq.
  PA ID#: 29360
  Email: aread@friendsfw.org
Vanessa Stine, Esq.
  PA ID #: 319569
  Email: vstine@friendsfw.org
Friends of Farmworkers
699 Ranstead Street, 4th Floor
Philadelphia, PA 19106
Telephone: (215) 733-0878
Facsimile No. (215) 733-0876

Attorneys for Plaintiffs

Michael I. McDermott, Esq.
  PA ID # 52917
1026 Winter St, Ste 200
Philadelphia, PA 19107-1808
Telephone No. (215) 925-9732
Facsimile No. (215) 440-7882
E-Mail: mmcder1188@aol.com

Attorney for Defendants
Francisco Alvarez,
Aloe Vera Caribbean Imports, LLC dba
"Immigration Services, Inc. "

SO ORDERED this 10Th day of November 2015

JUAN R. SÁNCHEZ, J.

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| VERONICA MARLENE BARRIENTOS DE INTERIANO, and EDWIN AROLDO INTERIANO CRUZ<br><br>Plaintiffs<br><br>v.<br><br>FRANCISCO ALVAREZ, IMMIGRATION SERVICES, INC., EPHRAIM TAHIR MELLA, LAW OFFICES OF TAHIR MELLA, P.C., ELAINE YI MING CHEUNG, LAW OFFICES OF ELAINE CHEUNG, LLC<br><br>Defendants | Case 2:15-cv-04179-JS |

### ORDER

NOW this matter have come before the Court on the joint motion of Plaintiffs and Defendants Francisco Alvarez and "Immigration Services, Inc.," which is correctly identified in accordance with the Amended Answer (ECF Document 26) as Aloe Vera Caribbean Imports, LLC, d.b.a. "Immigration Services, Inc.," (hereafter collectively referred to as the "Alvarez Defendants") for entry of a Consent Injunctive Order as a part of a settlement agreement without admission of fault by the Alvarez Defendants and the Court have found that the interests of justice will be served thereby.

IT IS HEREBY ORDERED that Aloe Vera Caribbean Imports, LLC shall be substituted for "Immigration Services, Inc." as a Defendant in this matter.

Upon consideration of the foregoing and with the consent of the Alvarez Defendants, the

Court hereby ORDERS that the annexed STIPULATION FOR ENTRY OF CONSENT

INJUNCTIVE ORDER is adopted as an ORDER of this Court.

SO ORDERED this _10th_ day of _November_ 2015

_____

JUAN R. SÁNCHEZ, J.

2

Attachments Michael McDermott Correspondence

| Attachment | Description |
|---|---|
| 2 | Pennsylvania Bar Association Unauthorized Practice of Law (UPL) Committee Formal Opinion 2006-01 Unauthorized Practice of Immigration Law by Non-Attorneys and Unauthorized Practice of Law Generally by Notaries Public |

*Adopted November 8, 2006*

# Pennsylvania Bar Association Unauthorized Practice of Law (UPL) Committee Formal Opinion 2006-01

# Unauthorized Practice of Immigration Law by Non-Attorneys and Unauthorized Practice of Law Generally by Notaries Public

The Pennsylvania Bar Association Unauthorized Practice of Law (UPL) Committee has received complaints over the past several years concerning practice of immigration law by non-attorneys who have not been authorized by the federal government to represent persons in immigration proceedings or to practice immigration law.[1]

In addition, to formal complaints to the committee, community agencies, consular representatives of the Mexican government, and attorneys active in immigrant communities have informally indicated that this problem is widespread in scope in many areas in the state.

The Committee has received information suggesting that non-attorneys including "visa consultants" based outside of the Commonwealth of Pennsylvania are practicing or seeking to practice immigration law in Pennsylvania.  This includes internet advertising soliciting such business.

Some of the complaints received by the Committee and county bar associations in relationship to non-attorney practice of law in immigrant communities have involved Pennsylvania licensed notary publics who have sought to benefit from the fact that "notarios" or "notario publico" in many civil law countries, particularly in Latin America, are required to be attorneys.[2]

The Committee issues this formal opinion to clarify the extremely limited scope of non-attorney practice of law and legal representation permissible under federal law and to provide notice of its intention to actively pursue unauthorized practiced of immigration law by any persons not authorized to practice law by federal regulations.

The Committee shall pursue the unauthorized practice of law generally by notaries public and others misrepresenting themselves to consumers as having legal skills or knowledge.

## The Pennsylvania Bar Association Unauthorized Practice of Law (UPL) Committee finds:

1. Except to the limited extent that federal regulations permit accredited representatives of qualified non-profit organizations[3] to practice and represent persons in immigration related proceedings, persons who are not attorneys licensed to practice law[4] may not provide legal advice or regular[5] representation in relationship to immigration proceedings.[6]

2.  Notaries public, visa consultants or any other person who is not a licensed attorney or authorized representative pursuant to federal regulations[7] may not engage in the representation of persons as defined in federal immigration regulations.  The scope of the term "representation" is a very broad one. It includes activities which range from incidentally preparing papers for a person, selecting the appropriate government forms, to giving a person advice about his or her case, or to appearing before immigration officials on behalf of a person.[8]

3.  Any persons, including notaries public and visa consultants, other than licensed attorneys or accredited representatives of qualified non-profit organizations who assist in the completion of blank spaces on printed United States Customs and Immigration Service forms shall charge remuneration, if any, that is nominal.[9]

4.  Any persons other than licensed attorneys or accredited representatives of qualified non-profit organizations, including notaries public and visa consultants, who assist in the completion of blank spaces on printed United States Customs and Immigration Service forms or other government forms related to immigration related applications[10] shall advise all persons to whom they provide assistance that the individual is not qualified in legal matters or in immigration and naturalization procedure. [11]

5.  Persons who assist others in preparing federal government immigration forms must at all times sign the forms as preparers of such forms where required to do so by the forms or regulations.[12]  Where a notary public, visa consultant or other person apart from an accredited representative or attorney prepares forms without signing such forms as preparers where required to do so, the preparer is fraudulently hiding a role as a preparer of such forms and preventing a determination as to whether they are engaged in unauthorized practice of law.[13]

6.  Persons who are authorized to be a "notaries public"[14] shall not describe themselves in writing or orally as "notarios" or as a "notario publico" particularly when any person to whom they are providing or seeking to provide services are persons from Spanish speaking countries.[15]  Such terminology is in direct violation of 42 Pa. C.S.A. § 2524 forbidding the "equivalent in any language" of the title of lawyer or attorney at law.

7.  Violation of these restrictions constitutes unauthorized practice of law contrary to 42 Pa. C.S.A. Chapter 25 and constitutes violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. [16]

8.  Persons alleging violations of this Formal Opinion may forward written complaints of violations of this opinion to the Pennsylvania Bar Association Unauthorized Practice of Law (UPL) Committee, 100 South Street - P.O. Box 186 - Harrisburg, PA 17108-0186, Fax: (717) 238-7182.

*Adopted November 8, 2006*

**BRIEF IN SUPPORT OF PENNSYLVANIA BAR ASSOCIATION UNAUTHORIZED
PRACTICE OF LAW COMMITTEE OPINION ON UNAUTHORIZED PRACTICE
OF IMMIGRATION LAW BY NON-ATTORNEYS AND UNAUTHORIZED
<u>PRACTICE OF LAW GENERALLY BY NOTARIES PUBLIC</u>**

## <u>PENNSYLVANIA STATUTORY PROVISIONS</u>

42 Pa. C.S.A. Chapter 25 establishes by statute the persons permitted to represent litigants and at 42 Pa. C.S.A. § 2524 establishes the penalties for unauthorized practice of law. That section provides:

> (a) General rule.--Except as provided in subsection (b), any person including, but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, **or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, <u>or the equivalent in any language,</u> in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction,** without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon a first violation. A second or subsequent violation of this subsection constitutes a misdemeanor of the first degree.
>
> \*          \*          \*
>
> (c) Injunction. - In addition to a criminal prosecution, unauthorized practice of law may be enjoined in any county court of common pleas having personal jurisdiction over the defendant. The party obtaining such an injunction may be awarded costs and expenses incurred, including reasonable attorneys fees, against the enjoined party. **A violation of subsection (a) is also a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law**. [17]

42 Pa. C.S.A. § 2524.

## <u>FEDERAL REGULATION OF NON-ATTORNEY PRACTICE OF IMMIGRATION LAW</u>

As a general matter the only persons authorized to fully practice immigration law and represent individuals in immigration law proceedings are licensed attorneys and representatives of qualified non-profit organizations accredited to practice immigration law.

Relevant federal regulations concerning practice of immigration law and representation in immigration proceedings include the following, the text of which is set forth in the accompanying Federal Regulation Appendix:

- 8 C.F.R. § 1.1 Definitions.

- 8 CFR § 103.2 Applications, petitions, and other documents.

- 8 C.F.R. § 292.1 Representation of others.

- 8 C.F.R. § 292.2 Organizations qualified for recognition;  requests for recognition;  withdrawal of recognition;  accreditation of representatives;  roster.

3

*Adopted November 8, 2006*

- 8 CFR § 1001.1 Definitions [relating to the Executive Office Of Immigration Review, Department Of Justice].

- 8 CFR § 1292.1 Representation of others [relating to the Executive Office Of Immigration Review, Department Of Justice].

Apart from accredited representatives of qualified non-profit organizations pursuant to 8 C.F.R. § 292.2, federal regulations do not authorize any persons other than attorneys licensed to practice law (see, 8 C.F.R. § 1.1(f)) to provide legal advice or regular[18] representation in relationship to immigration proceedings.

Notaries public, visa consultants or any other person who is not a licensed attorney or authorized representative pursuant to federal regulations may not engage in the representation of persons as defined in federal immigration regulations. [19] See, Immigration and Naturalization Service, General Counsel Op. No. 92-29, *supra*.  The scope of the term "representation" is a very broad one. It includes activities which range from incidentally preparing papers for a person, selecting the appropriate government forms, to giving a person advice about his or her case, or to appearing before immigration officials on behalf of a person. *Id*.

Any persons other than licensed attorneys or accredited representatives of qualified non-profit organizations, including notaries public and visa consultants, who assist in the completion of blank spaces on printed United States Customs and Immigration Service forms shall charge remuneration, if any, that is nominal. See, 8 C.F.R. § 1.1(k) requiring that a notary public or service must receive "…remuneration, if any, [that] is nominal.…"

Any persons other than licensed attorneys or accredited representatives of qualified non-profit organizations, including notaries public and visa consultants, who assist in the completion of blank spaces on printed United States Customs and Immigration Service forms or other government forms related to immigration related applications  shall advise all persons to whom they provide assistance that the individual is not qualified in legal matters or in immigration and naturalization procedure.  See, 8 C.F.R. § 1.1(k) requiring that a notary public or service "… not hold himself out as qualified in legal matters or in immigration and naturalization procedure."

Persons who assist others in preparing federal government immigration forms must at all times sign the forms as preparers of such forms where required to do so by the forms or regulations.[20]

Where a notary public, visa consultant or other person apart from an accredited representative or attorney prepares forms without signing such forms as preparers where required to do so, the preparer is fraudulently hiding a role as a preparer of such forms and preventing a determination as to whether they are engaged in unauthorized practice of law.

## POINT ONE

### The Regulation of Unauthorized Practice of Immigration Law by Persons Not Authorized by Federal Agencies to Practice Immigration Law Before Them is Within the Regulatory Power of  the Commonwealth of Pennsylvania

The American Bar Association in February 2006 stated that it supports:

… vigilant enforcement against the unauthorized practice of law and ineffective assistance of counsel in immigration matters, and the development of mechanisms to ensure that substantive and procedural rights are not prejudiced for applicants for

*Adopted November 8, 2006*

immigration relief or benefits who have been victimized by the unauthorized practice of
law or ineffective assistance of counsel.

See, American Bar Association Resolution No. 107D February 2006 at paragraph (c).[21]   The
ABA report supporting this resolution stated:

### Protection from Unauthorized Practice of Law and Ineffective Assistance of Counsel

As is true throughout our American system of justice today, persons
pursuing claims for immigration relief or benefits—particularly lower-income
applicants unable to afford counsel—are often unable to obtain competent counsel
to assist them.  This problem, however, is particularly acute in immigration
matters.  Immigrants, refugees and asylum seekers often are unfamiliar with our
language, culture, and legal system, and as a result are especially vulnerable to
being deceived by persons who are not authorized to practice law, or harmed as a
result of mistakes by attorneys who lack sufficient familiarity with our nation's
complex and often unforgiving immigration laws.  These problems are
compounded in the immigration context by the grave consequences that can result
when applicants make errors in the process, and by the very limited means that
currently exist to correct mistaken decisions.

The serious problem of unauthorized practice of law in immigration
matters is so pervasive that the term "notario fraud" is often specifically
recognized in state consumer fraud laws.  Throughout the country, "notarios" and
other unauthorized "document preparers" prey on unsuspecting immigrants by
charging them seemingly reasonable fees to prepare applications for immigration
relief or benefits.  These notarios, however, often either fraudulently or
negligently assist applicants in filing improper immigration claims that can have
severe consequences for the applicants.  For example, under current law, filing the
wrong claim for immigration relief or benefits can lead to a ten-year ban, and
even a permanent ban, from legally staying in this country.

A related problem arises when attorneys who may be skilled in other areas of the
law but who lack familiarity with immigration law inadvertently make similar
errors in the process, which again can have long-lasting or even permanent
negative consequences for the applicants.

The common thread in these circumstances is that innocent victims of fraud or
negligence should not be subject to the often severe penalties that otherwise
would attach under our current immigration laws.  There must be vigilant
enforcement against those who engage in the unauthorized practice of law in
immigration matters, and appropriate measures should be taken against those
attorneys who negligently provide ineffective legal assistance to the detriment of
their clients.  More importantly, just as ineffective assistance of counsel can be
grounds for overturning improper convictions in criminal matters, the substantive
and procedural rights of applicants for immigration relief or benefits should be
protected when they are victimized by the unauthorized practice of law or
ineffective assistance of counsel.

5

*Adopted November 8, 2006*

American Bar Association, Commission on Immigration, Report Resolution No. 107D, February 2006.

There has been widespread recognition in many states both by Courts and legislatures as well as by academic legal commentators that the unauthorized practice of immigration law, particularly by non-attorney immigration consultants has lead to widespread abuse of persons in immigrant communities.[22]

The Office of General Counsel of the then Immigration and Naturalization Service in 1992 issued an opinion affirming the right of states to apply their unauthorized practice of law statutes to persons representing individuals in immigration related proceedings who were not authorized by federal regulations to represent persons in such proceedings.[23]   That opinion noted:

> If a person is not authorized by federal law to practice in immigration proceedings, the question remains whether he or she is subject to state regulation of the practice of law. The District of Columbia Court of Appeals has implied that the answer to this question is yes. *In In Re Amalgamated Development Co., Inc.,* 375 A.2d 494 (D.C.), *cert denied*, 434 U.S. 924 (1977), the court concluded that "[I]f the federal government has not granted a license in this area [of patent law], a state is free to enforce its own licensing regulations." 375 A.2d at 497 (emphasis in original). Analogous reasoning would lead to the conclusion that if a person is not authorized by federal law to practice in immigration proceedings, then he or she is subject to state regulations. *Oregon State Bar v. Ortiz*, 713 P.2d 1068, 1070 (Or.Ct.App. 1986).

> Whether or not representation by a visa consultant in violation of federal immigration regulations also violates state laws can only be determined by applying the statutes and regulations that govern the practice of law in each particular state. A review of the case law in this area reveals a number of cases involving visa consultants and immigration-related services.

> The practice of law embraces in general all advice to clients and all action taken for them in matters connected with the law. *Quarles v. State Bar of Texas*, 316 S.W.2d 797, 803 (Tex. Civ. App. 1958). The controlling purpose of all laws, rules, and decisions forbidding unlicensed persons to practice law is to protect the public against persons inexperienced and unlearned in legal matters from attempting to perform legal services. *Grievance Committee State Bar of Texas, Twenty-First Congressional District v. Coryell*, 190 S.W.2d 130, 131 (Tex. Civ. App. 1945). The objective is to protect the public against injury from acts or services, professional in nature, deemed by both the legislature and the courts to be the practice of law, done or performed by those not deemed by law to be qualified to perform them. *Grievance Committee State Bar of Texas, Twenty-First Congressional District v. Dean*, 190 S.W.2d 126, 129 (Tex. Civ. App. 1945). The character of the service and its relation to the public interest determines whether services performed by a lay person constitute the practice of law. *Id.*

> Among the leading cases in this area is *Unauthorized Practice Committee, State Bar of Texas v. Cortez*, 692 S.W.2d 47 (Tex. 1985). In this case, the respondents (neither of whom were licensed attorneys) were engaged in the business of providing immigration and bookkeeping services, which included assistance to

*Adopted November 8, 2006*

persons who were seeking to obtain immigration visas and permanent residency. *Id*. at 48. The most common practice performed by Mrs. Cortez was the selection and completion of the I-130 form (Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa) for her customers. She conducted interviews with her customers in conjunction with filling out these forms, and charged $400 for the total preparation. *Id*. She also completed several other types of Service forms for customers, including the I-140, I-600, N-600, and OF-230. *Id*.

The Supreme Court of Texas concluded that:

> Although the act of recording a client's responses to the questions on the form I-130 probably does not require legal skill or knowledge, the act of determining whether the I-130 should be filed at all does require special legal skills. . . . [A]dvising a client as to whether to file an I-130 requires a careful determination of legal consequences.

*Id*. at 50. The court's conclusion effectively found that the respondents' actions constituted the unauthorized practice of law. *Id*. at 51.[24]

Another case involving a visa consultant is the *Ortiz* case mentioned above. In *Ortiz*, the court noted that virtually no immigration case is routine and that immigration law is complex and constantly changing. *Ortiz*, 713 P.2d at 1070. Knowledge of immigration benefits, and the Service forms and procedures which are required to obtain these benefits, requires legal training and judgment. *Id*. Any error in the advice given or the steps taken in this regard could result in deportation, loss of continuous resident status, and permanent loss of entry right. *Id*. The court concluded that Mr. Ortiz had engaged in the unauthorized practice of law when he advised and assisted an alien in obtaining his permanent resident status. *Id*. See also*, The Florida Bar v. Moreno-Santana*, 322 So.2d 13 (Fla. 1975) (unauthorized practice of law when respondent rendered legal advice, filed papers, and held himself out as qualified in immigration matters); *The Florida Bar v. Retureta-Cabrera*, 322 So.2d 28 (Fla. 1975) (unauthorized practice of law when respondent maintained immigration consultant business and appeared in immigration cases, either personally or in the preparation of or filing of documents on behalf of other persons); but see *Bennett v. Goldsmith*, 6 N.Y.S.2d 748 (N.Y. App. Div. 1938), *aff'd*, 19 N.E.2d 927 (N.Y. 1939) (defendant's business of preparing papers and documents for immigration visas was not practice of law under the New York statutes then in force.)

Immigration and Naturalization Service, General Counsel Op. No. 92-29, 1992 WL 1369368 (INS).[25]

To the extent that federal law does not authorize a person other than an attorney to practice immigration law, Pennsylvania law establishes that such unauthorized practice of law is in violation of 42 Pa. C.S.A. § 2524.  The Court of Common Pleas in Philadelphia in 1969 addressed this under the prior Act of April 28, 1899, P.L. 117 sec. 1 [26] and reached the conclusion that individuals not authorized by federal regulations to represent persons in immigration proceedings engaged in unauthorized practice of law by interviewing clients, rendering advice on immigration rights and remedies, and selecting forms for petition of preference, all done for substantial amount of money.  See, McCarthy *v. Panaccio, supra*.[27]

*Adopted November 8, 2006*
Exh._1:027

A review of decisions involving the unauthorized practice of immigration law establishes that those jurisdictions which have considered the matter have concluded that state laws restricting unauthorized practice of law may be applied to those persons not authorized by federal law to practice immigration law.[28]

## POINT TWO

### Notaries Publics Are Not Authorized to Practice Law and the Usage of the Spanish language Term "Notario" or "Notario Publico" For Such Persons Falsely Conveys that Such Persons Have the Legal Expertise of Attorneys

The usage of the phrase "notario" or "notario publico" is in direct violation of the provisions of 42 Pa. C.S.A. § 2524(a) defining unauthorized practice of law as including any person who holds himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law.

In *McCarthy v. Panaccio, supra*, the Court of Common Pleas in Philadelphia held that under the predecessor unauthorized practice of law statute, the Act of April 28, 1899, P.L. 117 sec. 1,[29] a defendant engaged in unauthorized practice of law by holding himself out as himself out as "Avvocato" and "Notary Public," both of which would convey to people with Italian background that he is a lawyer.  *McCarthy v. Panaccio*, 49 Pa. D. & C.2d at 508 and 515.[30]

In *State of Indiana v. Ludy Diaz*, 838 N.E.2d at 447-448 the Indiana Supreme Court held that the usage of the term "notario" or "notario publico" was intentionally misleading to Spanish speaking persons and held that the usage of the phrase constituted unauthorized practice of law. The Indiana Court stated:

> The requirements to become a notary public in Indiana are not stringent. An applicant for a notary public commission must be at least eighteen years of age, a legal resident of Indiana, and must secure an official bond in the sum of five thousand dollars ($ 5,000). See Ind. Code § 33-42-2-1(a) & (e) (2004). No specific education or training is required. The notary public application, found on the website of Indiana's Secretary of State, is just four pages long, including instructions…. A notary's powers consist primarily of certifying acknowledgments of deeds and other legal instruments, administering oaths, and certifying affidavits and depositions. See I.C. § 33-42-2-5 (2004). A notary public may charge no more than two dollars ($2) for each notarial act. See I.C. § 33-42-8-1 (2004).

> By contrast, in many Latin American countries "notarios publicos" are a select class of elite attorneys, subject to rigorous examinations, regulation, and codes of professional responsibility, who perform quasi-judicial and other functions, including certifying and authenticating legal acts that they witness. See [Anne E.] Langford, [Note, What's In A Name?: Notarios In The United States And The Exploitation Of A Vulnerable Latino Immigrant Population, 7 *Harv. Latino L. Rev.* 115 (2004)], at 116. Some notaries public in the United States have exploited Latinos' expectations about their functions and legal knowledge, creating an illusion of expertise to mislead those who depend on them. See *id.*. Plying on the implicit misrepresentation of their credentials, some notaries charge

8

excessive amounts for services that should be free or nominal in cost, in some cases destroying immigrants' ability to pay for legitimate legal assistance. See *id.* at 124. See also Milagros Cisneros, Legislative Development, H.B. 2659: Notorious Notaries-How Arizona Is Curbing Notario Fraud In The Immigrant Community, 32 *Ariz. St. L.J.* 287 (2000); Alexandra M. Ashbrook, Note, The Unauthorized Practice Of Law In Immigration: Examining The Propriety Of Non-Lawyer Representation, 5 *Geo. J. Legal Ethics* 237 (1991).

Indiana is not the first state to be confronted with the misleading use of "notary public" or "notario publico." See, e.g., *Florida Bar v. Lugo-Rodriguez*, 317 So.2d 721 (Fla. 1975); *McCarthy v. Panaccio*, 49 Pa. D. & C.2d 501 (1969); Langford, *supra*; Cisneros, *supra*. By 1999, eleven jurisdictions had enacted legislation specifically aimed a curbing this practice. See Cisneros, *supra*, at 311. On July 1, 2001, the following Indiana statute took effect: ….I.C. § 33-42-2-10 (2004) (formerly I.C. § 33-16-2-10 (Supp. 2001), added by P.L. 64-2001, § 1).

…. The statute notwithstanding, however, this Court finds Diaz's use of the title "Notary Public" or "Notario Publico" to be inherently misleading. One of her business cards contained the title not once, but twice. The title was prominently displayed after her name on the awning of her office. She displays her notary certificate prominently in her office, akin to the manner one might display a diploma. Although Diaz corrects people who refer to her as an attorney by telling them she is a notary public, not an attorney, there is no indication Diaz corrects any misperception those people might have about the authority that comes with that title in Indiana. There is no indication that any substantial part of Diaz's business involves legitimate services as a Notary Public, and the fees she charges for her services are far above those permitted for notarial acts. Under these circumstances, the Court concludes Diaz's use of the titles "Notary Public" and "Notario Publico" in advertisements, on business cards, on her office wall, and on her awning constitutes the unauthorized practice of law. See *[In re] Mittower*, 693 N.E.2d [555], at 558 [(Ind. 1998) (holding oneself out as an attorney by the use of misleading labels may constitute the unauthorized practice of law).

St*ate of Indiana v. Diaz*, 838 N.E.2d at 447-448.[31]

The requirements to become a notary public in Pennsylvania are not significantly stricter than those in Indiana.[32]   The reality is that usage of terms such as "notario publico" in Spanish or other foreign languages for a Pennsylvania notary public where the term refers to a person who is an attorney in the country of origin of such persons is equivalent to the Pennsylvania notary public holding themselves out to be an attorney in the language of such persons.  This is in violation of 42 Pa. C.S.A. § 2524(a).

*Adopted November 8, 2006*

Exh._1:029

## Federal Regulation Appendix

### Federal Regulation of Non-Attorney Practice of Immigration Law

Relevant federal regulations concerning practice of immigration law and representation in immigration proceedings including the following:

### 8 C.F.R. § 1.1 Definitions:

*                    *                    *

(f) The term attorney means any person who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia, and is not under any order of any court suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law.

(g) Unless the context otherwise requires, the term case means any proceeding arising under any immigration or naturalization law, Executive order, or Presidential proclamation, or preparation for or incident to such proceeding, including preliminary steps by any private person or corporation preliminary to the filing of the application or petition by which any proceeding under the jurisdiction of the Service or the Board is initiated.

*                    *                    *

(i) The term practice means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the Service, or any officer of the Service, or the Board.

(j) The term representative refers to a person who is entitled to represent others as provided in § § 292.1(a)(2), (3), (4), (5), (6), and 292.1(b) of this chapter.

(k) The term preparation, constituting practice, means the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers, but does not include the lawful functions of a notary public or service consisting solely of assistance in the completion of blank spaces on printed Service forms by one whose remuneration, if any, is nominal and who does not hold himself out as qualified in legal matters or in immigration and naturalization procedure.

*                    *                    *

(m) The term representation before the Board and the Service includes practice and preparation as defined in paragraphs (i) and (k) of this section.

### 8 CFR § 103.2  Applications, petitions, and other documents.

(a) Filing

*                    *                    *

(3) Representation. An applicant or petitioner may be represented by an attorney in the United States, as defined in § 1.1(f) of this chapter, by an

*Adopted November 8, 2006*

## Federal Regulation Appendix

attorney outside the United States as defined in § 292.1(a)(6) of this chapter, or by an accredited representative as defined in § 292.1(a)(4) of this chapter.[33] A beneficiary of a petition is not a recognized party in such a proceeding. An application or petition presented in person by someone who is not the applicant or petitioner, or his or her representative as defined in this paragraph, shall be treated as if received through the mail, and the person advised that the applicant or petitioner, and his or her representative, will be notified of the decision. Where a notice of representation is submitted that is not properly signed, the application or petition will be processed as if the notice had not been submitted.

### 8 C.F.R. § 292.1  Representation of others.

(a) A person entitled to representation may be represented by any of the following:

(1) Attorneys in the United States.  Any attorney as defined in § 1.1(f) of this chapter.

(2) Law students and law graduates not yet admitted to the bar.  A law student who is enrolled in an accredited law school, or a law graduate who is not yet admitted to the bar, provided that:

(i) He or she is appearing at the request of the person entitled to representation;

(ii) In the case of a law student, he or she has filed a statement that he or she is participating, under the direct supervision of a faculty member, licensed attorney, or accredited representative, in a legal aid program or clinic conducted by a law school or non-profit organization, and that he or she is appearing without direct or indirect remuneration from the alien he or she represents;

(iii) In the case of a law graduate, he or she has filed a statement that he or she is appearing under the supervision of a licensed attorney or accredited representative and that he or she is appearing without direct or indirect remuneration from the alien he or she represents;  and

(iv) The law student's or law graduate's appearance is permitted by the official before whom he or she wishes to appear (namely an immigration judge, district director, officer-in-charge, regional director, the Commissioner, or the Board).  The official or officials may require that a law student be accompanied by the supervising faculty member, attorney, or accredited representative.

(3) **Reputable individuals**.  Any reputable individual of good moral character, provided that:

(i) He is appearing on an individual case basis, at the request of the person entitled to representation;

*Adopted November 8, 2006*

Exh._1:031

## Federal Regulation Appendix

(ii) **He is appearing without direct or indirect remuneration and files a written declaration to that effect**;

(iii) He has a **pre-existing relationship or connection with the person entitled to representation** (e.g., as a relative, neighbor, clergyman, business associate or personal friend), provided that such requirement may be waived, as a matter of administrative discretion, in cases where adequate representation would not otherwise be available; and

(iv) His appearance is permitted by the official before whom he wished to appear (namely, a special inquiry officer, district director, officer-in-charge, regional commissioner, the Commissioner, or the Board), provided that such **permission shall not be granted with respect to any individual who regularly engages in immigration and naturalization practice or preparation, or holds himself out to the public as qualified to do so.**

(4) Accredited representatives.  A person representing an organization described in § 292.2 of this chapter who has been accredited by the Board.

(5) Accredited officials.  An accredited official, in the United States, of the government to which an alien owes allegiance, if the official appears solely in his official capacity and with the alien's consent.

(6) Attorneys outside the United States.  An attorney other than one described in § 1.1(f) of this chapter who is licensed to practice law and is in good standing in a court of general jurisdiction of the country in which he/she resides and who is engaged in such practice.  Provided that he/she represents persons only in matters outside the geographical confines of the United States as defined in section 101(a)(38) of the Act, and that the Service official before whom he/she wishes to appear allows such representation as a matter of discretion.

(b) Persons formerly authorized to practice.  A person, other than a representative of an organization described in § 292.2 of this chapter, who on December 23, 1952, was authorized to practice before the Board and the Service may continue to act as a representative, subject to the provisions of § 292.3 of this chapter.

(c) Former employees.  No person previously employed by the Department of Justice shall be permitted to act as a representative in any case in violation of the provisions of 28 CFR 45.735-7.

(d) Amicus curiae.  The Board may grant permission to appear, on a case-by-case basis, as amicus curiae, to an attorney or to an organization represented by an attorney, if the public interest will be served thereby.

(e) Except as set forth in this section, no other person or persons shall represent others in any case.

*Adopted November 8, 2006*

## Federal Regulation Appendix

**8 C.F.R. § 292.2  Organizations qualified for recognition;  requests for recognition; withdrawal of recognition;  accreditation of representatives;  roster.**

(a) Qualifications of organizations.  A non-profit religious, charitable, social service, or similar organization established in the United States and recognized as such by the Board may designate a representative or representatives to practice before the Service alone or the Service and the Board (including practice before the Immigration Court).  Such organization must establish to the satisfaction of the Board that:

(1) It makes only nominal charges and assesses no excessive membership dues for persons given assistance;  and

(2) It has at its disposal adequate knowledge, information and experience.

(b) Requests for recognition.  An organization having the qualifications prescribed in paragraph (a) of this section may file an application for recognition on a Form G-27 directly with the Board, along with proof of service of a copy of the application on the district director having jurisdiction over the area in which the organization is located.  The district director, within 30 days from the date of service, shall forward to the Board a recommendation for approval or disapproval of the application and the reasons therefor, or request a specified period of time in which to conduct an investigation or otherwise obtain relevant information regarding the applicant.  The district director shall include proof of service of a copy of such recommendation or request on the organization.  The organization shall have 30 days in which to file a response with the Board to a recommendation by a district director that is other than favorable, along with proof of service of a copy of such response on the district director.  If the Board approves a request for time to conduct an investigation, or in its discretion remands the application to the district director for further information, the organization shall be advised of the time granted for such purpose.  The Service shall promptly forward the results of any investigation or inquiry to the Board, along with its recommendations for approval or disapproval and the reasons therefor, and proof of service of a copy of the submission on the organization.  The organization shall have 30 days from the date of such service to file a response with the Board to any matters raised therein, with proof of service of a copy of the response on the district director.  Requests for extensions of filing times must be submitted in writing with the reasons therefor and may be granted by the Board in its discretion.  Oral argument may be heard before the Board in its discretion at such date and time as the Board may direct.  The organization and Service shall be informed by the Board of the action taken regarding an application.  Any recognized organization shall promptly notify the Board of any changes in its name, address, or public telephone number.

(c) Withdrawal of recognition.  The Board may withdraw the recognition of any organization which has failed to maintain the qualifications required by §

*Adopted November 8, 2006*

Exh._1:033

## Federal Regulation Appendix

292.2(a).  Withdrawal of recognition may be accomplished in accordance with the following procedure:

> (1) The Service, by the district director within whose jurisdiction the organization is located, may conduct an investigation into any organization it believes no longer meets the standards for recognition.

> (2) If the investigation establishes to the satisfaction of the district director that withdrawal proceedings should be instituted, he shall cause a written statement of the grounds upon which withdrawal is sought to be served upon the organization, with notice to show cause why its recognition should not be withdrawn.  The notice will call upon the organization to appear before a special inquiry officer for a hearing at a time and place stated, not less than 30 days after service of the notice.

> (3) The special inquiry officer shall hold a hearing, receive evidence, make findings of fact, state his recommendations, and forward the complete record to the Board.

> (4) The organization and the Service shall have the opportunity of appearing at oral argument before the Board at a time specified by the Board.

> (5) The Board shall consider the entire record and render its decision. The order of the Board shall constitute the final disposition of the proceedings.

(d) Accreditation of representatives.  An organization recognized by the Board under paragraph (b) of this section may apply for accreditation of persons of good moral character as its representatives.  An organization may apply to have a representative accredited to practice before the Service alone or the Service and the Board (including practice before immigration judges).  An application for accreditation shall fully set forth the nature and extent of the proposed representative's experience and knowledge of immigration and naturalization law and procedure and the category of accreditation sought.  No individual may submit an application on his or her own behalf.  An application shall be filed directly with the Board, along with proof of service of a copy of the application on the district director having jurisdiction over the area in which the requesting organization is located.  The district director, within 30 days from the date of service, shall forward to the Board a recommendation for approval or disapproval of the application and the reasons therefor, or request a specified period of time in which to conduct an investigation or otherwise obtain relevant information regarding the applicant.  The district director shall include proof of service of a copy of such recommendation or request on the organization.  The organization shall have 30 days in which to file a response with the Board to a recommendation by a district director that is other than favorable, with proof of service of a copy of such response on the district director.  If the Board approves a request for time to conduct an investigation, or in its discretion remands the

*Adopted November 8, 2006*

Exh._1:034

## Federal Regulation Appendix

application to the district director for further information, the organization shall be advised of the time granted for such purpose.  The district director shall promptly forward the results of any investigation or inquiry to the Board, along with a recommendation for approval or disapproval and the reasons therefor, and proof of service of a copy of the submission on the organization.  The organization shall have 30 days from the date of service to file a response with the Board to any matters raised therein, with proof or service of a copy of the response on the district director.  Requests for extensions of filing times must be submitted in writing with the reasons therefor and may be granted by the Board in its discretion.  Oral argument may be heard before the Board in its discretion at such date and time as the Board may direct.  The Board may approve or disapprove an application in whole or in part and shall inform the organization and the district director of the action taken with regard to an application.  The accreditation of a representative shall be valid for a period of three years only;  however, the accreditation shall remain valid pending Board consideration of an application for renewal of accreditation if the application is filed at least 60 days before the third anniversary of the date of the Board's prior accreditation of the representative.  Accreditation terminates when the Board's recognition of the organization ceases for any reason or when the representative's employment or other connection with the organization ceases.  The organization shall promptly notify the Board of such changes.

(e) Roster.  The Board shall maintain an alphabetical roster of recognized organizations and their accredited representatives.  A copy of the roster shall be furnished to the Commissioner and he shall be advised from time to time of changes therein.[34]

\*                    \*                    \*

## 8 CFR § 1001.1  Definitions

As used in this chapter [five relating to the Executive Office Of Immigration Review, Department Of Justice]:[35]

\*                    \*                    \*

(f) The term attorney means any person who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia, and is not under any order of any court suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law.

(g) Unless the context otherwise requires, the term case means any proceeding arising under any immigration or naturalization law, Executive order, or Presidential proclamation, or preparation for or incident to such proceeding,

*Adopted November 8, 2006*

Exh._1:035

## Federal Regulation Appendix

including preliminary steps by any private person or corporation preliminary to the filing of the application or petition by which any proceeding under the jurisdiction of the Service or the Board is initiated.

*               *               *

(i) The term practice means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the Service, or any officer of the Service, or the Board.

(j) The term representative refers to a person who is entitled to represent others as provided in § § 1292.1(a) (2), (3), (4), (5), (6), and 1292.1(b) of this chapter.

(k) The term preparation, constituting practice, means the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers, but does not include the lawful functions of a notary public or service consisting solely of assistance in the completion of blank spaces on printed Service forms by one whose remuneration, if any, is nominal and who does not hold himself out as qualified in legal matters or in immigration and naturalization procedure.

*               *               *

(m) The term representation before the Board and the Service includes practice and preparation as defined in paragraphs (i) and (k) of this section.

## 8 CFR § 1292.1 Representation of others.[36]

(a) A person entitled to representation may be represented by any of the following:

      (1) Attorneys in the United States. Any attorney as defined in § 1001.1(f) of this chapter.

      (2) Law students and law graduates not yet admitted to the bar. A law student who is enrolled in an accredited law school, or a law graduate who is not yet admitted to the bar, provided that:

      (i) He or she is appearing at the request of the person entitled to representation;

      (ii) In the case of a law student, he or she has filed a statement that he or she is participating, under the direct supervision of a faculty member, licensed attorney, or accredited representative, in a legal aid program or clinic conducted by a law school or non-profit organization, and that he or she is appearing without direct or indirect remuneration from the alien he or she represents;

16

## Federal Regulation Appendix

(iii) In the case of a law graduate, he or she has filed a statement that he or she is appearing under the supervision of a licensed attorney or accredited representative and that he or she is appearing without direct or indirect remuneration from the alien he or she represents; and

(iv) The law student's or law graduate's appearance is permitted by the official before whom he or she wishes to appear (namely an immigration judge, district director, officer-in-charge, regional director, the Commissioner, or the Board). The official or officials may require that a law student be accompanied by the supervising faculty member, attorney, or accredited representative.

(3) Reputable individuals. Any reputable individual of good moral character, provided that:

(i) He is appearing on an individual case basis, at the request of the person entitled to representation;

(ii) He is appearing without direct or indirect renumeration and files a written declaration to that effect;

(iii) He has a pre-existing relationship or connection with the person entitled to representation (e.g., as a relative, neighbor, clergyman, business associate or personal friend), provided that such requirement may be waived, as a matter of administrative discretion, in cases where adequate representation would not otherwise be available; and

(iv) His appearance is permitted by the official before whom he wished to appear (namely, a special inquiry officer, district director, officer-in-charge, regional commissioner, the Commissioner, or the Board), provided that such permission shall not be granted with respect to any individual who regularly engages in immigration and naturalization practice or preparation, or holds himself out to the public as qualified to do so.

(4) Accredited representatives. A person representing an organization described in § 1292.2 of this chapter who has been accredited by the Board.

(5) Accredited officials. An accredited official, in the United States, of the government to which an alien owes allegiance, if the official appears solely in his official capacity and with the alien's consent.

(6) Attorneys outside the United States. An attorney other than one described in § 1001.1(f) of this chapter who is licensed to practice law and is in good standing in a court of general jurisdiction of the country in which he/she resides and who is engaged in such practice. Provided that he/she represents persons only in matters outside the geographical confines of the United States as defined in section 101(a)(38) of the Act, and that the Service

*Adopted November 8, 2006*
Exh._1:037

## Federal Regulation Appendix

official before whom he/she wishes to appear allows such representation as a matter of discretion.

(b) Persons formerly authorized to practice. A person, other than a representative of an organization described in § 1292.2 of this chapter, who on December 23, 1952, was authorized to practice before the Board and the Service may continue to act as a representative, subject to the provisions of § 1292.3 of this chapter.

(c) Former employees. No person previously employed by the Department of Justice shall be permitted to act as a representative in any case in violation of the provisions of 28 CFR 45.735-7.

(d) Amicus curiae. The Board may grant permission to appear, on a case-by-case basis, as amicus curiae, to an attorney or to an organization represented by an attorney, if the public interest will be served thereby.

*Adopted November 8, 2006*

Exh._1:038

## Endnotes

1    Significantly in terms of the authority of states including Pennsylvania to regulate unauthorized practice of federal immigration law at least one of the complaints received by the Pennsylvania Bar Association Unauthorized Practice of Law Committee came from an Associate Ethics Officer of the United States Customs and Immigration Service (USCIS).

2    *See*, New Jersey Committee on Unauthorized Practice of Law, Opinion No. 41:  Notaries Public and the Unauthorized Practice of Law, 178 *N.J.L.J.* 444, 13 *N.J.L.* 2273 (2004):

> "Considerable confusion has resulted when notaries in New Jersey have advertised themselves in the language of the potential consumer, with such words as "notario." In Mexico and other civil law countries, "notario" has a very different meaning from a "notary public" in the United States. While "notario" or "notario publico" in civil law countries may be synonymous with "attorney," in the United States notaries public hold strictly a "witness" position. There have been many victims of "notario fraud" because persons come to notaries thinking that they will receive legal advice as they may have received in their native land. ([Miguel Cisneros, Legislative Development, H.B. 2659: Notorious Notaries-How Arizona Is Curbing Notario Fraud in the Immigrant Community, *32 Ariz. St. L.J.* 287, (2000)] at 299).

    See also: Pedro A. Malavet, Counsel for the Situation: The Latin Notary, a Historical and Comparative Model, 19 *Hastings Int'l & Comp. L. Rev.* 389 (1996); and Anne E. Langford, Note, What's In A Name?: Notarios In The United States And The Exploitation Of A Vulnerable Latino Immigrant Population, 7 *Harv. Latino L. Rev.* 115, 118 (2004).

    In *State of Indiana Ex Rel. Indiana State Bar Association And Attorney General For The State Of Indiana, Relators, v. Ludy Diaz,* 838 N.E.2d 433 (Indiana, 2005) the Indiana Supreme Court concluded that the Spanish phases "*notario*" and "*notario publico*" were tantamount to intentional misrepresentation that a  U.S. notary public was an attorney.

3    See, 8 C.F.R. § 292.2.  Immigration jargon refers to such organizations as "VOLAG'"s.  Links to lists of such organizations are posted by USCIS on the internet at: The internet link to the roster is: http://www.usdoj.gov/eoir/statspub/raroster.htm.

4    See, 8 C.F.R. § 1.1(f).

5    See, 8 C.F.R. § 292.1(a)(3) establishing limited circumstances under which non-commercial "reputable individuals" may appear without remuneration in extremely limited circumstances as representatives in immigration proceedings even though they may not prepare filings on behalf of such persons. Compare, 8 C.F.R. § 103.2 which does <u>not</u> authorize such "reputable persons" to represent persons in relationship to filing immigration documents.

6    See, *McCarthy v. Panaccio,* 49 Pa. D.& C.2d 501 (Phila. Comm. Pl. 1969) where the court held under the prior unauthorized practice of law statute (the Act of April 28, 1899, P.L. 117 sec. 1)  that the defendant engaged in unauthorized practice of law. The court noted that merely filling out forms would not constitute practice of law, but if such work is accompanied with an interpretation of the law or an application of law to the particular facts, it would be unauthorized practice of law.  *Id.* at 511.  Defendant clearly engaged in unauthorized practice of law by interviewing clients, rendering advice on immigration rights and remedies, and selecting forms for petition of preference, all done for substantial amount of money.

    See also, *Oregon State Bar v. Ortiz,* 713 P.2d 1068 (Or. Ct. App. 1986) where the court held that the state should and can control the unlawful practice of law by unregistered practitioners if such person is not otherwise authorized by federal rules.  *Id.* at 1069-70.  Because defendant does not qualify under any of the federal exceptions for lay representation in immigration proceedings, he is subject to state regulation.  The court further found that advices rendered by defendant to his clients constituted practice of law because it "went beyond merely filling in blanks under the direction of a customer," and involved instructions of which forms to use and how to fill them out, which required legal skills and judgment.  *Id.* at 1070-71.

*Adopted November 8, 2006*

## Endnotes

7    See, 8 C.F.R. § 292.  See also, endnote 5 above, concerning the extremely limited role for non-commercial "reputable persons" that does <u>not</u> authorize the practice of law by such persons even when they are permitted to appear for limited purposes at a hearing.

8    See, Immigration and Naturalization Service, General Counsel Op. No. 92-29, 1992 WL 1369368 (INS).  Indeed:

> … the mere selection of an INS Form I-130 by a visa consultant for a client's use could satisfy the "advice" element in the term "preparation," as defined in 8 C.F.R Sec. 1.1(k) (1992). As such, a visa consultant could be required to satisfy the accreditation requirements of 8 C.F.R. Sec. 292.

Immigration and Naturalization Service, General Counsel Op. No. 93-25, 1993 WL 1503972 (INS).

The unauthorized practice of law in immigration includes the following: (1) advising persons or entities of their legal rights in immigration and naturalization matters, including advising concerning immigration status or benefit and the procedures for obtaining such status or benefit, except as allowed by the Code of Federal Regulations; (2) advising as to the availability of any legal remedy; (3) representing oneself, either directly or through advertisement, as being able to perform such legal matters; (4) allowing the public to rely on such services for preparing required immigration forms; (5) advertising in a way that any reasonable person may believe legal services are offered; (6) advising as to the selection of forms, how to fill out the forms and what supporting documentation to include in order to obtain the desired immigration status or benefit. *Florida Bar v. Becerra*, 661 So. 2d 299, 300 (Fla. 1995).

9    See, 8 C.F.R. § 1.1(k).

10    Employment related immigration proceedings may require the filing of forms with the U.S. Department of Labor or with state departments of labor.  See: http://www.workforcesecurity.doleta.gov/foreign/form.asp and http://www.workforcesecurity.doleta.gov/foreign/.

Similarly beneficiaries of immigration petitions may be required to file documents through consular offices of the U.S. Department of State.  See: http://travel.state.gov/visa/visa_1750.html.

Unless such other federal agencies <u>explicitly</u> authorize persons other than licensed attorneys or accredited immigration representatives, to engage in legal representation before those agencies, the same restrictions recognized by 8 C.F.R. § 1.1(k) should apply to the assistance of non-attorneys in the preparation of immigration related documents for such other federal departments.  8 C.F.R. § 1.1(k) only allows:

> "…lawful functions of a notary public or service consisting solely of assistance in the completion of blank spaces on printed … forms by one whose remuneration, if any, is nominal and who does not hold himself out as qualified in legal matters or in immigration and naturalization  procedure."

11    See, 8 C.F.R. § 1.1(k).  See also: *Florida Bar v. Corpa Immigration Services*, 642 So. 2d 548, 549-50 (Fla. 1994) (requiring defendant, as part of Stipulation, to post a legible sign in its office in English and Spanish stating that they are not attorneys, that they may only perform limited services and advising individuals to seek the help of a licensed attorney if they have any questions regarding what forms to file); *Florida Bar v. Aberasturia*, 529 So. 2d 690, 691 (Fla. 1988) (enjoining defendant from practicing law or representing to the public that he was a licensed attorney and requiring defendant to advise individuals that his services were not legal in nature, but limited only to accounting and translating); *Florida Bar v. Becerra, supra* (requiring a defendant found to have engaged in unauthorized practice of immigration law to provide a statement on any advertising specifying that the immigration service provided is not legal and that services are limited to the sale of blank forms and the service of filling out forms).

12    USCIS forms are available over the internet at:  http://www.uscis.gov/graphics/formsfee/forms/.  The requirement for a person preparing the form to sign the form is common to most USCIS forms. The Form I-130 Petition for Alien Relative includes at the end the following requirement:

> **F. Signature of person preparing this form, if other than the petitioner**.

*Adopted November 8, 2006*

Exh._1:040

## Endnotes

---

    I declare that I prepared this document at the request of the person above and that it is based on all information of which I have any knowledge.

Print Name _____ Signature _____  Date _____

Address _____  G-28 ID or VOLAG Number, if any. _____

See:  http://www.uscis.gov/graphics/formsfee/forms/files/i-130.pdf.  The G-28 is the official form for Notice of Entry of Appearance as Attorney or Representative.  It can be found at: http://www.uscis.gov/graphics/formsfee/forms/files/g-28.pdf.

The Form I-129 Petition for a Nonimmigrant Worker at page 4, part 7 similarly includes a requirement for signature of person preparing the form if other than the petitioner employer.  See: http://www.uscis.gov/graphics/formsfee/forms/files/I-129.pdf.  Similar requirements exist for Form I-140 Immigrant Petition for Alien Worker at page 7, part 9. See: http://www.uscis.gov/graphics/formsfee/forms/files/i-140.pdf.

[13]   In *McCarthy v. Panaccio*, 49 Pa. D. & C.2d at 512 the usage by a notary public of an attorney's name on forms completed by him instead of his own was viewed as evidence that the defendant's effort to conceal from federal immigration authorities his activities in preparing immigration documents and as knowledge that his actions were not permitted by the immigration agency.

[14]   See "The Notary Public Law" Act of 1953, P.L. 1323, No. 373 as amended by Act 151 of 2002, effective July 1, 2003, 57 P.S. § 147 *et seq.*

[15]   See endnote 2 above.  In *McCarthy v. Panaccio, supra*, the Court of Common Pleas in Philadelphia similarly found that a defendant engaged in unauthorized practice of law under the predecessor Pennsylvania unauthorized practice of law statute (the Act of April 28, 1899, P.L. 117 sec. 1) by holding himself out "Avvocato" and "Notary Public," both of which would convey to people with Italian background that he is a lawyer.

[16]   42 Pa. C.S.A. §2524(c) establishes criminal penalties for unauthorized practice of law and authorizes injunctive proceedings against violators. 42 Pa. C.S.A. §2524(c) provides that unauthorized practice of law is also a violation of the act of December 17, 1968 (P.L.1224, No.387), known as the Unfair Trade Practices and Consumer Protection Law,  73 P.S. § 201-1 *et seq.*

    In addition to provisions for the Pennsylvania Attorney General or District Attorneys to enforce the Unfair Trade Practices and Consumer Protection Law that law and obtain penalties for violations of it, persons injured by such violations may bring civil actions where the Court may award:

> … award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2.

[17]   See, Unfair Trade Practices and Consumer Protection Law at 73 P.S. § 201-1 et *seq*.  In addition, to provisions for enforcement by the Attorney General or District Attorney that act provides:

> 73 P.S. § 201-9.2. Private actions.

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

*Adopted November 8, 2006*

Exh._1:041

## Endnotes

[18]   See endnote 5 above.

[19]   See, 8 C.F.R. § 1.1(i), (k) and (m) and 8 CFR § 1001.1(i), (k) and (m).

[20]   See endnote 12 above.

[21]   American Bar Association Resolution No. 107D February resolution is available at:
http://www.abanet.org/intlaw/policy/humanrights/immigration2.06107D.pdf.

[22]   See discussion in: Alexandra M. Ashbrook, The Unauthorized Practice Of Law In Immigration: Examining the Propriety of Non-Lawyer Representation. 5 *Geo. J. Legal Ethics* 237 (1991); Miguel Cisneros, Notorious Notaries-How Arizona Is Curbing Notario Fraud in the Immigrant Community, 32 *Ariz. St. L.J.* 287, (2000); Andrew F. Moore, Fraud, The Unauthorized Practice Of Law And Unmet Needs: A Look At State Laws Regulating Immigration Assistants, 19 *Geo. Immigr. L.J.* 1 (Fall 2004).

[23]   Immigration and Naturalization Service, General Counsel Op. No. 92-29, 1992 WL 1369368 (INS).

[24]   Similarly, a person providing advice as to the type of nonimmigrant work visa for a foreign national to pursue is engaging in the practice of law.  Similarly, a person providing advice as to whether to file an I-129 (Petition for a nonimmigrant worker), I-140 (Petition for Alien worker), or an ETA Form 9089 (Labor Certification Application) with the Department of Labor is also engaged in the practice of law.

[25]   See also Immigration and Naturalization Service, General Counsel Op. No. 93-25, 1993 WL 1503972 (INS) elaborating on and reaffirming this 1992 opinion.

[26]   See endnote 29 below as to the language of Act of April 28, 1899, P.L. 117 sec. 1.

[27]   See endnotes 6 and 15 above.

[28]   See: Ashbrook, 5 *Geo. J. Legal Ethics* at 253-256 (California), at 256-257 (Florida), at 257-259 (New York), at 259-260 (Texas).  See also: *McCarthy v. Panaccio, supra*;  *Unauthorized Practice Committee, State Bar of Texas v. Cortez, supra*; *Oregon State Bar v. Ortiz, supra*;  and *State of Indiana v. Ludy Diaz, supra*.

Florida courts have held that the representation of individuals at hearings before the Immigration and Naturalization Service (INS) by non-attorneys, except to the extent allowed by the Code of Federal Regulations, constitutes the unlicensed practice of law. *Florida Bar v. Dobbs*, 508 So. 2d 326, 327 (Fla. 1987).  In this case, the Court enjoined defendant from preparing immigration forms and sending letters of representation to INS. *Id.*  See also: *Florida Bar v. Retureta-Cabrera*, 322 So. 2d 28, 29 (Fla. 1975) (enjoining defendant from appearing in immigration cases as representative and from preparing documents for immigration filings); *Florida Bar v. Flowers*, 320 So. 2d 809, 810 (Fla. 1975) (enjoining defendant from holding himself out as a licensed attorney and appearing before INS as a legal representative); *Florida Bar v. Abreu*, 833 So. 2d 752 (Fla. 2002) (enjoining defendant from holding himself out as qualified to provide assistance and representation in INS matters for remuneration).

In the State of Florida it has been established that the preparation of forms to effect a change in immigration status requires legal training and familiarity with immigration laws and the failure to properly prepare and file such documents may result in deportation of the individual involved. *Florida Bar v. Moreno-Santana*, 322 So. 2d 13, 15 (Fla. 1975). In this case, the Court enjoined defendant, not licensed in the practice of law, from holding himself out as an attorney, giving out legal advice and completing official immigration forms for substantial fees.  *Id.*  See also: *Florida Bar v. Matus*, 528 So. 2d 895, 896 (Fla. 1988) (enjoining defendant, owner of an immigration service firm, from preparing forms to effect changes in immigration status); *Florida Bar v. King*, 468 So. 2d 982, 982-3 (Fla. 1985) (enjoining defendant from conducting client interviews, making decisions that require legal expertise and contracting licensed attorneys to act as "counsel of record," essentially acting as co-counsel).

[29]   In *McCarthy v. Panaccio, supra*, the court quoted the provisions of  the Act of April 28, 1899, P. L. 117, sec. 1, 17 PS § 1608, as amended through 1969, as follows:

"From and after the passage of this act, it shall not be lawful for any person, partnership, association, or corporation,   in any county in the State of Pennsylvania, to practice law, or to hold

*Adopted November 8, 2006*
Exh._1:042

## Endnotes

himself, herself, or itself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney-at-law, attorney and counselor-at-law, counselor, *or the equivalent in any language*, in such manner as to convey the impression that he, she, or it is a practitioner of the law of this or any other State, Nation, Country or Land, or, in any manner, to advertise that he, she, or it, either alone or together with another person or persons, has, owns, conducts or maintains a law office, or law and collection office of any kind, for the practice of the law of this or any other State, Nation, Country or Land, without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth in accordance with the regularly established rules governing such admissions…."

*McCarthy v. Panaccio*, 49 Pa. D. & C.2d at 509.

[30]   The court in *McCarthy v. Panaccio, supra*, noted that:

"Under Italian law, a notary public must be a lawyer who takes a special examination to qualify for the office, and has exclusive jurisdiction to prepare certain legal documents, such as wills and deeds."

*McCarthy v. Panaccio*, 49 Pa. D. & C.2d at 508.

[31]   Florida courts have held that a "notary" holding herself out as qualified in legal immigration matters, either in person or through advertising, and misleading individuals who equate the Notary title with that of a licensed attorney, is engaged in the unauthorized practice of law. *Florida Bar v. Rodriguez*, 509 So. 2d 1111, 1112 (Fla. 1987).  See also: *Florida Bar v. Lugo-Rodriguez, supra* (enjoining defendant from counseling individuals as to their immigration status, charging for services related to effecting change in their immigration status, including arranging sham marriages, under the implication that as a "Notary" he was qualified to do so); *Florida Bar v. Escobar*, 322 So. 2d 25, 27 (Fla. 1975) (enjoining defendant claiming that he was licensed to practice law as a "Notario Publico," and from taking money promising in exchange to obtain a lawful immigration status); and *Florida Bar v. Borges-Caignet*, 321 So. 2d 550, 551-2 (Fla. 1975) (enjoining defendant from holding himself out as an attorney under the title "Notario Publico" and accepting money for legal services).

[32]   "The Notary Public Law" Act of 1953, P.L. 1323, No. 373 as amended by Act 151 of 2002, effective July 1, 2003, 57 P.S. § 147 *et seq.*  See summary of requirements to be a notary public in Pennsylvania at the  Pennsylvania Department of State website at:
http://www.dos.state.pa.us/notaries/cwp/view.asp?a=1240&q=444909&notariesNav=|.  Although newly licensed notaries must complete a three hour notary public education course, notaries licensed prior to July 2003 are exempt even from that requirement.  *Tritt v. Cortes*, 578 Pa. 317,  851 A.2d 903 (2004).

[33]   8 CFR § 103.2  is most significant in relationship to the absence of "reputable persons" as defined in 8 CFR § 292.1(a)(3).  A representative in relationship to a filing of a petition with the USCIS (United States Customs and Immigration Service) cannot be anyone other than an attorney or an accredited representative and does not include immigration consultants, notary publics or other persons who are not attorneys or accredited representatives.

[34] The internet link to the roster is:  http://www.usdoj.gov/eoir/statspub/raroster.htm.  An alphabetical listing of those organizations is available at:  http://www.usdoj.gov/eoir/statspub/recognitionaccreditationroster.pdf.  An alphabetical listing of individual accredited representatives is available at:
http://www.usdoj.gov/eoir/statspub/accreditedreproster.pdf.

[35] 8 CFR Chapter 5 (8 CFR § 1001 *et seq.*)  relates to the Executive Office of Immigration Review, Department Of Justice.  Provisions at 8 CFR § 1001 and  8 CFR § 1292 mirror provisions at 8 CFR § 1 and 8 CFR § 292

[36] 8 CFR § 1292.1 mirrors provisions at 8 CFR § 292.1 as to practice before the Executive Office of Immigration Review, Department Of Justice.

*Adopted November 8, 2006*

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| | Date | Amount | Receipt Num | Payee | Purpose |
| 3.01 | 2/5/2015 | $100.00 | 6590 | Immigration Services, Inc. | I-130 |
| 3.02 | 3/6/2015 | $100.00 | 6905 | Immigration Services, Inc. | I-130 |
| 3.03 | 4/6/2015 | $100.00 | 7146 | Immigration Services, Inc. | I-130 |
| 3.04 | 5/5/2015 | $100.00 | 7166 | Immigration Services, Inc. | I-130 |
| 3.05 | 6/6/2015 | $100.00 | 7199 | Immigration Services, Inc. | I-130 |
| 3.06 | 7/6/2015 | $100.00 | 7223 | Immigration Services, Inc. | I-130 |
| 3.07 | 8/10/2015 | $100.00 | 7319 | Immigration Services, Inc. | I-130 |
| 3.08 | 9/2/2015 | $100.00 | 6864 | Immigration Services, Inc. | I-130 |
| 3.09 | 10/5/2015 | $100.00 | 6901 | Immigration Services, Inc. | I-130 |
| 3.10 | 11/3/2015 | $1,500.00 | 6932 | Immigration Services, Inc. | NVC Case Fees |
| 3.11 | 11/10/2015 | $100.00 | 6943 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| | Date | Amount | Receipt Num | Payee | Purpose |
| 3.01 | 2/5/2015 | $100.00 | 6590 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.02 | 3/6/2015 | $100.00 | 6905 | Immigration Services, Inc. | I-130 |



Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|------------|-------------|--|--|--|--|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.03 | 4/6/2015 | $100.00 | 7146 | Immigration Services, Inc. | I-130 |



Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|------------|-------------|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.04 | 5/5/2015 | $100.00 | 7166 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.05 | 6/6/2015 | $100.00 | 7199 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.06 | 7/6/2015 | $100.00 | 7223 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.07 | 8/10/2015 | $100.00 | 7319 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.08 | 9/2/2015 | $100.00 | 6864 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.09 | 10/5/2015 | $100.00 | 6901 | Immigration Services, Inc. | I-130 |



Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|------------|-------------|--|--|--|--|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.10 | 11/3/2015 | $1,500.00 | 6932 | Immigration Services, Inc. | NVC Case Fees |

**IMMIGRATION SERVICES, INC**
3901 N. 5TH STREET
PHILADELPHIA, PENNSYLVANIA 19140
1immigration.services@gmail.com
PHONE: (215) 225-0171 CELL: (215) 432-4389

6932

DATE 11/3/15

RECEIVED FROM  Trinidad Tapia                    $ 1,500.ºº

DOLLARS

FOR  NVC Case Fees

AMOUNT OF ACCOUNT
THIS PAYMENT
BALANCE DUE

☑ CASH
☐ CHECK
☐ M.O.

BY  B. A___

*Thank You*

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 3 | Copies of Receipts Payable to Immgiration Services, Inc. | | | | |
| 3.11 | 11/10/2015 | $100.00 | 6943 | Immigration Services, Inc. | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| 4.01 | 2/11/2016 | $300.00 | 1369 | Alvarez Legal Form & Immigration Support | I-130 |
| 4.02 | 2/22/2016 | $2,785.00 | 1375 | Alvarez Legal Form & Immigration Support | NVC Fees I-601 |
| 4.03 | 6/9/2016 | $200.00 | 1455 | Alvarez Legal Form & Immigration Support | I-130 |
| 4.04 | 8/2/2016 | $300.00 | 1231 | Alvarez Legal Form & Immigration Support | I-130 |
| 4.05 | 3/3/2017 | $300.00 | 1112 | Alvarez Legal Form & Immigration Support | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| 4.01 | 2/11/2016 | $300.00 | 1369 | Alvarez Legal Form & Immigration Support | I-130 |

**Alvarez Legal Form & Immigration Support**
3901 N. 5th Street
Philadelphia, PA 19140
215-225-0171

1369

DATE 2/11/16

RECEIVED FROM _____

$ 300

FOR I-130 Case

DOLLARS

AMOUNT OF ACCOUNT 1,700 00
THIS PAYMENT 300 00
BALANCE DUE 400 F

☒ CASH
☐ CHECK
☐ CREDIT CARD
☐ MONEY ORDER

BY B. A

THANK YOU

RECEIPT

**Attachments Michael McDermott Correspondence**

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| | Date | Amount | Receipt Num | Payee | Purpose |
| 4.02 | 2/22/2016 | $2,785.00 | 1375 | Alvarez Legal Form & Immigration Support | NVC Fees I-601 |

| | Money Orders | | | | |
|---|---|---|---|---|---|
| | **Date** | **Amount** | **Number** | | |
| | 2/22/2016 | $120.00 | 23593232981 | | |
| | 2/22/2016 | $170.00 | 23593232968 | | |
| | 2/22/2016 | $325.00 | 23593232970 | | |
| | 2/22/2016 | $170.00 | 23593232946 | | |
| | 2/22/2016 | $1,000.00 | 23593232935 | | |
| | 2/22/2016 | $1,000.00 | 23593232967 | | |
| | **TOTAL** | $2,785.00 | | | |



RECEIPT

Alvarez Legal Form & Immigration Support
3901 N. 5th Street
Philadelphia, PA 19140
215-225-0171

1375

DATE 2/22/16

RECEIVED FROM Trinidad Tapia    $ 2,785

FOR NVC fees I-601    DOLLARS

AMOUNT OF ACCOUNT / THIS PAYMENT / BALANCE DUE

☐ CASH  ☐ CHECK  ☐ CREDIT CARD  ☑ MONEY ORDER

BY B. A

THANK YOU

**Attachments Michael McDermott Correspondence
Money Orders**



**Attachments Michael McDermott Correspondence**
**Money Orders**







Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| 4.03 | 6/9/2016 | $200.00 | 1455 | Alvarez Legal Form & Immigration Support | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| 4.04 | 8/2/2016 | $300.00 | 1231 | Alvarez Legal Form & Immigration Support | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description | | | | |
|---|---|---|---|---|---|
| 4 | Copies of Receipts Payable to Alvarez Legal Form & Immigration Support | | | | |
| 4.05 | 3/3/2017 | $300.00 | 1112 | Alvarez Legal Form & Immigration Support | I-130 |

Attachments Michael McDermott Correspondence

| Attachment | Description |
|:---:|:---|
| 5 | 6/5/2015 Date of Receipt of I-130 Redacted Redacted ; I-130 Fee $420 |

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
| --- |

| NOTICE TYPE | NOTICE DATE |
| --- | --- |
| Receipt | June 08, 2015 |
| **CASE TYPE** | **USCIS ALIEN NUMBER** |
| I-130, Petition for Alien Relative | |
| **RECEIPT NUMBER** | **RECEIVED DATE** | **PAGE** |
| WAC1590385874 | June 05, 2015 | 1 of 1 |
| **PRIORITY DATE** | **PREFERENCE CLASSIFICATION** | **DATE OF BIRTH** |
| June 05, 2015 | 201 B INA PARENT OF USC | September 30, 1993 |

**PAYMENT INFORMATION:**

TRINIDAD TAPIA OSORIO
PO BOX 46845
PHILADELPHIA, PA  19160

10    1111

| Application/Petition Fee: | $420.00 |
| Biometrics Fee: | $0.00 |
| Total Amount Received: | $420.00 |
| Total Balance Due: | $0.00 |

**APPLICANT/PETITIONER NAME AND MAILING ADDRESS**

The I-130, Petition for Alien Relative has been received by our office for the following beneficiaries and is in process:

| Name | Date of Birth | Country of Birth | Class (If Applicable) |
| --- | --- | --- | --- |
| TAPIA [Redact] | [Redact] | MEXICO | |

Please verify your personal information listed above and immediately notify the USCIS National Customer Service Center at the phone number listed below if there are any changes.

Please note that if a priority date is printed on this notice, the priority does not reflect earlier retained priority dates.

If you have questions about possible immigration benefits and services, filing information, or USCIS forms, please call the USCIS National Customer Service Center (NCSC) at **1-800-375-5283**.  If you are hearing impaired, please call the NCSC TDD at **1-800-767-1833**. Please also refer to the USCIS website: www.uscis.gov.

If you have any questions or comments regarding this notice or the status of your case, please contact our customer service number.

You will be notified separately about any other case you may have filed.

| **USCIS Office Address:** | **USCIS Customer Service Number:** |
| --- | --- |
| USCIS | (800)375-5283 |
| California Service Center | APPLICANT COPY |
| P.O. Box 30111 | |
| Laguna Niguel, CA  92607-0111 | |



Form I-797C Lockbox (LB)  01/02/12 Y

Attachments Michael McDermott Correspondence

| Attachment | Description |
|:---:|:---|
| 6 | 10/15/2015 Notice of Approval of I-130 for Redacted Redacted, but ineligible for adjustment of status |

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797, Notice of Action**



THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>WAC-15-903-85874 | CASE TYPE I130 PETITION FOR ALIEN RELATIVE |
|---|---|

| RECEIPT DATE<br>June 8, 2015 | PRIORITY DATE<br>June 5, 2015 | PETITIONER<br>TAPIA OSORIO, TRINIDAD |
|---|---|---|

| NOTICE DATE<br>October 15, 2015 | PAGE<br>1 of 1 | BENEFICIARY<br>TAPIA [redacted] |
|---|---|---|

| TRINIDAD TAPIA OSORIO<br>C/O BIANCA ALVAREZ<br>PO BOX 46845<br>PHILADELPHIA PA 19160 | **Notice Type:** Approval Notice<br>Section: Parent of U.S. Citizen, 201(b) INA |
|---|---|

The above petition has been approved.  The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of status.  The evidence indicates that he or she is not eligible to file an adjustment of status application.  This determination is based on the information submitted with the petition and any relating files.  If the person for whom you are petitioning believes that he or she is eligible for adjustment of status, then he or she should contact the local USCIS office for more information.

Because the person for whom you are petitioning is not eligible to adjust, we have sent the approved petition to the **Department of State National Visa Center (NVC), 32 Rochester Avenue, Portsmouth, NH 03801-2909.**  NVC processes all approved immigrant visa which consular post is the appropriate consulate to complete visa processing.  NVC will then forward the approved petition to that consulate.

This completes all USCIS action on this petition.  You should allow a minimum of 30 days for Department of State processing before contacting the NVC. If you have not received any correspondence from the NVC within 30 days, you may contact the NVC by e-mail at NVCINQUIRY@state.gov. You will need to enter the USCIS receipt number from this approval notice in the subject line. In order to receive information about your petition, you will need to include the Petitioner's name and date of birth, and the Applicant's name and date of birth, in the body of the e-mail.

The NVC will communicate with the person for whom you are petitioning concerning further immigrant visa processing steps.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary  will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

**THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL   CA   92607-0111
**Customer Service Telephone: (800) 375-5283**



Exh._1:067

Form I-797 (Rev. 01/31/05) N

Attachments Michael McDermott Correspondence

| Attachment | Description |
|:---:|:---|
| 7 | 11/9/2015 I-130 Fee $420; 11/9/2015 Date of Receipt of I-130 for Redacted |

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| NOTICE TYPE | NOTICE DATE |
|---|---|
| Receipt | November 10, 2015 |
| CASE TYPE | USCIS ALIEN NUMBER |
| I-130, Petition for Alien Relative | |

| RECEIPT NUMBER | RECEIVED DATE | PAGE |
|---|---|---|
| WAC1690125823 | November 09, 2015 | 1 of 1 |
| PRIORITY DATE | PREFERENCE CLASSIFICATION | DATE OF BIRTH |
| November 09, 2015 | 201 B INA PARENT OF USC | September 30, 1993 |

**PAYMENT INFORMATION:**

TRINIDAD TAPIA OSORIO
PO BOX 46845
PHILADELPHIA, PA 19160          15     00002724

| Application/Petition Fee: | $420.00 |
|---|---|
| Biometrics Fee: | $0.00 |
| Total Amount Received: | $420.00 |
| Total Balance Due: | $0.00 |

APPLICANT/PETITIONER NAME AND MAILING ADDRESS

The I-130, Petition for Alien Relative has been received by our office for the following beneficiaries and is in process:

| Name | Date of Birth | Country of Birth | Class (If Applicable) |
|---|---|---|---|
| Redacted | 11/27/1971 | UNITED STATES | |

Please verify your personal information listed above and immediately notify the USCIS National Customer Service Center at the phone number listed below if there are any changes.

Please note that if a priority date is printed on this notice, the priority does not reflect earlier retained priority dates.

If you have questions about possible immigration benefits and services, filing information, or USCIS forms, please call the USCIS National Customer Service Center (NCSC) at **1-800-375-5283**. If you are hearing impaired, please call the NCSC TDD at **1-800-767-1833**. Please also refer to the USCIS website: www.uscis.gov.

If you have any questions or comments regarding this notice or the status of your case, please contact our customer service number.

You will be notified separately about any other case you may have filed.

| USCIS Office Address: | USCIS Customer Service Number: |
|---|---|
| USCIS | (800)375-5283 |
| California Service Center | APPLICANT COPY |
| P.O. Box 30111 | |
| Laguna Niguel, CA  92607-0111 | |



Exh._1:069

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.     Form I-797C  07/11/14 Y

Attachments Michael McDermott Correspondence

| Attachment | Description |
|---|---|
| 8 | 1/15/2016 Notice of Approval of I-130 for for Redacted Redacted Forward consular procesing |

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797, Notice of Action**



## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>WAC-16-901-25823 | | CASE TYPE I130 PETITION FOR ALIEN RELATIVE |
|---|---|---|
| RECEIPT DATE<br>November 9, 2015 | PRIORITY DATE<br>November 9, 2015 | PETITIONER<br>TAPIA OSORIO, TRINIDAD |
| NOTICE DATE<br>January 15, 2016 | PAGE<br>1 of 1 | BENEFICIARY<br>Redacted |

| | |
|---|---|
| TRINIDAD TAPIA OSORIO<br>PO BOX 46845<br>PHILADELPHIA PA 19160 | **Notice Type:** Approval Notice<br>Section: Parent of U.S. Citizen, 201(b) INA |

The above petition has been approved. We have sent the original visa petition to the **Department of State National Visa Center (NVC), 32 Rochester Avenue, Portsmouth, NH 03801-2909**. NVC processes all approved immigrant visa petitions that need consular action. It also determines which consular post is the appropriate consulate to complete visa processing. NVC will then forward the approved petition to that consulate.

The NVC will contact the person for whom you are petitioning(beneficiary) concerning further immigrant visa processing steps.

You should allow a minimum of 30 days for Department of State processing before contacting the NVC. If you have not received any correspondence from the NVC within 30 days, you may contact the NVC by e-mail at NVCINQUIRY@state.gov. You will need to enter the USCIS receipt number from this approval notice in the subject line. In order to receive information about your petition, you will need to include the Petitioner's name and date of birth, and the Applicant's name and date of birth, in the body of the e-mail.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL   CA   92607-0111
Customer Service Telephone: (800) 375-5283



Exh._1:071

Form I-797 (Rev. 01/31/05) N

Attachments Michael McDermott Correspondence

| Attachment | Description |
|:---:|:---|
| 9 | 2/28/2017 Notice of Apointment consular procesing Ciudad Juarez for Redacted |

 

United States Department of State
National Visa Center
31 Rochester Ave, Suite 200
Portsmouth, NH 03801-2915

Redacted
Redacted
TENEXCALCO
PUEBLA
MEXICO

Interview Letter (P4)

February 28, 2017

Dear Redacted

The National Visa Center (NVC) is pleased to inform you that we scheduled your immigrant visa interview at the U.S. Embassy or Consulate in CIUDAD JUAREZ, MEXICO. This interview is for immigrant visa case number CDJ2016540179 filed by TRINIDAD TAPIA OSORIO on behalf of ANTONIA OSORIO SANCHEZ. Please **SAVE** this letter and bring it to your interview. **You should read this entire instruction packet and visit nvc.state.gov/interview online for detailed interview instructions.**

====================================================================================
**Interview Date and Time**
====================================================================================

Your immigrant visa interview is at the U.S. Embassy or Consulate in CIUDAD JUAREZ, MEXICO on **April 19, 2017** at **08:15 am**. The following applicants should attend this interview:

Name
Redacted

Petitioners are not required -- and at some locations, may not be allowed -- to attend the applicant's visa interview.

====================================================================================
**What to Do If You Cannot Go to the Interview**
====================================================================================

To reschedule an interview, visit nvc.state.gov/interview and read the Interview Instructions for the embassy where you are interviewing. If there are no rescheduling guidelines on this site, contact the embassy directly (see below).

====================================================================================
**U.S. Embassy Contact Information**
====================================================================================

To find the U.S. Embassy or Consulate in CIUDAD JUAREZ's website, visit usembassy.gov. Using the map, click on the hemisphere or region where you'll be interviewing and then select MEXICO: CIUDAD JUAREZ from the list of websites on the following page. The embassy's website will include its street address and contact information, as well as specific instructions for attending visa interviews.

CDJ2016540179

======================================================================

## Preparing for Your Visa Interview
======================================================================

All eligible applicants must complete the following tasks **before** their visa interview.  Detailed instructions for each step are online at nvc.state.gov/interview (English) and nvc.state.gov/ interview/espanol (Spanish):

1. **Complete a medical examination** with a U.S. embassy-approved physician. Every person applying for a visa is required to have a medical examination and submit the results on the day of the interview.
2. **Register for a courier service** (if required) and read the interview instructions for your location.
3. **Gather documents required for the interview.** You must bring to the interview the original versions of <u>all</u> civil documents and certificates submitted to NVC. You may need to get updated financial documents and police certificates.
4. **Visit the embassy's website** at usembassy.gov for additional information.

Please visit nvc.state.gov/interview to view our online interview preparation information.

======================================================================

## *** IMPORTANT *** Interview Reminders
======================================================================

You already submitted certain forms and documents to NVC. At your visa interview, **you must give the consular officer the <u>original</u> version of each <u>civil</u> document you submitted plus one photocopy** for each person applying for a visa. These original versions will be returned to you.

- The only form you do **<u>not</u>** need to bring to your interview is the Form DS-260 Application for an Immigrant Visa. Instead, print a copy of the receipt page from ceac.state.gov showing you submitted the form online.

- If a financial sponsor submitted an I-864 Affidavit of Support form, you must give the consular officer a signed version. It can be a photocopy, but the signature cannot be typed or electronic.

- *If you do not bring to your interview the original version of all civil documents submitted to NVC, the consular officer will reschedule your interview.*

Please use the helpful checklist on the next page to prepare for your interview. You can also visit "Interview Preparation - Required Documents" on nvc.state.gov/interview for more information.

======================================================================

## Family Reunification Parole (FRP) Program Interviews
======================================================================

If you are participating in the Cuban Family Reunification Parole Program, view the program website at havana.usembassy.gov/cfrp.html (English) or spanish.havana.usembassy.gov/cfrp.html (Spanish) and follow the instructions.

If you are participating in the Haitian Family Reunification Parole Program, view the website at go.usa.gov/3MmV5 and click on "Haitian Family Reunification Parole (HFRP) Program" under "Office Services."

Exh._1:074

===============================================================
### CDJ2016540179 - WHAT TO BRING TO YOUR IMMIGRANT VISA INTERVIEW
===============================================================

**Use the list below to determine the items that <u>every</u> applicant must bring to the immigrant visa interview. Most embassies require English translations of documents if they are <u>not</u> in the official language of the country where you will interview:**

☐ A copy of this appointment letter.

☐ Unexpired passport valid for six months beyond your intended date of entry to the U.S. <u>and</u> a photocopy of the biographic page (where your name and photo are located).

☐ Two (2) color photographs sized 5 cm x 5 cm (2 inch x 2 inch) of each person applying for a visa. Please see photo requirements at go.usa.gov/3MmwB.

☐ Confirmation page from the DS-260 Application for an Immigrant Visa submitted online at <u>ceac.state.gov</u>.

☐ Your **original** birth certificate <u>and</u> a photocopy.

☐ Medical examination results in a sealed envelope (*if the physician gives you these results*).

**Applicants who fall into any category listed in italics below should bring these additional documents:**

☐ *For family-based visa applications*:

    ☐ The appropriate Form I-864 Affidavit of Support for **each** financial sponsor along with a photocopy of the sponsor's IRS transcript or most recent U.S. federal income tax return, and any relevant W-2s.

    ☐ Proof of your U.S. petitioner's status and domicile in the U.S. (photocopy of a U.S. passport, U.S. birth certificate, naturalization certificate, or legal permanent resident card).

    ☐ Evidence of the relationship between the petitioner and visa applicant (such as photographs and letters).

☐ *If you are married*: Your **original** marriage certificate <u>and</u> a photocopy.

☐ *If you were previously married:* Your **original** divorce or spouse's death certificate <u>and</u> a photocopy.

☐ *If you are older than 16 years of age:* The **original** police certificate from your country of current residence and countries of previous residence. If these three items are <u>all</u> true, you must bring a more recent police certificate to the interview:

    o He or she is older than 16 years;
    o He or she obtained a police certificate and submitted it to NVC more than one year ago; and
    o He or she still lives in the country that issued the police certificate.

☐ *For employment-based visa applications:* Letter from your U.S. employer dated less than 1 month ago.

☐ *If you have ever been convicted of a crime*: Court / criminal records and a photocopy.

☐ *If you have served in any country's military*: Military records and photocopy.

☐ *If you are adopted:* Adoption papers or custody documents <u>and</u> a photocopy.

☐ *If you are the petitioner's stepchild:* The **original** marriage certificate of the petitioner and your biological parent, English translation <u>and</u> a photocopy.

**Did you read the U.S. embassy or consulate's interview instructions on <u>nvc.state.gov/interview</u> to learn:**

☐ The approved medical facilities where you can get a medical examination?

☐ Whether you are required to register for a passport courier service prior to the interview?

☐ Security requirements for entering the U.S. Embassy?

☐ If there are any forms or documents **not** listed above that the embassy wants you to bring to the interview?

☐   Whether you are required to provide the above documents to the embassy **prior** to your interview?

Attachments Michael McDermott Correspondence

| Attachment | Description |
|:---:|:---|
| 10 | 4/19/2017 Redacted . Apointment consular procesing Ciudad Juarez |



U.S. Citizenship
and Immigration
Services

PARA:  Aplicantes que Solicitan la Forma I-601
RE:  Solicitud de Perdón Formulario I-601/I-212

Si usted está fuera de los Estados Unidos y tuvo una entrevista para la visa de inmigrante con el Departamento de Estado pero un Oficial Consular lo ha encontrado inelegible para ser admitido a Estados Unidos, por uno o más motivos de inadmisibilidad para el cual un perdón puede estar disponible, usted puede solicitar un perdón llenando la Forma I-601, *Solicitud de Perdón por Inadmisibilidad* y/o Forma I-212, *Solicitud de Permiso Para Volver a Aplicar y Ser Admitido a los Estados Unidos Después de una Deportación o haber sido Removido* en caso de ser inadmisible por razón de Deportación o Remoción.

**Donde Solicitar el Perdón:**

Los solicitantes en México ahora deben solicitar la Forma I-601 con la Forma I-212, (en caso necesario), directamente al domicilio de USCIS en Phoenix en las siguientes direcciones:

**Para el Servicio Postal Ordinario de Estados Unidos:**

USCIS
P.O. Box 21600
Phoenix, AZ 85036

**Para el Servicio de Paquetería:**

USCIS
ATTN: 601/212 Foreign Filers
1820 E. Skyharbor, Circle S, Suite 100
Phoenix, AZ 85034

Favor de visitar nuestra página oficial de internet en: **www.uscis.gov**

**Solicitud de Perdón I-601/I-212 como Excepción con la Oficina de USCIS en Ciudad Juarez:**

Usted puede solicitar que la Oficina de USCIS en Ciudad Juarez acepte su solicitud para la adjudicación de la Forma I-601 y Forma I-212 (en caso necesario) si existen:

- Circunstancias excepcionales y apremiantes que requieren la necesidad de solicitar inmediatamente;

- El aplicante debe estar presente en el país donde se encuentra la Oficina Internacional de USCIS.

- El aplicante no debe haber solicitado el perdón con la Oficina de USCIS en Estados Unidos.

La solicitud debe ser por escrito con el Director de USCIS en Ciudad Juarez quien a su discreción puede aceptar o rechazar la solicitud. El solicitante debe presentar evidencia de la circunstancia **extraordinaria y apremiante**. Para más información, por favor lea el memorándum de USCIS: <u>**Excepciones para Permitir la Presentación de la Forma I-601**</u> El cual puede encontrarlo en el sitio web: www.USCIS.gov

Atentamente,

Miguel Chávez
Oficial en Jefe
Oficina de USCIS en Ciudad Juárez
Consulado General en Ciudad Juárez

UNITED STATES CONSULATE GENERAL
**UNIDAD DE VISAS DE INMIGRANTE, P.O. BOX 10545, EL PASO, TX 79995**
PASEO DE LA VICTORIA # 3650, CIUDAD JUAREZ, CHIHUAHUA, MEXICO
https://mx.usembassy.gov/embassy-consulates/ciudad-juarez/
**INFORMACION DE VISAS DE INMIGRANTE en http://ais.usvisa-info.com/es-mx/iv**

**Fecha: 19 Apr 2017**
**Número de Caso:** Redacted
**NOMBRE:** Redacted

Usted no es elegible para recibir una visa de acuerdo a la siguiente sección de la Ley de Inmigración y Nacionalidad:

☑ **9B2** (§212(a)(9)(B)(II))   El solicitante estuvo presente ilegalmente en los Estados Unidos por más de 365 días. Esta inelegibilidad expirará despues de diciembre 2023.

Para la infracción indicada arriba, la Ley de Inmigración y Nacionalidad (INA por sus siglas en inglés) puede proporcionar el siguiente recurso:

☐ **I-601 WAIVER**   La elegibilidad para un perdón la determina el Servicio de Inmigración y Naturalización de los E.U.  Para más información, ingrese a  http://www.uscis.gov

Atentamente,

_____
**OFICIAL CONSULAR**

(07/2016)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VERONICA MARLENE BARRIENTOS DE
INTERIANO, and EDWIN AROLDO INTERIANO
CRUZ

Plaintiffs

v.

FRANCISCO ALVAREZ, IMMIGRATION
SERVICES, INC., et al.

Defendants

-------------------------------------------------------------

TRINIDAD TAPIA OSORIO

Intervenor Plaintiff,

Case 2:15-cv-04179-JS

# EXHIBITS FOR

## INTERVENOR PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION TO INTERVENTION AND MOTION TO DISMISS

# Exhibit 2

## Extracts from Electronic Mail Communications with Shaela Cruz, Esq.

| Exhibit | Description |
|---|---|
| 2 | **Extracts from Electronic Mail Communications with Shaela Cruz, Esq.** |
| 2-1 | **Email March 11, 2019 to Shaela Cruz, Esq.** |
| 2.-2 | **Email Thursday, March 14, 2019 from Shaela Cruz** |
| 2-3 | **Email Friday, March 15, 2019 to Shaela Cruz** |
| 2-4 | **Email Friday, March 15, 2019 from Shaela Cruz** |
| 2-5 | **Email Wednesday, April 10, 2019 to Shaela Cruz**<br>**Attached Email April 10, 2019 to Michael McDermott (redacted)**<br>**Attached Photograph March 29, 2019 photograph of 3901 N. 5th Street** |
| 2-6 | **Email Tuesday, April 16, 2019 from Shaela Cruz** |

## Exhibit 2-1 (Email March 11, 2019)

**From:** Art Read
**Sent:** Monday, March 11, 2019 5:19 PM
**To:** Shaela Curz (scruzesq@gmail.com)
**Subject:** Representation  of Trinidad Tapia Osorio and his Family
**Attachments:** 2019-03-11_Letter to McDermott_without_Attachments.pdf; Shaela Cruz Email 2019-03-11_Text.pdf

This electronic mail message and any attachments are intended only for the personal and confidential use of the individual to whom it is addressed and may contain information that is privileged, confidential and protected by law.
If you are not the intended recipient, you are hereby notified that any use or disclosure of this information is strictly prohibited. If you have received this message in error, please notify the sender immediately by reply electronic mail message and delete the original message. Your compliance is appreciated.

---------------------------------------------------------------------------------------------------------------

From:   Arthur N. Read, General Counsel
        Justice at Work
        990 Spring Garden Street, Suite 300
        Philadelphia, PA 19123-2606
        Telephone: (215) 733-0878, ext. 150
        Direct Dial:  (215) 690-5687
        Fax:         (215) 733-0876
        Email:       aread@justiceatworklegalaid.org

To:     Shaela Curz (scruzesq@gmail.com)

        Law Office of Shaela Cruz
        3901 N. 5th Street
        Philadelphia, PA 19140

        Cruz Law PC
        PO BOX 82
        BRIDGEPORT PA 19405

        CRUZ LAW PC
        4651 RISING SUN AVE
        PHILADELPHIA PA 19405

**Exhibit 2-1 (Email March 11, 2019)**

Date:   March 11, 2019

Please see attached email "2019-03-11_Letter to McDermott_without_Attachments.pdf"

Your were copied on this correspondence relating to immigration services provided to Trinidad Tapia Osorio and his family in the period 2015  to 2017.  These services were provided from a location 3901 N. 5th Street, Philadelphia, PA 19140 where you maintained a law office in 2016 and 2017.

In the event that it is your posisstion that immigration services provided to our client and his family were provided by Bianca Alvarez and/or other paralegal staff under your supervision, please contact me as soon as possible to discuss this matter.

Thank you for your anticipated cooperation in this matter.

----------------------------------------------------------------------------------------------------------
From:
    Arthur N. Read, General Counsel
    Justice at Work
    990 Spring Garden Street, Suite 300
    Philadelphia, PA 19123-2606
    Telephone: (215) 733-0878, ext. 150
    Direct Dial:  (215) 690-5687
    Fax:          (215) 733-0876
    Email:        aread@justiceatworklegalaid.org
    Web:          https://www.justiceatworklegalaid.org/

Did you know Friends of Farmworkers recently changed its name?
Find out why **here.**



This electronic mail message and any attachments are intended only for the personal and confidential use of the individual to whom it is addressed and may contain information that is privileged, confidential and protected by law.
If you are not the intended recipient, you are hereby notified that any use or disclosure of this information is strictly prohibited. If you have received this message in error, please notify the sender immediately by reply electronic mail message and delete the original message. Your compliance is appreciated.
----------------------------------------------------------------------------------------------------------

Exhibit 2-1 (Email March 11, 2019)

**From:** Art Read
**Sent:** Monday, March 11, 2019 4:42 PM
**To:** Michael I. McDermott (mmcder1188@aol.com) <mmcder1188@aol.com>
**Cc:** Shaela Curz (scruzesq@gmail.com) <scruzesq@gmail.com>
**Subject:** Apparent Breaches of Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS, Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al.
**Importance:** High


From:   Arthur N. Read, General Counsel
        Justice at Work
        990 Spring Garden Street, Suite 300
        Philadelphia, PA 19123-2606
        Telephone: (215) 733-0878, ext. 150
        Direct Dial:  (215) 690-5687
        Fax:         (215) 733-0876
        Email:        aread@justiceatworklegalaid.org

To:     Michael I. McDermott (mmcder1188@aol.com)
        1026 Winter Street, STE 200
        Philadelphia, PA 19107-1808
                By Email to: mmcder1188@aol.com


Date:   March 11, 2019


Re:     Apparent Breaches of Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS,
        *Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al.*


Dear Mr. McDermott:

Please see attached letter and respond.


Cc:     Shaela Curz (scruzesq@gmail.com)
        Cruz Law PC
        PO BOX 82
        BRIDGEPORT PA 19405
                By Email to:  scruzesq@gmail.com


-----------------------------------------------------------------------------------------------------------------
From:
      Arthur N. Read, General Counsel
      Justice at Work
      990 Spring Garden Street, Suite 300
      Philadelphia, PA 19123-2606
      Telephone: (215) 733-0878, ext. 150
      Direct Dial: (215) 690-5687
      Fax:         (215) 733-0876
      Email:        aread@justiceatworklegalaid.org
      Web:          https://www.justiceatworklegalaid.org/

Did you know Friends of Farmworkers recently changed its name?

3

**Exhibit 2-2 (March 14, 2019)**

| | |
|---|---|
| **From:** | Shaela Cruz- Office |
| **To:** | Art Read |
| **Subject:** | Re: Representation of Trinidad Tapia Osorio and his Family |
| **Date:** | Thursday, March 14, 2019 4:27:32 PM |

Hi-

I'm sorry for my delayed response - I have never provided representation to Trinidad Tapia or his family mentioned in letter ,nor did I supervise anyone who may have provided representation to them, including Bianca Alvarez.

Let me know if you need anything else regarding this matter.

-Shaela Cruz

Sent from my iPhone

On Mar 11, 2019, at 5:19 PM, Art Read <aread@justiceatworklegalaid.org> wrote:

### Exhibit 2-3 (Email to Shaela Cruz March 15, 2019)

**From:**  Art Read
**Sent:**  Friday, March 15, 2019 11:24 AM
**To:**  Shaela Cruz- Office
**Subject:**  Re: Representation  of Trinidad Tapia Osorio and his Family


To:  Shaela Cruz
Thank you for your response.  To clarify during 2016 and early 2017 when Frank Alvarez operated as a paralegal under your supervision was Bianca Alvarez at any time also under your supervision at any time?
Signage outside the building suggested that she was. See attached from Google maps.
Art Read
Sent by Outlook for Android


From: Shaela Cruz- Office
Sent: Thursday, March 14, 4:27 PM
Subject: Re: Representation  of Trinidad Tapia Osorio and his Family

To: Art Read
Hi-
I'm sorry for my delayed response - I have never provided representation to Trinidad Tapia or his family mentioned in letter ,nor did I supervise anyone who may have provided representation to them, including Bianca Alvarez.
Let me know if you need anything else regarding this matter.
-Shaela Cruz

Sent from my iPhone
On Mar 11, 2019, at 5:19 PM, Art Read < aread@justiceatworklegalaid.org> wrote:

Exh._2:005

**Exhibit 2-3 (Email to Shaela Cruz March 15, 2019)**

From:      Art Read
To:        Shaela Cruz- Office
Subject:   Re: Representation of Trinidad Tapia Osorio and his Family
Date:      Friday, March 15, 2019 11:23:38 AM
Attachments: Screenshot_20190315-111943.png



**Exhibit 2-4 (Email March 15, 2019 from Shaela Cruz)**

| | |
|---|---|
| **From:** | Shaela Cruz- Office |
| **To:** | Art Read |
| **Subject:** | Re: Representation of Trinidad Tapia Osorio and his Family |
| **Date:** | Friday, March 15, 2019 11:45:21 AM |

Hi-

No she was not under my supervision, when I started to work from that location my name was added to the existing sign that was already there, but she did not work as my legal assistant.  She worked independently from me and Mr. Alvarez

I have also contacted the same office to have my name removed several times from the building's sign outside, since I left and to date, I believe he has not done so.

Shaela Cruz


Sent from my iPhone

On Mar 15, 2019, at 11:23 AM, Art Read <aread@justiceatworklegalaid.org> wrote:

    <Screenshot_20190315-111943.png>


    To:  Shaela Cruz

    Thank you for your response.  To clarify during 2016 and early 2017 when Frank Alvarez operated as a paralegal under your supervision was Bianca Alvarez at any time also under your supervision at any time?

    Signage outside the building suggested that she was. See attached from Google maps.

    Art Read
    Sent by Outlook for Android

    From: Shaela Cruz- Office
    Sent: Thursday, March 14, 4:27 PM
    Subject: Re: Representation  of Trinidad Tapia Osorio and his Family
    To: Art Read


    Hi-

    I'm sorry for my delayed response - I have never provided representation to Trinidad Tapia or his family mentioned in letter ,nor did I supervise anyone who may have provided representation to them, including Bianca Alvarez.

    Let me know if you need anything else regarding this matter.
    -Shaela Cruz
    Sent from my iPhone

## Exhibit 2-5 (Emails April 10, 2019)

| | |
|---|---|
| **From:** | Art Read |
| **To:** | Shaela Curz (scruzesq@gmail.com) |
| **Bcc:** | Art Read; 18-0005966@fof.legalserver.org; Ian Grant (igrant@justiceatworklegalaid.org); Evy Tolentino (etolentino@justiceatworklegalaid.org); Kate Brown (Kbrown@justiceatworklegalaid.org); Liz Chacko (lchacko@justiceatworklegalaid.org); Meredith Rapkin (mrapkin@justiceatworklegalaid.org) |
| **Subject:** | RE: Shaela Cruz Representation of Trinidad Tapia Osorio and his Family |
| **Date:** | Wednesday, April 10, 2019 5:08:00 PM |
| **Attachments:** | Print Email 2019-04-10 0453 pm RE _ Apparent Breaches of Injunctive Order United States District Court, Docket # 2_15-cv-4179-JS.pdf<br>March 29, 2019 Front view of 3901 N 5th ST.pdf<br>2019-03-11_Letter to McDermott_with_Attachments.pdf |
| **Importance:** | High |

Please see email and attachments relating to allegations by Bianca Cruz that you were involved in the representation of Trinidad Tapia Osorio.

Also attached is a March 29, 2019 photograph of 3901 N. 5th Street.

---------------------------------------------------------------------------------------------------------
From:

    Arthur N. Read, General Counsel

    Justice at Work

    Telephone: (215) 733-0878, ext. 150

    Direct Dial:  (215) 690-5687

    Fax:        (215) 733-0876

    Email:      aread@justiceatworklegalaid.org

    Web:      https://www.justiceatworklegalaid.org/

This electronic mail message and any attachments are intended only for the personal and confidential use of the individual to whom it is addressed and may contain information that is privileged, confidential and protected by law.
If you are not the intended recipient, you are hereby notified that any use or disclosure
of this information is strictly prohibited. If you have received this message in error, please notify the sender immediately by reply electronic mail message and delete the original message. Your compliance is appreciated.
---------------------------------------------------------------------------------------------------------

### Exhibit 2-5 (Emails April 10, 2019)

| | |
|---|---|
| **From:** | Art Read |
| **To:** | Michael I. McDermott, Esquire |
| **Subject:** | RE: Apparent Breaches of Injunction Order United States District Court, Docket # 2:15-cv-4179-JS, Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al. |
| **Date:** | Wednesday, April 10, 2019 4:53:25 PM |
| **Attachments:** | 2019-03-11_Letter to McDermott_with_Attachments.pdf |
| | March 29, 2019 Front view of 3901 N 5th ST.pdf |
| | Email Text 2019-04-10.pdf |

---

To:      Michael I. McDermott, Esquire mmcder1188@aol.com
Date:   April 10. 2019

Thank you for interrupting your client meeting to take the call which was scheduled for 3:30 pm this afternoon at your request.

You have advised me that Bianca Alvarez is in your estimation "not in the case" referring to the Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS, *Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al*.

I specifically referred you to our March 11, 2019 letter to you (attached) which detailed payments made to Immigration Services, Inc. in this case, including payments after the effective date of the Court injunction . Please see pages 3-5 of that letter and Attachment 3 to that letter (pages 44-55) of the attached pdf "2019-03-11_Letter to McDermott_with_Attachments.pdf." It is clear that Immigration Services, Inc. which was a defendant in Case # 2:15-cv-4179-JS was directly involved in receipt of payments through the end of November 2015 and no attorney entered into a contract for legal representation with our client or members of his family subsequent to that date.

You have conveyed an offer from Bianca Alvarez who you represent for this purpose to pay a total of <span style="color:red">Redacted</span> on the following schedule



- <span style="color:red">Redacted</span>

I indicated to you that records reflect that Ms. Bianca Alvarez is the owner of the property at 3901 N 5TH ST, PHILADELPHIA , PA 19140. I requested whether you are prepared to establish that Ms. Bianca Alvarez is financially unable to pay the full <span style="color:red">Redacted</span> amount in a single payment rather than requiring such a prolonged payment schedule. You declined to respond to this request. I would renew a request for documentation of why prompt full repayment of agreed amounts is not possible or alternatively why payment in full by June 30, 2019 is not possible.

**You asserted in our call that costs for applications for benefits were sent to the U.S. government by checks drawn by Shaela Cruz. <mark>As you know, Shaela Cruz has denied any role in this matter</mark>**. Attached to this email is the initial correspondence with attachments detailing all payments. **Please advise on what dates and what amounts payments were allegedly made on checks drawn by Shaela Cruz**.

I have asked you  to respond as to what commitments Bianca Alvarez is prepared to make as

Exhibit 2-5 (Emails April 10, 2019)
to future compliance with law.  The attached March 11, 2019 letter stated:

### Claim Pursuant to Unfair Trade Practices Act

The Pennsylvania Unfair Trade Practices Act authorizes an award of treble damages for violations of that Act including the unauthorized practice of law.  Treble damages on the payment of ███████ totals a claim for ███████.

Throughout her representation of the family of Mr. Trinidad Tapia, **Ms. Bianca Alvarez** had acted as a representative of the Alvarez Defendants in EDPA Case #2:15-cv-4179-JS and **it is essential as part of any settlement of this matter that she agree to comply fully with the terms of the injunction in that matter.**

You said you had not discussed issues as to future compliance with Ms. Bianca Alvarez.  I am again requesting that you do so.

I am attaching a recent photograph of the front of 3901 N. 5th Street reflecting signage that clearly implies that Ms. Bianca Alvarez is a "bilingual legal assistant" to attorney Shaela Cruz.  Attorney Shaela Cruz has advised me that she has repeatedly attempted to have the signage removed since she no longer maintains offices there.  Ms. Cruz further asserts that she in no way supervised work of Ms. Bianca Alvarez in this matter.

I will review your offer with our client, but would appreciate your also review the issues above with Ms. Alvarez.

---------------------------------------------------------------------------------------------------------
From:
    Arthur N. Read, General Counsel
    Justice at Work
    Telephone: (215) 733-0878, ext. 150
    Direct Dial:  (215) 690-5687
    Fax:     (215) 733-0876
    Email:     aread@justiceatworklegalaid.org
    Web:     https://www.justiceatworklegalaid.org/

This electronic mail message and any attachments are intended only for the personal and confidential use of the individual to whom it is addressed and may contain information that is privileged, confidential and protected by law.
If you are not the intended recipient, you are hereby notified that any use or disclosure
of this information is strictly prohibited. If you have received this message in error, please notify the sender immediately by reply electronic mail message and delete the original message. Your compliance is appreciated.
---------------------------------------------------------------------------------------------------------

Exhibit 2-5 (Emails April 10, 2019)

-----------------------------------------------------------------------------------------------

**From:** Art Read
**Sent: Thursday, March 14, 2019 5:23 PM**
**To:** Michael I. McDermott ([mmcder1188@aol.com](mailto:mmcder1188@aol.com)) <[mmcder1188@aol.com](mailto:mmcder1188@aol.com)>
**Subject:** Shaela Cruz Representation of Trinidad Tapia Osorio and his Family
**Importance:** High

Please see  email below from Shaela Cruz
-----------------------------------------------------------------------------------------------

**From:** Shaela Cruz- Office <[scruzesq@gmail.com](mailto:scruzesq@gmail.com)>


**Sent:** Thursday, March 14, 2019 4:26 PM
**To:** Art Read <[aread@justiceatworklegalaid.org](mailto:aread@justiceatworklegalaid.org)>
**Subject:** Re: Representation of Trinidad Tapia Osorio and his Family

Hi-

I'm sorry for my delayed response - ==I have never provided representation to Trinidad Tapia or his family mentioned in letter ,nor did I supervise anyone who may have provided representation to them, including Bianca Alvarez.==

Let me know if you need anything else regarding this matter.

-Shaela Cruz

Sent from my iPhone

-----------------------------------------------------------------------------------------------

**From:** Art Read
**Sent: Monday, March 11, 2019 4:42 PM**
**To:** Michael I. McDermott ([mmcder1188@aol.com](mailto:mmcder1188@aol.com)) <[mmcder1188@aol.com](mailto:mmcder1188@aol.com)>
**Cc:** Shaela Curz ([scruzesq@gmail.com](mailto:scruzesq@gmail.com)) <[scruzesq@gmail.com](mailto:scruzesq@gmail.com)>
**Subject:** Apparent Breaches of Injunctive Order United States District Court, Docket # 2:15-cv-4179-JS, Barrientos de Interiano v. Francisco Alvarez, Immigration Services, Inc. et al.
**Importance:** High

From:   Arthur N. Read, General Counsel
        Justice at Work
        990 Spring Garden Street, Suite 300
        Philadelphia, PA 19123-2606
        Telephone: (215) 733-0878, ext. 150
        Direct Dial:  (215) 690-5687

Exhibit 2-5 (Emails April 10, 2019)



**Exhibit 2-6 (April 16, 2019)**

| | |
|---|---|
| **From:** | Shaela Cruz, Esq. |
| **To:** | Art Read |
| **Subject:** | Re: Shaela Cruz Representation of Trinidad Tapia Osorio and his Family |
| **Date:** | Tuesday, April 16, 2019 6:42:47 PM |

I cannot do anything about the sign, as you stated in your email to Mr. McDermott I have asked Mr. Alvarez on various occasions to take my name down and he told me that he is working on it. Today he told me the city wanted certain measurements but that he would tell someone to take it off.

As far as supervising Bianca Alvarez I reiterate that I never supervised her in any of her work.

In regards to what she states regarding checks with my name used for fees; at times, (I am not sure if it was the case in this instant case, though), I would provide Bianca with checks for immigration fees, and deposit cash she gave me; because she did not have a checking account. However, I never considered this transaction as constituting supervision of any kind, so I don't think this should be used as an excuse or evidence of, that I was supervising her work.

As the complaint states, your clients said they never met me, nor were told l was representing them during the time they worked with Bianca Alvarez.

Hope this information helps,
Shaela
-------------------------
Shaela Cruz
Attorney/Abogada
P.O. Box 82
Bridgeport,PA 19405

On Wed, Apr 10, 2019 at 5:09 PM Art Read <aread@justiceatworklegalaid.org> wrote:

Please see email and attachments relating to allegations by Bianca Cruz that you were involved in the representation of Trinidad Tapia Osorio.

Also attached is a March 29, 2019 photograph of 3901 N. 5th Street.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VERONICA MARLENE BARRIENTOS DE
INTERIANO, and EDWIN AROLDO INTERIANO
CRUZ,

                                   Plaintiffs
        v.                                                          Case 2:15-cv-04179-JS
FRANCISCO ALVAREZ, IMMIGRATION
SERVICES, INC., et al.,

                                   Defendants
----------------------------------------------------------------
TRINIDAD TAPIA OSORIO

                Intervenor Plaintiff.

**<u>ORDER</u>**

        **AND NOW**, this _____ day of _____, 2020, upon consideration of

Defendants' Motion to Dismiss Motion by Proposed Intervenor Plaintiff to Intervene and Reopen

and Motion to Dismiss Intervenor Plaintiff's Complaint Pursuant to Federal Rule of Civil

Procedure 12(b)(6), ECF No. 41, and Intervenor's Opposition thereto, **IT IS ORDERED** that

Defendants' Motion is **DENIED**.


                                                    _____

                                                    Juan R. Sánchez, C.J.

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2020, I electronically filed Intervenor Plaintiff's Response to Defendants' Opposition to Intervention and Motion to Dismiss and attached Memorandum of Law with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.


*/s/ Samuel Datlof*
Samuel Datlof