IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERONICA MARLENE BARRIENTOS DE INTERIANO, et al. | : | CIVIL ACTION |
| | : | |
| | : | No. 15-4179 |
| v. | : | |
| | : | |
| FRANCISCO ALVAREZ, et al. | : | |
| | : | |
| TRINIDAD TAPIA OSORIO | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-1070 |
| | : | |
| BIANCA ALVAREZ, et al. | : | |

**<u>ORDER</u>**

AND NOW, this 30th day of September, 2020, upon consideration of Proposed Intervenor Plaintiff Trinidad Tapia Osorio's Motion to Intervene and Reopen in Civil No. 15-4179, Defendants Bianca Alvarez, Francisco Alvarez, and Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc.'s Motion to Dismiss the Complaint in Civil No. 20-1070, the briefing on both motions, and the arguments presented during the August 4, 2020, telephonic oral argument on the motions, it is ORDERED as follows:

- Defendants' Motion to Dismiss (Document 9 in Civil No. 20-1070) is DENIED.[1]

---

[1] In Civil No. 20-1070, Plaintiff Trinidad Tapia Osorio sues Francisco and Bianca Alvarez and their business, Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc. (Aloe Vera), alleging Defendants charged him and his parents thousands of dollars for immigration legal services they were not authorized to provide, which ultimately proved valueless to the Tapias. Tapia brings claims against Defendants for violating a consent decree entered in an earlier case—*Barrientos de Interiano v. Alvarez*, Civil No. 15-4149 (E.D. Pa. filed July 29, 2015)—to which Francisco Alvarez and Aloe Vera were parties, as well as for engaging in the unauthorized practice of law, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), unjust enrichment, and breach of contract. Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

1

Procedure 12(b)(6).  Because Defendants' arguments for dismissal lack merit, the motion is denied.

Francisco and Bianca Alvarez are father and daughter.  Neither is an attorney.  According to the Complaint in Civil No. 20-1070, together, the Alvarezes operate Aloe Vera, which maintains an office in Philadelphia.  In late 2014, Tapia's father met with Francisco Alvarez for an immigration consultation regarding the family's desire to attain immigration status for himself and Tapia's mother, who was living outside the United States.  Francisco told Tapia's father he was going to give the case to his daughter, Bianca, who would "do the job as if I myself had done it."  Compl. ¶ 69.  Tapia's father then met with Bianca, who held herself out as authorized to provide immigration representation to the Tapias and who Tapia's father believed was an attorney.  In January 2015, Tapia accompanied his father to a follow up appointment with Bianca.  At the time, Aloe Vera operated and advertised under the name "Immigration Services."  The name "Immigration Services" appeared on signage on the exterior of the building where Aloe Vera's office was located, along with a Spanish-language list of the services the business provided.  *Id.* ¶¶ 74-76.  During the meeting, Bianca advised the Tapias about how both Tapia parents could obtain lawful permanent residency in the United States, and she and the Tapias agreed that she, on behalf of Immigration Services, would represent the Tapias in connection with the necessary applications—a "Petition for Alien Relative" (or "I-130") to be filed by Tapia for each parent and then an application for a "Waiver of Inadmissibility" (or "perdon") for each parent—in exchange for a total of $3,000, to be paid in installments.  *See id.* ¶¶ 79, 81-90.

In fact, neither of Tapia's parents was eligible to obtain lawful permanent residency in the manner described by Bianca—something any competent immigration lawyer would have known and communicated to the Tapias.  Tapia's father could obtain lawful permanent residency via a Petition for Alien Relative only by first leaving the United States for 10 years and then initiating consular processing for an immigrant visa and applying for discretionary permission to apply for readmission.  *See id.* ¶ 61.2.  His mother would also have to use the consular processing mechanism to obtain legal status.  *See id.* ¶¶ 56, 62.  Despite both parents' ineligibility, Bianca proceeded with the representation and accepted the Tapias' periodic payments.  As the representation progressed, Bianca requested additional payments from the Tapias, beyond the $3,000 fee originally agreed upon.  At some point in 2016, Bianca discontinued her efforts on behalf of Tapia's father without explanation and returned $675 to the Tapias with a note saying it was "for the visas and the waiver of inadmissibility."  *Id.* ¶ 129.  By this time, the Tapias had paid a total of $5,210 for the immigration services, not including the returned $675.  *Id.* ¶ 129.1.  Bianca continued to pursue residency for Tapia's mother, and the Tapias continued to make additional payments.  In February 2017, Tapia's mother received notice that a consular interview had been scheduled for her in Mexico, some 1,200 miles from where she was then residing.  Unable to reach Bianca, Tapia and his father went to Aloe Vera's office.  At the office, they spoke with Francisco, who advised them about the documents Tapia's mother would need to pass her consular interview and obtain a Waiver of Inadmissibility.  Tapia's mother attended the interview in April 2017—at considerable expense—but was denied a visa.  After learning of the denial, Tapia's father called Bianca, who told him that there was nothing more that could be done and that his wife would have to wait until 2023 to adjust her status.  In total, the Tapias paid at least $8,640 in fees and expenses in an effort to obtain residency status for which they were ineligible at the outset.  *Id.* ¶ 143.

In July 2015, while the representation of the Tapias was ongoing, Francisco Alvarez and Aloe Vera were sued in the *Barrientos* case for perpetrating an immigration services scam by

2

holding themselves out as qualified and authorized to provide legal advice and assistance on immigration issues when, in fact, they were not authorized to practice law. Bianca Alvarez was not named as a defendant in the *Barrientos* action, though the complaint in that case alleged she was her father's partner in the operation of Aloe Vera. The *Barrientos* case ultimately settled, and, as part of the settlement, the parties agreed to a consent order, which was entered by the Court in November 2015. The consent order required Aloe Vera and Francisco Alvarez to cease using the name "Immigration Services" as a trade or business name unless explicitly authorized to do so by the Secretary of State. Consent Order ¶ 2, ECF No. 33 in Civil No. 15-4179. It also enjoined them from, among other things, "engaging in, or aiding any individual or entity under [their] direction and control from engaging in, the unauthorized practice of law[] [or] . . . any 'unfair methods or competition' [or] 'unfair or deceptive acts or practices' as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law." *Id.* ¶¶ 12-13. The consent order further provided that this Court would retain jurisdiction of the *Barrientos* matter "for purposes of construction, modification, and enforcement" of the consent order, *id.* ¶ 17, and that "[a]ny individual alleging to have been aggrieved by a violation of this Consent Order shall have standing to enforce the Order," *id.* ¶ 16.

Defendants' representation of the Tapias was ongoing when the consent order was entered in the *Barrientos* case in November 2015. Following the settlement, Defendants made certain changes to their business. For example, beginning in February 2016, the receipts the Tapias received for their cash payments for the immigration services listed the payee as "Alvarez Legal Form & Immigration Support," rather than "Immigration Services, Inc." Compl. ¶¶ 100, 112. In addition, at some point in early 2016, Francisco Alvarez began holding himself out as operating under the direct employment of a licensed Pennsylvania attorney named Shaela Cruz. *Id.* ¶ 114. Although Cruz established an office at the same address as Aloe Vera, she never supervised Bianca Alvarez and did not control the legal services provided by Aloe Vera under the trade name "Alvarez Legal Form & Immigration Support." *Id.* ¶¶ 115-17.

Defendants move to dismiss the Complaint in Civil No. 20-1070 pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court must accept all of the complaint's "well-pleaded factual allegations" as true but may disregard legal conclusions. *Id.* at 678-79. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 550 U.S. at 679).

Although Defendants move to dismiss the Complaint in its entirety, their arguments for dismissal primarily focus on the insufficiency of the allegations as to Francisco Alvarez and Aloe Vera. Indeed, during the telephonic oral argument, Defendants conceded the Complaint may be sufficient as to Bianca Alvarez but not as to the other Defendants. As to Bianca, Defendants principally argue the Complaint fails to state a claim because it fails to allege she did anything constituting the unauthorized practice of law. Defendants note the Complaint does not allege Bianca "prepared any forms that she wasn't permitted to file" or that she failed to "properly sign her name to the forms" as the preparer, Defs.' Mot. to Dismiss 9, but these arguments are beside the point. The Complaint alleges Bianca's role went beyond simply assisting the Tapias in

3

completing immigration forms and included advising them regarding the immigration process, including their eligibility for lawful permanent residency and the steps they should take to attain this status. *See, e.g.*, Compl. ¶¶ 79, 83-85, 147. These allegations are sufficient to support a plausible claim that Bianca engaged in the unauthorized practice of law. *See* Pa. Bar Ass'n Unauthorized Practice of Law Comm. Formal Op. 2006-01, at 2 & n.8 (Nov. 8, 2006) (opining that the unauthorized practice of law includes activities such as "incidentally preparing [immigration] papers for a person, selecting the appropriate government forms, [and] . . . giving a person advice about his or her case"); *cf. Unauthorized Practice Comm., State Bar of Tex. v. Cortez*, 692 S.W.2d 47, 49-50 (Tex. 1985) (holding that advising customers as to whether they qualified to file various immigration petitions and applications, including the I-130, and determining whether those petitions and applications should be filed, constitutes the practice of law under Texas law). Notably, Defendants cite no authority to the contrary.

As to Francisco Alvarez and Aloe Vera, Defendants principally argue the Complaint fails to adequately link these Defendants to Bianca Alvarez and her work for the Tapias. Defendants argue the Complaint lacks facts suggesting Francisco and Aloe Vera "directed and controlled" Bianca's actions. Defs.' Mot. to Dismiss 9. They also dismiss as "unsubstantiated" the allegation that Bianca acted as a principal in the operations of Aloe Vera and was a partner or associate of her father in the operation of the business. *Id.* at 5-6. The Court disagrees. As Tapia notes, the Complaint directly links Francisco to his daughter's representation of the Tapias by alleging he gave her the case and assured Tapia's father that she would "do the job as if I myself had done it." Compl. ¶ 69. Moreover, the claims against Francisco do not depend on whether he directed and controlled his daughter's actions because he is also alleged to have participated in the representation of the Tapias by advising them regarding Tapia's mother's consular interview. The Complaint also adequately links Bianca to Aloe Vera, including by alleging that she and the Tapias agreed that she would represent the Tapias on behalf of Aloe Vera (then doing business as Immigration Services, Inc.), and that she accepted payments from the Tapias on behalf of Aloe Vera and issued receipts to the Tapias for those payments on behalf of Aloe Vera (initially under the name Immigration Services, Inc. and, later, from Alvarez Legal Form & Immigration Support).

Defendants also argue Tapia's UTPCPL claim should be dismissed. Although the Complaint invokes several provisions of the UTPCPL, Defendants address only the claim under the UTPCPL's "catchall" provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. § 201-2(4)(xxi). Defendants argue the Complaint fails to state a claim under this provision because it simply "refer[s] to alleged acts of 'concealment' and 'fraud' perpetrated by Defendants without explaining what those acts were." Defs.' Mot. to Dismiss 11. This argument is incorrect, as the Complaint specifically alleges Defendants violated the catchall provision by, inter alia, "representing that Defendants were authorized to provide immigration services" and "holding themselves out to the public as a business that provides a variety of legal services even though they are not authorized to do so." Compl. ¶ 180. Defendants also note the lack of any "evidence" that Tapia "has any proof that Aloe Vera had any direction or control over defendant, Bianca Alvarez or any indication that the Aloe Vera defendants had misrepresented anything about their business connection with defendant Bianca Alvarez." *Id.* This argument is similarly unavailing, as the UTPCPL claim is based not on any alleged misrepresentation about the business connection among the Defendants but on Defendants' alleged misrepresentations regarding their authorization to provide immigration legal services.

- Defendants shall file an Answer to the Complaint in Civil No. 20-1070 on or before October 14, 2020, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).  A Rule 16 conference will be scheduled separately.

- Plaintiff's Motion to Intervene and Reopen (Document 36 in Civil No. 15-4179) is GRANTED.  Civil No. 15-4179 shall be REOPENED, and Intervenor Plaintiff Trinidad Tapia Osorio shall be permitted to intervene in that case to seek enforcement of the November 10, 2015, Consent Order against Defendants Francisco Alvarez and Aloe Vera Caribbean Imports, LLC, d.b.a. Immigration Services, Inc.[2]

---

Finally, insofar as Defendants argue Tapia's breach of contract claim is deficient because he failed to "detail . . . what services were discussed or agreed to" and failed to "attach any documents to the complaint indicating any type of contract was made between any of the defendants and plaintiff's parents," Defs.' Mot. to Dismiss 4, these arguments also lack merit.  The Complaint alleges that during their January 2015 in-person meeting, Bianca and the Tapias agreed that she, on behalf of Immigration Services, Inc., would file I-130s on behalf of Tapia, with his parents as beneficiaries, and, upon approval of the I-130's, would apply for a Waiver of Inadmissibility for each parent so they could obtain permanent resident status, in exchange for installment payments of $3,000.  Compl. ¶¶ 81-82, 86.  These allegations sufficiently describe the oral agreement Tapia claims was breached in this case.  Accordingly, the motion to dismiss is denied.

[2] In addition to suing Defendants in Civil No. 20-1070 for violating the consent order in the *Barrientos* case, Tapia moves to intervene in the *Barrientos* case, Civil No. 15-4179, for the purpose of enforcing the consent order against Francisco Alvarez and Aloe Vera.  Tapia seeks to intervene pursuant to Federal Rule of Civil Procedure 71, which provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."  Rule 71 "allows a non-party to enforce a court order in its favor just as a party could."  *Washington Hosp. v. White*, 889 F.2d 1294, 1299 (3d Cir. 1989).  The Rule thus allows intervention by nonparties in whose favor a consent order is entered so that they may pursue enforcement of the consent decree in the original action.  *See Berger v. Heckler*, 771 F.2d 1556, 1565-66 (2d Cir. 1985); *see also Brennan v. Nassau Cty.*, 352 F.3d 60, 65 (2d Cir. 2003); *Floyd v. Ortiz*, 300 F.3d 1223, 1226 (10th Cir. 2002); 13 James Wm. Moore et al., *Moore's Federal Practice* § 71.03.  Here, as noted, the *Barrientos* consent order specifically provides that "[a]ny individual alleging to have been aggrieved by a violation of this Consent Order shall have standing to enforce the Order."  Consent Order ¶ 16, ECF No. 33 in Civil No. 15-4179.  Tapia is such an individual; hence, he may intervene in the *Barrientos* case for the purpose of enforcing the order. *See Berger*, 771 F.2d at 1566.

- Defendants' Motion to Dismiss Motion by Proposed Intervenor Plaintiff to Intervene and Reopen (Document 41 in Civil No. 15-4179) is DENIED.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

Defendants oppose intervention, arguing Tapia does not meet the criteria for intervention under Federal Rule of Civil Procedure 24. Although it is not clear that Tapia must meet the Rule 24 criteria in order to pursue enforcement of the consent order in the *Barrientos* case, even if those criteria do apply, Defendants' arguments against intervention are unpersuasive. Defendants primarily argue the motion to intervene should be denied as untimely. "The timeliness of a motion to intervene is 'determined from all the circumstances,'" including "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 19885) (quoting *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). As to the first factor, the stage of the proceedings, while the motion to intervene was filed more than four years after the *Barrientos* case settled, Tapia seeks to enforce the consent order, not to disrupt it. The consent order specifically contemplates future enforcement proceedings. As to the second factor, Defendants assert the nearly three-year delay between their last interaction with the Tapias in the spring of 2017 and the filing of the instant motion in February 2020 severely prejudices them in defending against the Tapias' allegations. Defendants do not elaborate on how the delay prejudices their defense. Notably, moreover, they will have to defend against the same allegations in Civil No. 20-1070. Finally, as to the third factor, Tapia has provided a reasonable explanation for the delay. Although the consent order was already in place when the Tapias last interacted with Defendants in 2017, Tapia was not aware of the *Barrientos* litigation or the consent order at that time. After becoming aware of the *Barrientos* consent order through his current counsel sometime in 2018, Tapia put Defendants on notice of his allegations in early 2019. Any further delay in filing the instant motion to intervene was due to the parties' pursuit of settlement negotiation before resorting to further litigation. In these circumstances, the Court is not persuaded the motion to intervene is untimely.

Defendants' only other argument against intervention is that Tapia has failed to show a sufficient interest in this litigation. Because the consent order gives "[a]ny individual alleging to have been aggrieved by a violation of" the order standing to enforce it, and given Tapia's allegations regarding Defendants' violations of the consent order, the Court also finds this requirement is satisfied. For all of these reasons, the motion to intervene is granted.

6